UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

| | |
|---|---|
| TRISTAN LOGAN, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )        C.A. No. 05-10045-GAO |
| | ) |
| ELAINE CHAO, Secretary, | ) |
| U.S. DEPARTMENT OF LABOR, | ) |
| | ) |
|     Defendant. | ) |
| _____ | ) |

## DEFENDANT'S MEMORANDUM IN SUPPORT OF HER MOTION FOR SUMMARY JUDGMENT

The Defendant, Elaine Chao, Secretary of the United States Department of Labor ("DOL"),

hereby submits this Memorandum in support of her Motion for Summary Judgment, pursuant to

Fed. R. Civ. P. 56(c).  For the reasons set forth below, the DOL is entitled to judgment as a matter

of law**.**

## I.    <u>INTRODUCTION</u>

The plaintiff, Tristan Logan ("Logan"), an Investigator, GS-12 in the DOL's Employee

Benefits Security Administration ("EBSA"), formerly know as the Pension and Welfare Benefits

Administration ("PWBA") filed a Complaint in the United States District Court for the District of

Massachusetts, alleging various claims of discrimination in January, 2005.  On March 2, 2007,

Logan amended his Complaint, dismissing Counts III, V, VI and VII and leaving Counts I, II, and

IV (Amended Compl.).  Logan claims that he was discriminated against in violation of the Age

Discrimination in Employment Act of 1967 ("ADEA") (Count I), the Rehabilitation Act of 1973

(Count II), and gender discrimination under Title VII (Count IV) when he was denied a promotion

to Investigator (Pension), Series/Grade GS-1801-13 of Vacancy Announcement BOS-0329A.  The

promotions were awarded to Stephen Phillips ("Phillips"), J. Martin Shanahan ("Shanahan"), and Susan Murphy ("Murphy").  In Count I (Age Discrimination) and Count II (Disability Discrimination), the DOL has provided legitimate nondiscriminatory reasons for not promoting Logan to one of the three GS-13 positions under Vacancy Announcement No. BOS-03-29A. Additionally, Logan has not exhausted his administrative remedies for Count IV (Gender Discrimination) regarding the pattern and practice of discrimination against males over 40 years of age.  Even if Logan did exhaust his administrative remedies, he has not established a prima facie case for a pattern and practice of discrimination against males over 40 years of age.  In the alternative, the DOL has presented legitimate nondiscriminatory reasons for not promoting Logan, and all of his claims should be dismissed.

## II.    <u>LOCAL RULE 56.1 STATEMENT OF FACTS</u>

The DOL incorporates its Local Rule 56.1 Statement of Material Facts as if stated herein.

## III.   <u>STANDARD OF REVIEW ON A MOTION FOR SUMMARY JUDGMENT</u>

"The role of summary judgment is to pierce the boilerplate of the pleadings and provide a means for prompt disposition of cases in which no trial-worthy issue exists." <u>Quinn v. City of Boston</u>, 325 F.3d 18, 28 (1st Cir. 2003) (citing <u>Suarez v. Pueblo Int'l, Inc.</u>, 229 F.3d 49, 53 (1st Cir. 2000).  To grant a motion for summary judgment, there must exist no genuine issue of material fact and the moving party must be entitled to the judgment as a matter of law.  Fed.R.Civ.P. 56©.  "A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." <u>One Nat'l Bank v. Antonellis</u>, 80 F.3d 606, 608 (1st Cir. 1996).  To prevail on summary judgment, the moving party must only show "that there is an absence of evidence to support the non-moving party's case." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986).  The facts must be viewed in the light most favorable to Logan, the non-moving party.  <u>Iverson v. City of Boston</u>, 452 F.3d 94, 98 (1st Cir. 2006).

Once the absence of a genuine issue of material fact is averred by the moving party, the burden shifts to the non-movant who must demonstrate that a factual dispute does in fact exist. Velazquez-Fernandez v. NCE Foods, Inc., 476 F.3d 6, 10 (1st Cir. 2007). The non-movant must present sufficient evidence from which a jury could "reasonably find in its favor" in order to overcome the summary judgment. De Jesus v. Potter, 211 Fed.Appx. 5, 9 (1st Cir. 2000) (citing Davric Marine Corp. v. Rancourt, 216 F.3d 143, 147 (1st Cir. 2000)). However, in attempting to demonstrate the existence of an issue of material fact, Logan cannot rely on "improbable inferences, conclusory allegations or rank speculation." Velazquez-Fernandez, 476 F.3d at 10. In cases such as these, summary judgment is compelled even where "elusive concepts such as motive or intent are at issue." Straughn v. Delta Air Lines, Inc., 250 F.3d 23, 33 (1st Cir. 2001) (quoting Medina Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)). Logan has not set forth the specific facts, evidence or statistics necessary to establish that there is a genuine issue of material fact, and his arguments rely on "improbable inferences, conclusory allegation [and] rank speculation." Velazquez-Fernandez, 476 F.3d at 10. For these reasons, the DOL is entitled to summary judgment as a matter of law.

## IV.    BURDEN SHIFTING IN EMPLOYMENT DISCRIMINATION CASES

The DOL's legitimate nondiscriminatory reason for not promoting Logan to one of the 3 positions available under Vacancy Announcement  BOS-0329A is that the other candidates were better qualified. Logan alleges that he was discriminated against when he was not promoted because of his age and disability. He also alleges that EBSA has a pattern and practice of discriminating against males over the age of 40. However, Logan provided no direct, indirect or statistical evidence to support his claim. The burden of proof for disparate treatment in an employment discrimination claim is well recognized to be delineated in the McDonnell Douglas paradigm. See generally McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). First, a

3

plaintiff must establish a prima facie case of disparate treatment. Id. at 802 (the four elements that constitute a prima facie case depend on the nature and basis of the discrimination). Once established, the burden then shifts to the employer to provide a legitimate nondiscriminatory reason for the adverse employment action. Id. When a neutral reason is offered the burden shifts back to the employee to show that the stated reason is in fact a pretext for discrimination and the employment action is actually based on discriminatory animus. Id.

The same burden shifting exists in Title VII pattern and practice of disparate treatment cases, differing only in the establishment of a prima facie case. The plaintiff has the initial burden of proving, by a preponderance of the evidence, that discrimination was the employer's standard operating procedure. International Broth. of Teamsters v. United States, 431 U.S. 324, 336 (1977). The discriminatory acts must be more than isolated, accidental, or sporadic. Id. A prima facie case usually consists of: (1) showing a significant statistical disparity between the composition of the workforce at a particular time and the qualified, interested, and available members of the protected group within the relevant labor market; or (2) evidence of long lasting and gross disparity between the composition of a workforce and that of the general population. Id. at 339-40; Hazelwood School Dist. v. United States, 433 U.S. 299, 309-10 (1977). Once a plaintiff establishes a prima facie case, the burden shifts to the employer to defeat the showing by demonstrating that the plaintiff's proof is inaccurate or insignificant, or by providing a non-discriminatory and non-pretextual explanation for the apparently discriminatory result. International Broth. of Teamsters, 431 U.S. at 360.

By proceeding through this burden shifting analysis for Count I (Age Discrimination) and Count II (Disability Discrimination), it will be demonstrated that although Logan has shown a prima facie case for discrimination for both claims, the DOL has provided legitimate nondiscriminatory reasons for not promoting Logan to Vacancy Announcement BOS-0329A.

Logan also cannot establish, or offer specific facts, that would show that these proffered reasons are a pretext, based on discriminatory intent. As for Count IV (Gender Discrimination), which alleges a pattern and practice of discrimination against men over 40, Logan fails to establish a prima facie case that the DOL has a pattern and practice of discrimination. Even if Logan can establish a prima facie case, he failed to exhaust his administrative remedies, the statistical data is insignificant, and the DOL has a legitimate nondiscriminatory reason for the employment decision. Given this evidence as a whole, the DOL is entitled to summary judgment as a matter of law on all counts.

    **A.**     <u>**Violation of the Age Discrimination in Employment Act (Count I)**</u>

Logan, in the ADEA portion of his Complaint, bears the ultimate "burden of proving that his years were the determinative factor in [the adverse action], that is, that he would . . . have been [promoted] *but for* his age." <u>Freeman v. Package Machinery Co.</u>, 865 F.2d 1331, 1335 (1st Cir. 1988) (emphasis added); <u>see also</u> <u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981). The DOL concedes that the Logan has met the minimal burden of showing a prima facie case of discrimination based on age; however, the DOL's articulated reason for this employment decision is legitimate and nondiscriminatory. Additionally, there is no evidence that this explanation provided is a pretext for discrimination on the basis of age. To establish the prima facie case for an ADEA case, a plaintiff merely needs to show: (1) that he is over 40 years of age; (2) he was qualified for the position; (3) he was denied the promotion; and (4) the person promoted was younger and with similar qualifications as the plaintiff. <u>Arroyo-Audifred v. Verizon Wireless, Inc.</u>, 2008 WL 2265904 (1st Cir. 2008) (citing <u>Mesnick v. Gen. Elec. Co.</u>, 950 F.2d 816, 822 (1st Cir. 1991)). Logan is in fact over 40 (age 55 at the time of alleged discrimination), met the qualifications for Vacancy Announcement BOS-0329A, and was passed over for the promotion in lieu of 3 other younger employees. However, the 3 employees promoted were far superior candidates for the GS-13 position as compared to Logan.

1.    **The DOL has articulated a legitimate, nondiscriminatory reason for not promoting Logan.**

The 3 employees chosen for Vacancy Announcement BOS-0329A were better-qualified for the positions given their leadership experiences, performance and qualifications, and the necessities of the position.  Although the burden of production shifts to the defendant to provide a legitimate, nondiscriminatory reason for the action, "the task of proving the discrimination remains the claimant's at all times." See Burdine, 450 U.S. at 253, 256; Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 9 (1st Cir. 1990).  Once such a legitimate and nondiscriminatory reason emerges, the inference raised by the prima facie case disappears.  Medina-Munoz, 896 F.2d at 9.

In making the determination regarding the promotions, Benages selected the 3 candidates most qualified for the position.  Although Logan was 1 of the 11 employees who made the Certificate of Eligibles for the Merit Staffing List (Ex. 4, Merit Staffing List), the 3 chosen candidates were far superior in qualifications.  Each candidates' skills, knowledge, and abilities were compared and ranked against those of the other candidates on each of the evaluating factors (Ex. 3, Vacancy Announcement BOS-0329A, p. 3).  Vacancy Announcement BOS-0329A listed the following evaluation factors as high:

1. Knowledge of the laws, regulations and policies of the [DOL] with regard to enforcement of the provisions of the ERISA or the knowledge of similarly complex laws such as the Federal securities and commodities laws, tax laws, or banking laws.

2. Sound knowledge of, and an extensive background in, the specialized areas of procedures and laws governing investigations as well as the experience in determining that adequate proof exists of all elements of an alleged violation of law.  This must include an in-depth understanding of the entire spectrum of an enforcement action.

3. *Ability to motivate staff and direct activities as a team leader.*

4. Ability to coordinate investigations of difficult factual and legal matters.
   (Ex. 3, Vacancy Announcement BOS-0329A, p. 3)(emphasis added).

The 3 selected candidates had substantial knowledge of the laws and policies.  Furthermore, a factor

which distinguished Phillips, Shanahan and Murphy from Logan hinged on the "[a]bility to

motivate staff and direct activities as a team leader." Each candidate, beyond completing an

application, submitted statements addressing his or her qualifications for each of the four selection

factors (Ex. 1, Logan Application; Ex. 8, Murphy Application; Ex. 9, Shanahan Application; Ex. 10,

Phillips Application).  In addition, Performance Management Plans ("PMP") were provided on each

candidate highlighting and rating his or her work performance (Ex. 11, Logan PMP; Ex. 12 Murphy

PMP; Ex. 13, Shanahan PMP; Ex. 14 Phillips PMP).

   Regarding leadership abilities and experience, Murphy addressed her work as a Team

Leader from 2000 to 2001 with a Security Detail for the Secretary of Labor (Ex. 8, Murphy

Application, p. 5).  In that position, she directed the efforts of 4 to 5 Special Agents when the

Secretary of Labor visited the New England area (Id.).  She also included information about leading

a multi-agency investigative team which included members of the FBI, EBSA, U.S. Postal

Inspector Service and Rhode Island State Police in 2000 to 2001 (Id.).  The team oversaw the

indictment and conviction of a Rhode Island investment manager (Id.).  According to Benages,

Murphy's criminal background and experience were key motivating factors for her being hired at

EBSA (Ex. 6, Benages Aff., p. 7).  Although she had not yet obtained a PMP from EBSA, a PMP

completed by the Office of the Inspector General ("OIG") was provided for review (Ex. 12, Murphy

PMP).  The PMP from the OIG gave her an overall annual rating from July 1, 2000 to June 30,

2001 as "Superior" (Id. at p. 1).  She received individual "Superior" scores in the following

categories: Source of Information, Problem Solving and Initiative, Investigative Technique,

Organizational Representation, Communications, and Professional Development (Id. at p. 2-6).  She

received five awards since 1991 and completed her EBSA Basic Training in March 2003 (Ex. 8,

Murphy Application, p. 2).  Additionally both of the evaluators graded her as "Very Good" on all

categories for the Merit Staffing List (Ex. 15, Murphy Merit Staffing Evaluation).

Likewise, Shanahan had excellent leadership and employment accomplishments. He was a mentor to new investigators and was an acting group supervisor, where he received and supervised cases while overseeing a staff of 8 (Ex.9, Shanahan Application, p. 5). He also sat as a Committee Member and Chairman of the Legal Regulatory Subcommittee for the City of Worcester from March 1993 to the time of the application (Id. at p. 8). Most notably, he initiated the Regional Project on Nursing Homes and Home Health Agencies and functioned as a liaison for the Boston EBSA office (Id. at p. 39; Ex. 6, Benages Aff., p. 4). He also volunteered as a mentor for the Worchester Public schools and initated an outreach activity in June 2002 with the Massachusetts Society of Certified Public Accountants (Ex. 9, Shanahan Application, p. 5). His overall score on the PMP from May 3, 2001 to September 30, 2002 was "Superior", and he exceeded the described level of performance in the following categories: Investigative Productivity (with a point score of 528), Quality of Investigation, Timeliness, Administration, and Other Assignments (Ex. 13, Shanahan PMP). Like Murphy, he received a "Very Good" from both evaluators on every category for the Merit Staffing List (Ex. 16, Shanahan Merit Staffing Evaluation).

Phillips had leadership experience exhibited by his work as the Diversity Outreach Coordinator beginning in January 2000 (Ex. 10, Phillips Application, p. 9). Additionally, he led a team of 3 investigators pursuing the case project which he developed involving action taken by a third party administrator (Id. at p. 8). The PMP for Phillips from March 31, 2002 to September 30, 2002 gave him an overall annual rating of "Superior" with the following categories exceeding the described levels of performance: Investigative Productivity (with an outstanding point count of 1009), Quality of Investigation, Timeliness, Administration, Customer Service and Other Assigned Duties (Ex. 14, Phillips PMP). He also received a "Very Good" evaluation from the reviewers for the Merit Staffing List (Ex. 16, Phillips Merit Staffing Evaluation).

Logan, although having many years of employment at EBSA, was not as highly qualified for

the position as Murphy, Shanahan and Phillips.  In addressing his ability to motivate staff on his

application, he only mentioned one instance where he directed the activities of two senior

investigators and was the point of contact with the regional solicitor for that case (Ex. 1, Logan

Application, p. 9).  He also mentioned his work as an IRS Officer from 1988 to 1991 where he

planned, led and executed raids (Id.).  Unlike the selected candidates, he did not list any recent

achievements, awards or projects for which he has been given or taken part.  Additionally, unlike

the "Superior" ratings of his collegues, Logan received an overall annual rating of "Effective" on

his PMP for March 31, 2002 to September 30, 2002 (Ex.11, Logan PMP).  He only exceeded the

described level of performance in the following categories: Performance Standard (with a score of

548) and Customer Service (Id.).  He was not even rated on Other Assigned Duties as he had none

(Id.).

     Furthermore, given the criteria listed on Vacancy Announcement BOS-0329A and the

qualifications of the candidates selected compared to those of Logan, the chosen candidates were

clearly better-qualified for the promotion.  The reasoning is clearly supported by documentation

from the applications of the 3 selected candidates, as well as the information submitted by Logan,

when applying for Vacancy Announcement BOS-0329A.  Further bolstering the selection of the 3

individuals are their individual achievements and performance.  Between October 2000 and October

2003, Phillips closed 1 criminal case and 58 civil cases–71% of which had resulted in recovering

over $4.7 million (Ex. 6, Benages Aff., p. 2).  These results were well above the 50% national

Government Performance Result's Act ("GPRA") goal of 50% of closed cases having results (Id.).

Shanahan, between October 2000 and October 2003, closed 64 civil cases and recovered over $6.2

million (Id. at p. 4).  In contrast, Logan's performance during the period of October, 2000 through

October, 2003, included the referral of only 3 cases which placed him in the bottom 40% of the

investigators in the Boston Regional Office (Id. at p. 6).  Overall he had closed 47 civil cases, 38%

of which had results that produced recoveries totaling merely $3,773– the lowest amount in the Boston Regional Office (Id.).  This percentage of results was below the GPRA goals of 50% (Id.).  His average case time of 9.97 days during these 3 years placed him in the upper one-third of investigators who spend the most time on cases at the Boston Regional Office (Id. at p. 6-7).  No criminal cases were closed by Logan during this time (Id. at 7).

Additionally, Logan has not brought forth any clearly convincing statistical evidence that would point to unabashed discrimination against persons over the age of 40.  Though not dispositive, Benages, who was not only responsible for the final promotional decision, but also hired Logan, was over the age of 40 at the time of the promotion, and one of the employees selected for the GS-13 position, Phillips, was 43.  The only remark eluding to age was made in 2001 when Benages allegedly referred to the area where Logan and his co-workers sat as the "geriatric ward" (Logan Depo, p. 43).  However, this was not made directly to Logan, nor did Logan even overhear the alleged comment (Id.).  This is a mere stray comment which is not indicative of pretext.

Logan also contends that the differential treatment was evidenced by the number of benefit advisory referrals received by persons over 40, the failure to inform and select persons over 40 to participate in projects and training, and the lack of mentorship opportunities for employees over 40.  (Id. at p. 34).  These broad allegations, however are not supported by concrete evidence, testimony, or statistics which would show that this was in fact disparate treatment of individuals over 40 years of age.  For example, Logan admitted that Mary Rosen, a former Senior Investigator who is over 40, heads the Voluntary Compliance Project (Id. at p. 55).  Also, on the approval of Benages, one of Logan's law school courses was partially paid for by the DOL, and he was able take the following training classes at Glynco: Advanced Interrogation Techniques, a criminal law course, and a forensic accounting course (Id.).  Only twice did he allege that he had requested a training that was awarded to another employee (Id. at p. 56).  Given the evidence as a whole, no reasonable fact

finder could infer that the reason articulated by the DOL is a pretext for discriminating against Logan due to "age-based animus." The 3 candidates selected for promotion had leadership experience which was far better-suited for the demands of the position as compared to the experience presented by Logan.  The burden on the DOL is not one of persuasion, but a merely an articulation of a reason which, on its face, would justify a conclusion that Logan was not promoted for a nondiscriminatory motive.  See Mesnick, 950 F.2d at 823.  The DOL has presented legitimate nondiscriminatory reasons for not promoting Logan supported by clear evidence from the Vacancy Announcement BOS-0329A application materials and Count I of his Complaint should be dismissed.

**B.**    **Violation of the Rehabilitation Act of 1973 (Count II)**

Although Logan has established a prima facie case of discrimination based on his disability, the DOL has articulated legitimate nondiscriminatory reasons for its promotional decision.  To establish a prima facie case for disability discrimination under the Rehabilitation Act of 1973, Logan must demonstrate the following: (1) he has a disability within the meaning of the Act; (2) that he is qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) has suffered an adverse employment action because of the stated disability. Carroll v. Xerox Corp., 294 F.3d 231, 237-38 (1st Cir. 2002); Lessard v. Osram Sylvania, Inc., 175 F.3d 193, 197 (1st Cir. 1999).  It is conceded that Logan is a qualified disabled individual under the Act as he has a mental impairment which substantially limits his major life activities.  See Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184 (2002); Lebrón-Torres v. Whitehall Labs., 251 F.3d 236, 239-40 (1st Cir. 2001).  He also is qualified to perform the essential functions of the job with reasonable accommodations and suffered an adverse employment action when he was not promoted to Vacancy Announcement BOS-0329A .  As the prima facie case has been established, the burden now shifts back to the DOL to "articulate a legitimate, non-discriminatory reason for the

employment decision and to produce credible evidence to show that the reason advanced was the real reason." Rios-Jimenez v. Principi, 520 F.3d 31, 41 (1st Cir. 2008) (citing McDonnell Douglas, 411 U.S. at 802). If such a reason is offered the burden shifts back to Logan to "establish that the proffered reason is pretext intended to conceal discriminatory intent . . . . The ultimate burden of proving unlawful action rests at all times with [Logan]." Id. The application materials clearly show that the DOL had legitimate nondiscriminatory reasons for not promoting Logan to the position as other candidates were better-suited for the position.

> **1. The DOL has articulated a legitimate nondiscriminatory reason for not promoting Logan to the GS-13 Position.**

Logan was not selected for the promotion as other candidates were better qualified for Vacancy Announcement BOS-0329A and better performance records. This is a legitimate nondiscriminatory reason for the promotional decision and rebuts Logan's claim of discrimination on the basis of disability. "The crux of the defense to this type of charge is that the individual was treated differently not because of his. . . disability but for a legitimate nondiscriminatory reason such as poor performance unrelated to the individual's disability" (EEOC Interpretive Guidance on Title I of the Americans with Disabilities Act, 29 C.F.R. part 1630 App., Section 1630.15(a) Disparate Treatment). As stated, Logan was not selected for the promotion as Murphy, Shanahan and Phillips were better suited for the position given their experiences, backgrounds and performance, not because of his disability. Logan's qualifications place him on the Certificate of Eligibles for Merit Staffing List where each candidates skills, knowledge, and abilities are compared against those of the other candidates for each of the evaluating factors. The determining factor rated as high in selecting the 3 employees to be promoted was the "[a]bility to motivate staff and direct activities as a team leader" (Ex. 7., Vacancy Announcement BOS-0329A, p. 3).

When addressing her leadership abilities and experience on the application materials,

Murphy outlined her work as a Team Leader from 2000 to 2001 of the Security Detail for the

Secretary of Labor which involved directing the 4 to 5 Special Agents when the Secretary of Labor

visited the New England area (Ex. 8, Murphy Application, p. 5). She also included information

about leading a multi-agency investigative team in 2000 to 2001 comprised of members of the FBI,

EBSA, U.S. Postal Inspector Service and Rhode Island State Police which supervised the

indictment and conviction of a Rhode Island investment manager (Id.). This criminal background

was a driving force in Benages bringing her to work at EBSA (Ex. 6, Benages Affidavit, p. 7). A

PMP from the OIG was provided for review as she had not yet been rated by EBSA (Ex. 12,

Murphy PMP). Overall, her annual rating for July 1, 2000 to June 30, 2001 was "Superior" (Id. at

p. 1). She received individual "Superior" scores in the following categories: Source of Information,

Problem Solving and Initiative, Investigative Technique, Organizational Representation,

Communications, and Professional Development (Id. at p. 2-6). Additionally she was recognized

with 5 awards since 1991 and completed her EBSA Basic Training in March 2003 (Ex. 8, Murphy

Application, p. 2). Both of the evaluators graded her as "Very Good" on all categories for the Merit

Staffing List (Ex. 15, Murphy Merit Staffing Evaluation).

Shanahan also had recent leadership accomplishments and superior performance in the

workplace. He mentored new investigators and acted as a group supervisor where he received and

supervised cases while overseeing a staff of 8 employees (Ex. 9, Shanahan Application, p. 5). He

also took opportunities to volunteer as a mentor for the Worcester Public schools and initiated an

outreach program in June 2002 with the Massachusetts Society of Certified Public Accountants

(Id.). For the City of Worcester, he sat as a Committee Member and Chairman of the Legal

Regulatory Subcommittee from March 1993 to the date of the application (Id. at p. 8). His initiative

is demonstrated by his starting the Regional Project on Nursing Homes and Home Health Agencies

and functioned as a liaison for the Boston EBSA office (Id.). On his PMP from May 3, 2001 to

September 30, 2002 his overall rating was "Superior", and he exceeded the described level of performance in the following categories: Investigative Productivity (with a point score of 528), Quality of Investigation, Timeliness, Administration, and Other Assignments (Ex. 13, Shanahan PMP). Like Murphy, he received a "Very Good" from both evaluators on every category for the Merit Staffing List (Ex. 16, Shanahan Merit Staffing Evaluation).

Phillips' leadership experience and performance was also comparatively superior. An example being his work as the Coordinator for the Diversity Outreach Program which began in January 2000 (Ex. 10, Phillips Application, p. 9). Additionally, he led a team of 3 investigators pursuing the case project which he developed which involved actions taken by a third party administrators (Id. at p. 8). The PMP for Phillips for March 31, 2002 to September 30, 2002 gave him a rating of "Superior" overall with the following categories exceeding the described levels of performance: Investigative Productivity (with an outstanding point count of 1009), Quality of Investigation, Timeliness, Administration, Customer Service and Other Assigned Duties (Ex. 12).

Although Logan had worked at EBSA many years, he was not as best-suited and qualified for Vacancy Announcement BOS-0329A as compared to the 3 above candidates. In addressing his ability to motivate staff on his own application, Logan only listed when he once directed the activities of two senior investigators and was the point of contact with the regional solicitor for that case (Ex. 1, Logan Application, p. 9). He also mentioned his work as an IRS Officer from 1988 to 1991 where he planned, led and executed raids (Id.). Unlike the selected candidates, he did not list any recent achievements, awards or projects for which he has been given or taken part (Id.). Additionally, unlike the "Superior" ratings of Murphy, Shanahan and Phillips, Logan received only an overall annual rating of "Effective" on his PMP for March 31, 2002 to September 30, 2002 (Ex. 11, Logan PMP). He only exceeded the described level of performance in the following two

categories: Performance Standard (with a score of 548) and Customer Service (Id.).  He was not even rated on Other Assigned Duties as he had none to be mentioned (Id.).

The burden on the DOL is not a one of persuasion, but a merely an articulation of a reason which facially would justify the conclusion that Logan was not promoted for a nondiscriminatory motive.  See Mesnick, 950 F.2d at 823.  Given that the DOL has provided a legitimate nondiscriminatory reason for not selecting Logan for the promotion, Count II should be dismissed.

### C.    Violation of Title VII (Gender Discrimination - Count IV)

#### 1.    Logan Failed to Exhaust his Administrative Remedies for his Title VII Claim based on a Pattern and Practice of Discrimination Against Males over 40 Years of Age

The Civil Rights Act of 1964, Title VII, is a vehicle through which an individual may seek recovery for employment discrimination on the grounds of race, color, religion, gender, or national origin.  See Jorge v. Rumsfeld, 404 F.3d 556, 564 (1st Cir.2005).  Logan makes a Title VII claim based on an alleged pattern and practice of not promoting males over the age of 40.  However, "[j]udicial recourse under Title VII . . . is not a remedy of first resort." Id. (quoting Morales-Vallellanes v. Potter, 339 F.3d 9, 18 (1st Cir. 2003)).  Before an employee may sue in Federal Court on a Title VII claim, he must first exhaust his administrative remedies.  See Love v. Pullman Co., 404 U.S. 522, 523 (1972).  An individual who has allegedly suffered discrimination under Title VII must file an administrative complaint with the EEOC within 180 days of the alleged unlawful employment practice.  See 42 U.S.C. § 2000e-15(c)(1) & 16©.  The employee then may commence a civil action against his employer *only if* the EEOC has either dismissed the administrative complaint or has itself failed to begin a civil action within 180 days of the original EEOC filing.  Id. at § 2000e-5(f)(1).  The employee then must sue within 90 days.  Id.  The 90 day period begins to run from the time that the Attorney General notifies the employee either that the

EEOC has dismissed the charge or that the government has failed to address the employee's grievance (by reaching a negotiated settlement or by commencing litigation on her behalf).  See id.; see also Clockedile v. N.H. Dep't of Corr., 245 F.3d 1, 3 (1st Cir.2001).  A plaintiff's "unexcused failure to exhaust administrative remedies effectively bars the courthouse door."  Jorge, 404 F.3d at 564.

In filing a Title VII suit, it may "extend as far as, but not beyond, the parameters of the underlying administrative charge."  Jorge, 404 F.3d at 564 (citing Fine v. GAF Chem. Corp., 995 F.2d 576, 578 (5th Cir.1993)).  However, this does not mean that the scope of the civil suit is inevitably limited to the allegations in the administrative complaint.  Id.  Nonetheless, the suit is constrained by those allegations contained in the initial administrative complaint "in the sense that the judicial complaint must bear some *close relation* to the allegations presented to the agency."  Id. (emphasis added).  The new claim in the civil suit must be "reasonably related to and grow[] out of" the discrimination charged in the administrative complaint.  Clockedile, 245 F.3d at 6 (applying this test only to a retaliation claim).  The purposes behind the narrowed scope in subsequent civil suits are to: (1) give the EEOC "an opportunity to settle disputes through conference, conciliation, and persuasion before the aggrieved party [is] permitted to file a lawsuit," Babrocky v. Jewel Food Co., 773 F.2d 857, 863 (7th Cir. 1985)(quoting Alexander v. Gardener-Denver Co., 415 U.S. 36, 44 (1974)); and (2) put defendants on notice of the substance of the employee's charge which would also give the employer the opportunity to investigate and obtain voluntary compliance. Schnellbaecher v. Baskin Clothing Co., 887 F.2d 124, 127 (7th Cir. 1989).  The requirement for administrative exhaustion is "not a jurisdictional prerequisite, but rather is subject to waiver, estoppel, and equitable tolling."  Frederique-Alexandre v. Dept. of Natural and Environmental Resources Puerto Rico, 478 F.3d 433, 440 (1st Cir. 2007) (quoting Zipes v. Trans World Airlines,

Inc., 455 U.S. 385, 393 (1982)).  This Circuit, however, has taken a "'narrow view' of equitable

exceptions to Title VII" exhaustion requirements.  Mack v. Great Atl. and Pac. Tea Co., Inc., 871

F.2d 179, 185 (1st Cir. 1989)

     Logan's EEO Formal Complaint was received on September 5, 2003 and the following

complaint was accepted:

> Whether the Employee Benefits Security Administration (EBSA) discriminated
> against [Logan] on the bases of sex (male), age (55), disability (Bi-polar). . .  when
> on June 17, 2003 [he] was not selected for the position of Investigator (Pension),
> BOS 0329A (dated April 11, 2003) (Ex. 7).

The temporal aspects of the plaintiff's EEO Complaint and civil suit are within the statutory time

frames; however, the scope of the civil suit far exceeds that listed in the EEO Complaint.

According to Count IV of the Amended Complaint, he cites that EBSA has a practice and pattern of

not promoting males over 40 years of age (Compl. ¶ 42).  Unlike the Clockedile case which

involved retaliation being reasonably related to discrimination based on sex, this Title VII pattern

and practice claim is not reasonably related to, nor does it grow out of, the allegations of

discrimination based on sex, age, and disability made by Logan.  Similar to the decision in Jorge,

the claim of discrimination based on sex, is a separate and distinct subject than a claim of a practice

and pattern of discrimination based on sex and age.  Jorge, 404 F.3d at 564.  The formal EEO

Complaint puts the DOL on notice that Logan had alleged discriminated due to his age, disability,

and his gender, not that the agency had an overall pattern and practice of discriminating against

males over the age of 40.  The DOL, by not having notice, did not have the opportunity to properly

investigate the allegations of a more broad pattern and practice claim which requires analysis of

statistics regarding the general employment practices of EBSA.  For these reasons Logan has not

exhausted his administrative remedies regarding a pattern and practice of discrimination of men

over 40 years of age, nor has he presented any valid reasons to waive this requirement.

**2.    Logan has failed to establish a prima facie case for a pattern and practice of discrimination against males over the age of 40.**

To establish a pattern or practice of disparate treatment, for purposes of a discrimination claim under Title VII of the Civil Rights Act of 1964, Logan must show that the DOL regularly and purposefully treated members of a protected group less favorably.  A plaintiff who raises a pattern or practice discrimination claim against an employer has the initial burden of demonstrating that unlawful discrimination has been the regular policy of the employer, meaning that the discrimination was the company's "standard operating procedure-the regular rather than the unusual practice." International Bhd. of Teamsters, 431 U.S. at 360, 336.  Statistics may be useful to show differences in treatment and to establish a pattern and practice; however they are not required, particularly when the sample size is too small to produce meaningful results.  See Id. at 339-40; Bazemore v. Friday, 478 U.S. 385, 397-98 (1986).  The focus "often will not be on individual [employment] decisions, but on a pattern of discriminatory decisionmaking." International Bhd. of Teamsters, 431 U.S. at 360 n.46.  Once a plaintiff establishes a prima facie case, based on a pattern or practice theory, the burden shifts to the employer to defeat the showing by demonstrating that the plaintiff's proof is inaccurate or insignificant, or by providing a nondiscriminatory and non-pretextual explanation for the apparently discriminatory result.  Id. at 360.  Logan has not presented any statistics which demonstrate that the DOL has a pattern and practice of discriminating against males over age 40.  In fact, one of the 3 persons promoted was a male over the age of 40 at the time of the employment action.  Logan merely alleges that the practice is well-known and that this practice is evidenced by his not receiving the promotion.  Without more to reveal a pattern, it cannot be shown that it was the DOL's standard operating procedure to promote females under age 40.

**3.    The DOL has articulated a legitimate nondiscriminatory reason for not**

**promoting Logan.**

Logan alleges that since 1994, the DOL has had a pattern and practice of promoting women under the age of 40 and discriminating against males over that age. Even if Logan would be able to meet the minimal burden of establishing a prima facie case, he has not provided any statistical information that is accurate or significant in proving that a pattern and practice exists that discriminates against males over 40 years of age. Additionally, as articulated above, the decision to not promote Logan was not based on a discriminatory animus, but that other candidates were more qualified for the position. In selecting those to promote, leadership was an important factor in the decision. EBSA's practice is to promote the most qualified person for the position considering the requirements of the job. Logan was not selected for the promotion as his 3 colleagues were better-suited for the position given their experiences and backgrounds and overall performance. Once making the Certificate of Eligibles for Merit Staffing List, each candidates skills, knowledge, and abilities are compared against those of the other candidates for each of the evaluating factors (Ex. 3, Vacancy Announcement BOS-0329A, p. 3). The determining factor rated as high in selecting the 3 employees to be promoted was the "[a]bility to motivate staff and direct activities as a team leader", not gender, age or disability (Id.). Count IV should be dismissed because Logan failed to exhaust his administrative remedies.

## V.    CONCLUSION

WHEREFORE, based on the foregoing arguments, the DOL respectfully requests that the Court grant her Motion for Summary Judgment.

Respectfully submitted,

ELAINE CHAO,
SECRETARY OF THE
DEPARTMENT OF LABOR,

By her attorneys,

MICHAEL J. SULLIVAN
United States Attorney

/s/ Rayford A. Farquhar
Rayford A. Farquhar
Assistant U.S. Attorney
1 Courthouse Way, Suite 9200
Boston, MA 02465
(617) 748-3284

Dated: July 17, 2008

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on July 17, 2008.

/s/ Rayford A. Farquhar
Rayford A. Farquhar
Assistant U.S. Attorney

## Exhibit List for DOL Motion for Summary Judgment

| | |
|---|---|
| Ex. 1 | Logan Application for Federal Employment |
| Ex. 2 | Logan's Affidavit |
| Ex. 3 | Vacancy Announcement BOS-0329A |
| Ex. 4 | Certificate of Eligibles - Merit Staffing List |
| Ex. 5 | Logan Rejection Notification for Vacancy Announcement BOS-0329A |
| Ex. 6 | James M. Benages Affidavit |
| Ex. 7 | Logan's Formal EEOC Complaint |
| Ex. 8 | Susan Murphy Application for Federal Employment |
| Ex. 9 | J. Martin Shanahan Application for Federal Employment |
| Ex. 10 | Stephen Phillips Application for Federal Employment |
| Ex. 11 | Logan Performance Management Plan |
| Ex. 12 | Susan Murphy Performance Management Plan from the Office of the Inspector General |
| Ex. 13 | J. Martin Shanahan Performance Management Plan |
| Ex. 14 | Stephen Phillips Performance Management Plan |
| Ex. 15 | Susan Murphy Merit Staffing Evaluation |
| Ex. 16 | J. Martin Shanahan Merit Staffing Evaluation |
| Ex. 17 | Stephen Phillips Merit Staffing Evaluation |

Exhibit 1



# Application for Federal Employment—SF 171

Read the instructions before you complete  application. Type or print clearly in dark

Form Approved.
OMB No. 3206-0012

## GENERAL INFORMATION

**1** What kind of job are you applying for? Give title and announcement no. (if any)

Investigator (Pension), CS 1801-13
Announcement # BOS 03-29A

**2** Social Security Number

**3** Sex
[X] Male  [ ] Female

**4** Birth date (Month, Day, Year)
02/07/48

**5** Birthplace (City and State or Country)
Cleveland, OH

**6** Name (Last, First, Middle)
Logan, Tristan Lambert

Mailing address (include apartment number, if any)
49 CANNONGATE III

City,
NASHUA

State
NH

ZIP Code
03063

**7** Other names ever used (e.g., maiden name, nickname, etc.)

**8** Home Phone
Area Code   Number

**9** Work Phone
Area Code   Number   Extension

**10** Were you ever employed as a civilian by the Federal Government? If "NO", go to Item 11. If "YES", mark each type of job you held with an "X"

[ ] Temporary  [ ] Career-Conditional  [X] Career  [ ] Excepted

What is your highest grade, classification series and job title?

GS-1801-12 Step 4 Investigator (Pension)

Dates at highest grade: FROM 05/20/95   TO present

## AVAILABILITY

**11** When can you start work? (Month and Year)
ASAP

**12** What is the lowest pay you will accept? (You will not be considered for jobs which pay less than you indicate.)
Pay $_____ per _____  OR Grade _____

**13** In what geographic area(s) are you willing to work?
Any

**14** Are you willing to work:

| | YES | NO |
|---|---|---|
| A. 40 hours per week (full-time)? | X | |
| B. 25-32 hours per week (part-time)? | | X |
| C. 17-24 hours per week (part-time)? | | X |
| D. 16 or fewer hours per week (part-time)? | | X |
| E. An intermittent job (on-call/seasonal)? | | X |
| F. Weekends, shifts, or rotating shifts? | | X |

**15** Are you willing to take a temporary job lasting:

| | YES | NO |
|---|---|---|
| A. 5 to 12 months (sometimes longer)? | | X |
| B. 1 to 4 months? | | X |
| C. Less than 1 month? | | X |

**16** Are you willing to travel away from home for:

| | YES | NO |
|---|---|---|
| A. 1 to 5 nights each month? | X | |
| B. 6 to 10 nights each month? | X | |
| C. 11 or more nights each month? | X | |

## MILITARY SERVICE AND VETERAN PREFERENCE

**17** Have you served in the United States Military Service? If your only active duty was training in the Reserves or National Guard, answer "NO". If "NO", go to Item 22.

| YES | NO |
|---|---|
| | X |

**18** Did you or will you retire at or above the rank of major or lieutenant commander?

| | YES | NO |
|---|---|---|
| | | X |

THE FEDERAL GOVERNMENT IS AN EQUAL OPPORTUNITY EMPLOYER
PREVIOUS EDITION USABLE UNTIL 12-31-90

---

## FOR USE OF EXAMINING OFFICE ONLY

Date entered register

Form reviewed:
Form approved:

| Option | Grade | Earned Rating | Veteran Preference | Augmented Rating |
|---|---|---|---|---|
| | | | [ ] No Preference Claimed | |
| | | | [ ] 5 Points (Tentative) | |
| | | | [ ] 10 Pts. (30% Or More Comp. Dis.) | |
| | | | [ ] 10 Pts. (Less Than 30% Comp. Dis.) | |
| | | | [ ] Other 10 Points | |

Initials and Date

[ ] Disallowed   [ ] Being Investigated

## FOR USE OF APPOINTING OFFICE ONLY

Preference has been verified through proof that the separation was under honorable conditions, and other proof as required.

[ ] 5-Point   [ ] 10-Point—30% or More Compensable Disability   [ ] 10-Point—Less Than 30% Compensable Disability   [ ] 10-Point—Other

Signature and Title

Agency                    Date

## MILITARY SERVICE AND VETERAN PREFERENCE (Cont.)

**19** Were you discharged from the military service under honorable conditions? (If your discharge was changed to "honorable" or "general" by a Discharge Review Board, answer "YES". If you received a clemency discharge, answer "NO".) If "NO", provide below the date and type of discharge you received.

| YES | NO |
|---|---|
| | XX |

| Discharge Date (Month, Day, Year) | Type of Discharge |
|---|---|
| 03/01/71 | Honorable |

**20** List the dates (Month, Day, Year), and branch for all active duty military service.

| From | To | Branch of Service |
|---|---|---|
| 10/31/67 | 03/01/71 | U.S. Army |

**21** If all your active military duty was after October 14, 1976, list the full names and dates of all campaign badges or expeditionary medals you received or were entitled to receive.

N/A

**22** Read the instructions that came with this form before completing this item. When you have determined your eligibility for veteran preference from the instructions, place an "X" in the box next to your veteran preference claim.

[X] NO PREFERENCE

[ ] 5-POINT PREFERENCE – You must show proof when you are hired.

[ ] 10-POINT PREFERENCE – If you claim 10-point preference, place an "X" in the box below next to the basis for your claim. To receive 10-point preference you must also complete a Standard Form 15, Application for 10-Point Veteran Preference, which is available from any Federal Job Information Center. ATTACH THE COMPLETED SF 15 AND REQUESTED PROOF TO THIS APPLICATION.

[ ] Non-compensably disabled or Purple Heart recipient.

[ ] Compensably disabled, less than 30 percent.

[ ] Spouse, widow(er), or mother of a deceased or disabled veteran.

[ ] Compensably disabled, 30 percent or more.

NSN 7540-00-935-7150    171-110    Standard Form 171 (Rev. 6-88)
U.S. Office of Personnel Management

---

Tab F5 p.1

**WORK EXPERIENCE** *If you have no work experience, write "NONE" in A below and go to 25 on page 3.*

**3** May we ask your present employer about your character, qualifications, and work record? A "NO" will not affect our review of your qualifications. If you answer "NO" and we need to contact your present employer before we can offer you a job, we will contact you first. . . . . . | YES | NO

**4** READ WORK EXPERIENCE IN THE INSTRUCTIONS BEFORE YOU BEGIN.

- Describe your current or most recent job in Block A and work backwards, describing each job you held during the past 10 years. If you were unemployed for longer than 3 months within the past 10 years, list the dates and your address(es) in an experience block.
- You may sum up in one block work that you did more than 10 years ago. But if that work is related to the type of job you are applying for, describe each related job in a separate block.
- INCLUDE VOLUNTEER WORK (non-paid work)—If the work (or a part of the work) is like the job you are applying for, complete all parts of the experience block just as you would for a paying job. You may receive credit for work experience with religious, community, welfare, service, and other organizations.

- INCLUDE MILITARY SERVICE—You should complete all parts of the experience block just as you would for a non-military job, including all supervisory experience. Describe each major change of duties or responsibilities in a separate experience block.
- IF YOU NEED MORE SPACE TO DESCRIBE A JOB—Use sheets of paper the same size as this page (be sure to include all information we ask for in A and B below). On each sheet show your name, Social Security Number, and the announcement number or job title.
- IF YOU NEED MORE EXPERIENCE BLOCKS, use the SF 171-A or a sheet of paper.
- IF YOU NEED TO UPDATE (ADD MORE RECENT JOBS), use the SF 172 or a sheet of paper as described above.

**A** | Name and address of employer's organization (include ZIP Code, if known) | Dates employed (give month, day and year) | Average number of hours per week | Number of employees you supervise
---|---|---|---|---
United States Department of Labor Pension and Welfare Benefits Administration Boston, MA 02114 | From: 05/19/91   To: present | 40 | 0
 | Salary or earnings | Your reason for wanting to leave |
 | Starting $ 31,116 per year | No desire to leave |
 | Ending 70,124 per year | Seeking Promotion |

Your immediate supervisor | | Exact title of your job | | If Federal employment (civilian or military) list series, grade or
Name  ED MALONEY | Area Code | Telephone No. 617  565-9616 | Investigator (Pension) | rank, and, if promoted in this job, the date of your last promotion  GS-1801 Grade 12 Step 4 05/20/95

Description of work: Describe your specific duties, responsibilities and accomplishments in this job, including the job title(s) of any employees you supervise. If you describe more than one type of work (for example, carpentry and painting, or personnel and budget), write the approximate percentage of time you spent doing each.

My position as a PWBA Investigator involves both civil and criminal ERISA enforcement activities. Typically, those activities include desk audits and/or on-site investigations of employee benefit plans and plan service providers. My investigations and desk audits generally consist of reviews of plan documents, including the legal documents used to establish the plans and their funds, as well as a variety of financial records. My examination of the plan documents verifies that each plan is being administered in accord with the original intent of its founders, as well as within the minimum fiduciary standards mandated by ERISA. My review of each plan's financial records establishes both the security of the plan's assets and that plan assets are being managed in the prudent manner required by ERISA. My interviews of plan fiduciaries, service providers, participants and/or beneficiaries provide an opportunity to ask questions of the parties who exercise discretion in the administration of employee benefit plans, as well as those who are affected by the decisions made. Their answers to my questions provide clarification and help to identify issues in need of additional scrutiny. My competence to review plan documents effectively and conduct productive interviews has been demonstrated by my ability to recognize potential issues that those documents may suggest in the context of ERISA, the DOL Regulations and the enforcement policies of DOL. Moreover, my casework [For Agency Use (skill codes, etc.)]
PLEASE REFER TO THE CONTINUATION PAGES ATTACHED

**B** | Name and address of employer's organization (include ZIP Code, if known) | Dates employed (give month, day and year) | Average number of hours per week | Number of employees you supervised
---|---|---|---|---
U.S. Department of the Treasury Internal Revenue Service 200 North High St. Columbus, OH 43210 | From: 01/88   To: 05/91 | 40 | 0
 | Salary or earnings | Your reason for leaving |
 | Starting $18,728 per year | Career |
 | Ending $23,429 per year | Advancement |

Your immediate supervisor | | Exact title of your job | | If Federal employment (civilian or military) list series, grade or
Name  Bob Winship | Area Code 614 | Telephone No. 469-6821 | Revenue Officer | rank, and, if promoted in this job, the date of your last promotion  GS-1169-9

Description of work: Describe your specific duties, responsibilities and accomplishments in this job, including the job title(s) of any employees you supervised. If you describe more than one type of work (for example, carpentry and painting, or personnel and budget), write the approximate percentage of time you spent doing each.

As a Federal Revenue Officer my duties and responsibilities were to conduct taxpayer delinquency investigations and to resolve delinquent accounts. The duties I preformed included: obtaining documentary evidence, conducting interviews, serving summons, participating in raids and seizures, conducting sales of property, equipment, and vehicles, preparing affidavits and writs of entry, preparing investigative reports, identifying potential tax fraud cases and potentially dangerous taxpayers, filing federal tax liens, preparing and serving levies against wages, bank accounts, etc., examining records and files, examining tax returns, and testifying in hearings and trials when necessary.

For Agency Use (skill codes, etc.)

Tab F5 p.2

Tristan Logan

CONTINUATION SHEET FOR WORK EXPERIENCE BLOCK "A"

The investigations I conduct are of large and varied employee benefit plans, service providers, trust departments, and other financial entities having relationships and transactions with plans. The plans usually have large numbers of participants, large sums of plan assets, complex organizational structures and complex financial transactions. Most of my investigations are developed from fragmentary or cold evidence that is acquired on the basis of targeting data, disclosure and reporting information, data and information from other investigations, complaints from plan participants, or media coverage and other sources. The issues and violations are usually difficult to establish and prove because of incomplete or complex accounting and financial management records and systems, variety of operations and involvement in several financial activities.

The criminal investigations I conduct typically stem from civil investigations, are complex in nature, and require discrete handling of facts and evidence because of the sensitivity of the investigations to the principals involved. They demand a high degree of skill to establish the elements of proof through demonstration of the interrelationships of fact and evidence and usually involve violations of:18 USC 664 (theft or embezzlement from employee benefit plans), 18 USC 371 (conspiracy), 18 USC 1027 (false statements and concealment of facts), 18 USC 1001 (false statements or entries), 18 USC 201 (bribery), and 18 USC 1954 (offer, acceptance, or solicitation to influence operations of employee benefit plans)

My duties and responsibilities include: initiating, planning, directing, and independently conducting, both civil and criminal investigations; conducting financially-related investigations using audit, accounting and money tracing techniques; interviewing informants, complainants, witnesses, suspects, and subjects; administering oaths, serving subpoenas; gathering evidence, analyzing testimony, examining records, documents, and financial transactions, preparing comprehensive reports and recommendations for further action; providing technical guidance, initiating and maintain liaison with Federal, State, and local law enforcement authorities and with other organizations inside and outside of the Service for purposes of obtaining, securing, and exchanging factual information and testimony; presenting investigative findings, both orally and in report form, to U.S. Attorneys for determination of the prosecutive merits of the case; and testifying before grand juries, courts, and administrative hearings on results of completed investigations.

I discern the magnitude of each case and collect, segregate and develop facts that will lead to either: administrative closing, voluntary compliance, civil litigation, or criminal prosecution.

*Tab F5 p. 3*

Standard Form 171-A—C ntinuation Sheet for SF 1 !

• Attach all SF 171-A's to your application at the top of page 3.

Form Approved.

| Name (Last, First, Middle Initial) | 2. Social Security Number |
|---|---|
| Logan, Tristan Lambert | |

| Job Title or Announcement Number You Are Applying For | 4. Date Completed |
|---|---|
| Investiagtor (Pensi n) GS-1801-13  Announcement # BOS  *03-29A* | |

**ADDITIONAL WORK EXPERIENCE BLOCKS**

**C** Name and address of employer's organization (include ZIP Code, if known)

Independent Contractor
Tristan Logan
P.O. Box 82 RR 1
Hide-Away-Hills, OH 43107

| Dates employed (give month, day and year) | | Average number of hours per week | Number of employees you supervised |
|---|---|---|---|
| From: 8/85 | To: 12/87 | 40 | 2 |

| Salary or earnings | | Your reason for leaving |
|---|---|---|
| Starting $ 900 | per month | Effects of tax reform on |
| Ending $2,250 | per month | real estate syndication |

| Your immediate supervisor | | | Exact title of your job | If Federal employment (civilian or military) list series, grade or rank, and, if promoted in this job, the date of your last promotion |
|---|---|---|---|---|
| Name | Area Code | Telephone No. | | |
| n/a | n/a | n/a | Research Consultant | n/a |

Description of work: Describe your specific duties, responsibilities and accomplishments in this job, including the job title(s) of any employees you supervised.  If you describe more than one type of work (for example, carpentry and painting, or personnel and budget), write the approximate percentage of time you spent doing each.

My responsibilities and duties included: assisted in project research and duties for real estate development projects in the 3.5 to 8.5 million dollar range. Engaged in data acquisition and analysis; conducted feasibility studies; computer modeling and simulation studies and analysis, and prepared written reports of same; assisted in site analysis and selection; assisted in project organization and direction; compared and contrasted alternative courses of action in terms of cost effectiveness and projected organizational needs, and assisted in formulating policies and ways to meet those needs; conducted systematic, critical, and intensive investigation directed towards new project development.

For Agency Use (skill codes, etc.)

**D** Name and address of employer's organization (include ZIP Code, if known)

Department of Philosophy
350 N. Oval Mall
Ohio State University
Columbus, OH 43210

| Dates employed (give month, day and year) | | Average number of hours per week | Number of employees you supervised |
|---|---|---|---|
| From: 09/81 | To: 06/85 | 20 | 0 |

| Salary or earnings | | Your reason for leaving |
|---|---|---|
| Starting $600 | per month | Teaching contract |
| Ending $750 | per month | expired |

| Your immediate supervisor | | | Exact title of your job | If Federal employment (civilian or military) list series, grade or rank, and, if promoted in this job, the date of your last promotion |
|---|---|---|---|---|
| Name | Area Code | Telephone No. | Instructor of Logic | |
| Dr. Robert Turnbull | 614 | | Graduate Teaching Associate | n/a |

Description of work: Describe your specific duties, responsibilities and accomplishments in this job, including the job title(s) of any employees you supervised.  If you describe more than one type of work (for example, carpentry and painting, or personnel and budget), write the approximate percentage of time you spent doing each.

As an Instructor of Logic and a Graduate Teaching Associate I was solely responsible for framing and implementing undergraduate Formal/Informal Logic courses focusing on the development of general analytic skills and abilities, and the ability to translate statements inordinary language into mathematically precise terms for determination of the truth grounds of propositions and/or arguments. I instructed and supervised students in the use of a PHOENIX system computer assisted and managed instructional logic lab. I prepared and delivered lectures, developed, administered, and evaluated examinations, and evaluated student performance in terms of understanding and retention of concepts, and assigned final course grades.

I performed these duties while engaged in full-time Ph. D. studies.

For Agency Use (skill codes, etc.)

THE FEDERAL GOVERNMENT IS AN EQUAL OPPORTUNITY EMPLOYER

Tab F5 p.4

ATTACH ANY ADDITIONAL FORMS AND SHEETS HERE

## EDUCATION

**5** Did you graduate from high school? If you have a GED high school equivalency or will graduate within the next nine months, answer "YES".

YES ☐   If "YES", give month and year graduated
NO ☐   or received GED equivalency: ............... 06/66
If "NO", give the highest grade you completed: _____

**26** Write the name and location (city and state) of the last high school you attended or where you obtained your GED high school equivalency.

Westlake High School, Westlake, OH

**27** Have you ever attended college or graduate school?   YES ☒   If "YES", continue with 28.
NO ☐   If "NO", go to 31.

**28** NAME AND LOCATION (city, state and ZIP Code) OF COLLEGE OR UNIVERSITY... If you expect to graduate within nine months, give the month and year you expect to receive your degree.

| Name | City | State | ZIP Code | MONTH AND YEAR ATTENDED From | To | NUMBER OF CREDIT HOURS COMPLETED Semester | Quarter | TYPE OF DEGREE (e.g. B.A., M.A.) | MONTH AND YEAR OF DEGREE |
|---|---|---|---|---|---|---|---|---|---|
| 1) Cleveland State University | Cleveland | OH | 44145 | 9/74 | 6/77 | 212 | | B.A. | 6/77 |
| 2) Cleveland State University | Cleveland | OH | 44145 | 9/77 | 6/81 | 56 | | n/a | n/a |
| 3) Ohio State University | Columbus | OH | 43201 | 9/81 | 9/85 | 169 | | M.A. | 6/84 |

**29**
| CHIEF UNDERGRADUATE SUBJECTS Show major on line first line | NUMBER OF CREDIT HOURS COMPLETED Semester | Quarter |
|---|---|---|
| 1) Logic & Philosophy | 84 | |
| 2) Psychology | 28 | |
| 3) Anthropology | 20 | |

**30**
| CHIEF GRADUATE SUBJECTS Show major on the first line | NUMBER OF CREDIT HOURS COMPLETED Semester | Quarter |
|---|---|---|
| 1) Logic & Philosophy | 169 | |
| 2) Currently writing Ph.D. dissertation | | |
| 3) | | |

**31** If you have completed any other courses or training related to the kind of jobs you are applying for (trade, vocational, Armed Forces, business) give information below.

| NAME AND LOCATION (city, state and ZIP Code) OF SCHOOL | MONTH AND YEAR ATTENDED From | To | CLASS-ROOM HOURS | SUBJECT(S) | TRAINING COMPLETED YES | NO |
|---|---|---|---|---|---|---|
| School Name 1) Federal Law Enforcement Training Center (FLETC) | 7/94 | 7/94 | | Advanced Interviewing Techniques | X | |
| City Brunswick | State GA | ZIP Code | | | | |
| School Name 2) *** SEE ATTACHED SHEET *** | | | | | | |
| City | State | ZIP Code | | | | |

## SPECIAL SKILLS, ACCOMPLISHMENTS AND AWARDS

**32** Give the title and year of any honors, awards or fellowships you have received. List your special qualifications, skills or accomplishments that may help you get a job. Some examples are: skills with computers or other machines; most important publications (do not submit copies); public speaking and writing experience; membership in professional or scientific societies; patents or inventions; etc.

Graduate Student Scholarship, Cleveland State University, 1979
Butler Award, Philosophy Dept. Cleveland State University, 1980
Graduate Scholarship, Philosophy Dept., University of Arizona, 1981
Graduate Teaching Associateship, Philosophy Dept., Ohio State University, 1981 - 1985
Outstanding Teaching Associate nomination, Graduate School, Ohio State University, 1985

**33** How many words per minute can you:
TYPE? ☐   TAKE DICTATION? ☐
Agencies may test your skills before hiring you.

**34** List job-related licenses or certificates that you have, such as: registered nurse; lawyer; radio operator; driver's; pilot's; etc.

| | LICENSE OR CERTIFICATE | DATE OF LATEST LICENSE OR CERTIFICATE | STATE OR OTHER LICENSING AGENCY |
|---|---|---|---|
| 1) | Drivers license | 09/13/94 | New Hampshire |
| 2) | Commercial pilot license, h/air balloon | 05/93 | FAA |

**35** Do you speak or read a language other than English (include sign language)? Applicants for jobs that require a language other than English may be given an interview conducted solely in that language.
YES ☐   If "YES", list each language and place an "X" in each column that applies to you.
NO ☐   If "NO", go to 36.

| LANGUAGE(S) | CAN PREPARE AND GIVE LECTURES Fluently | With Difficulty | CAN SPEAK AND UNDERSTAND Fluently | Passably | CAN TRANSLATE ARTICLES Into English | From English | CAN READ ARTICLES FOR OWN USE Easily | With Difficulty |
|---|---|---|---|---|---|---|---|---|
| 1) French | | | | X | X | | | X |
| 2) | | | | | | | | |

## REFERENCES

**36** List three people who are not related to you and are not supervisors you listed under 24 who know your qualifications and fitness for the kind of job for which you are applying. At least one should know you well on a personal basis.

| FULL NAME OF REFERENCE | TELEPHONE NUMBER(S) (include Area Code) | PRESENT BUSINESS OR HOME ADDRESS (Number, street and city) | STATE | ZIP CODE |
|---|---|---|---|---|
| 1) Dr. Bernard Rosen | ▬▬▬ | Phil. Dept. Ohio State Univ. | OH | 43201 |
| 2) Dr. Lee Werth | ▬▬▬ | Phil. Dept. Clev. State Univ. | OH | 44145 |
| 3) Robert Kreps, Attorney | ▬▬▬ | 21400 Lorain Rd Fairview Park | OH | 44126 |



Tab F5 p.5

## BACKGROUND INFORMATION - You must answer each question...

| | | YES | NO |
|---|---|---|---|
| **37** | Are you a citizen of the United States? (In most cases you must be a U.S. citizen to be hired. You will be required to submit proof of identity and citizenship at the time you are hired.) If "NO", give the country or countries you are a citizen of: | | XX |

**NOTE:** It is important that you give complete and truthful answers to questions 38 through 44. If you answer "YES" to any of them, provide your explanation(s) in Item 45. Include convictions resulting from a plea of nolo contendere (no contest). Omit: 1) traffic fines of $100.00 or less; 2) any violation of law committed before your 16th birthday; 3) any violation of law committed before your 18th birthday, if finally decided in juvenile court or under a Youth Offender law; 4) any conviction set aside under the Federal Youth Corrections Act or similar State law; 5) any conviction whose record was expunged under Federal or State law. We will consider the date, facts, and circumstances of each event you list. In most cases you can still be considered for Federal jobs. However, if you fail to tell the truth or fail to list all relevant events or circumstances, this may be grounds for not hiring you, for firing you after you begin work, or for criminal prosecution (18 USC 1001).

| | | YES | NO |
|---|---|---|---|
| **38** | During the last 10 years, were you fired from any job for any reason, did you quit after being told that you would be fired, or did you leave by mutual agreement because of specific problems? | | XX |
| **39** | Have you ever been convicted of, or forfeited collateral for any felony violation? (Generally, a felony is defined as any violation of law punishable by imprisonment of longer than one year, except for violations called misdemeanors under State law which are punishable by imprisonment of two years or less.) | | XX |
| **40** | Have you ever been convicted of, or forfeited collateral for any firearms or explosives violation? | | XX |
| **41** | Are you now under charges for any violation of law? | | XX |
| **42** | During the last 10 years have you forfeited collateral, been convicted, been imprisoned, been on probation, or been on parole? Do not include violations reported in 39, 40, or 41, above. | | XX |
| **43** | Have you ever been convicted by a military court-martial? If no military service, answer "NO". | XX | |
| **44** | Are you delinquent on any Federal debt? (Include delinquencies arising from Federal taxes, loans, overpayment of benefits, and other debts to the U.S. Government plus defaults on Federally guaranteed or insured loans such as student and home mortgage loans.) | | XX |

**45** If "YES" in: 38 - Explain for each job the problem(s) and your reason(s) for leaving. Give the employer's name and address.
39 through 43 - Explain each violation. Give place of occurrence and name/address of police or court involved.
44 - Explain the type, length and amount of the delinquency or default, and steps you are taking to correct errors or repay the debt. Give any identification number associated with the debt and the address of the Federal agency involved.
**NOTE:** If you need more space, use a sheet of paper, and include the item number.

| Item No. | Date (Mo./Yr.) | Explanation | Mailing Address |
|---|---|---|---|
| 43 | 05/69 | AWOL, JFK Special Warfare School Special Courts Martial Terminated from Special Forces | Name of Employer, Police, Court, or Federal Agency: U.S. Army<br>City: Fort Bragg   State: N C   ZIP Code: |
| | | | Name of Employer, Police, Court, or Federal Agency:<br>City:   State:   ZIP Code: |

| | | YES | NO |
|---|---|---|---|
| **46** | Do you receive, or have you ever applied for retirement pay, pension, or other pay based on military, Federal civilian, or District of Columbia Government service? | | |

**47** Do any of your relatives work for the United States Government or the United States Armed Forces? Include: father; mother; husband; wife; son; daughter; brother; sister; uncle; aunt; first cousin; nephew; niece; father-in-law; mother-in-law; son-in-law; daughter-in-law; brother-in-law; sister-in-law; stepfather; stepmother; stepson; stepdaughter; stepbrother; stepsister; half brother; and half sister. If "YES", provide details below. If you need more space, use a sheet of paper.

| Name | Relationship | Department, Agency or Branch of Armed Forces |
|---|---|---|
| | | |
| | | |

## SIGNATURE, CERTIFICATION, AND RELEASE OF INFORMATION

### YOU MUST SIGN THIS APPLICATION.   Read the following carefully before you sign.

- A false statement on any part of your application may be grounds for not hiring you, or for firing you after you begin work. Also, you may be punished by fine or imprisonment (U.S. Code, title 18, section 1001).
- If you are a male born after December 31, 1959 you must be registered with the Selective Service System or have a valid exemption in order to be eligible for Federal employment. You will be required to certify as to your status at the time of appointment.
- I understand that any information I give may be investigated as allowed by law or Presidential order.
- I consent to the release of information about my ability and fitness for Federal employment by employers, schools, law enforcement agencies and other individuals and organizations, to investigators, personnel staffing specialists, and other authorized employees of the Federal Government.
- I certify that, to the best of my knowledge and belief, all of my statements are true, correct, complete, and made in good faith.

| **48** SIGNATURE (Sign each application in dark ink) | **49** DATE SIGNED (Month, day, year) |
|---|---|
| *[signature]* | 4/17/03 |

*Tab F5 p.6*

Tristan Logan


CONTINUATION SHEET FOR RELATED TRAINING

**School Name**

U.S. Department of the Treasury
Federal Law Enforcement Training
Center (FLETC)
Financial Fraud Institute
Glynco, GA

U.S. Department of Labor
Pension & Welfare Benefits Admin.
Boulder, CO

U.S. Department of Labor
Pension & Welfare Benefits Admin.
Boulder, CO

U.S. Department of Labor
Pension & Welfare Benefits Admin.
Boulder, CO

U.S. Department of Labor
Pension & Welfare Benefits Admin.
Boulder, CO

U.S. Treasury Department
Internal Revenue Service
Cincinnati, OH

**Subject**

White Collar Crime
Training Program
12/05/94 - 12/16/94
80 hours

Criminal Enforcement
Training Program,
8/12/94 - 8/12/94
60 hours

Financial Institutions
10/27/92 - 11/06/92
80 hours

Accounting
6/02/92 - 6/12/92
80 hours

Investigative Techniques
7/28/91 - 8/17/91
120 hours

Revenue Officer
Training
Phases I, II & III
1988
280 hours

Tab FS p.7

Vacancy Announcement # BOS 01-29          Tristan Logan
Title: Investigator (Pension) GS-1801-13    

Supplemental Statement Addressing Evaluation Factors

1. *Knowledge of the Laws, regulations and policies of the Department of Labor with regard to enforcement of the provisions of ERISA or the knowledge of similarly complex laws such as the Federal securities and commodities laws, tax laws, or banking laws.*

I regularly perform investigations involving complex or subtle violations of ERISA. I am proficient at interpreting both ERISA and related regulations and applying the law correctly throughout the course of the investigation. My past performance appraisals and work product consistently indicate that I have a through understanding of ERISA and the various regulations promulgated by the Department of Labor. The high quality of my Reports of Investigation and referral memos evidence that in addition to having a knowledge of ERISA and its applicable complex body of law, I also have the ability to apply the law correctly to a complex set of facts and circumstances.

2. *Sound knowledge of, and an extensive background in, the specialized areas of procedures and laws governing investigations, as well as the experiencing in determining that adequate proof exists of all elements of an alleged violation of law. This must include in-depth understanding of the entire spectrum of an enforcement action.*

My performance as an investigator with EBSA demonstrates that I have the training, knowledge and documented ability to conduct complete and through investigations. Particularly noteworthy is my ability to make successful referrals for criminal prosecution. My referrals are not often subject to declination by prosecutors.

Criminal investigations require the investigator to develop a comprehensive body of evidence (often times while parties



difficult factual and legal matters. Investigations involving prevailing wage benefit plans are frequently factually complicated. There may be as many as ten or more different projects underway at any time. Each project often involves a series of contracts. These contracts may specify a variety of different benefit contribution rates. The contribution rates are at time modified during the course of the project. Finally, there may be a number of parties (other than the employer), which may be contractually or statutorily obligated to make wage payments or contributions to the benefit plans.

My successful resolution of such cases demonstrates my ability to coordinate investigations of difficult factual and legal matters.

  5. *Ability to communicate effectively both orally and in writing.*

I have consistently demonstrated the ability to communicate effectively both orally and in writing while performing the duties of an EBSA investigator. I have been highly successful in making case presentations to Assistant U.S. Attorneys and Assistant Attorneys General on criminal matters. I also regularly communicate with Department of Labor attorneys from both the Boston Regional Solicitor's office and the New York Regional Solicitor's Office.

My Reports of Investigation, Reports of Interview, Voluntary Compliance Letters and Litigation Memos are well organized and complete. My ability to make successful criminal and civil referrals demonstrates my ability to communicate effectively in writing.

Tab FS p. 10

are attempting to conceal material facts, destroy evidence and otherwise obscure the truth) and scrupulously maintain that evidence during prolonged periods of time.

In my criminal investigations I have consistently been able to develop such an overwhelming body of evidence that prosecutors are able to take a very aggressive position in both selecting charges and plea negotiations. Additionally, I have been diligent in developing and disclosing any and all-exculpatory matters to ensure that my conduct and the conduct of EBSA are above reproach from defense attorneys or the court.

3. *Ability to motivate staff and direct activities as a team leader.*

During one complex civil investigation involving complex investments in derivatives by a number of Taft-Hartley plans I directed the activities of two senior investigators. I also maintained a high level of knowledge about all developments in the case and served as the point of contact with our regional solicitor. Approximately $4,000.000.00 in plan assets was recovered for the plans. I received a cash award as a result of my performance on this investigation.

As a Revenue Officer with the Internal Revenue Service I frequently and successfully planned, lead and executed raids with teams of Revenue Officers that resulted in the seizure of real, commercial or personal property from excessively delinquent taxpayers that conducted investigation on. I also successfully planned, lead and conducted the sales of seized property. My successes in these activities demonstrate my strong ability to motivate staff and direct activities as a team leader.

4. *Ability to coordinate investigations of difficult factual and legal matters.*

I have conducted a number of civil and criminal investigations that are factually complicated, such as the derivatives case I mentioned in # 3. I have also conducted a number of prevailing wage cases and Taft-Hartley that had

*Tab F5 p. 9*

Exhibit 2

## COMPLAINANT'S AFFIDAVIT

I, (name) _Tristan Logan_

am an ✓ employee of ___ applicant to ___ former employee of the U.S. Department of Labor's:

(Agency) _Employee Benefits Security Administration_

(Office) _Boston_

(Division) _Enforcement_

(Branch) _N/A_

Located in (city and state) _Boston, MA_

In the capacity of (show both your organization title and the classification of your job, if different):

_____

Grade _11_ between (date) _5/92_ and (date) _Present_

My telephone number during working hours is: _617-565-9652_

## I HAVE BEEN ADVISED OF THE FOLLOWING:

I have an obligation to cooperate fully with the investigator, who has been assigned to conduct a thorough and impartial investigation of my complaint of discrimination. Therefore, I must provide a statement for the investigative record which is true and complete to the best of my knowledge and belief and which fully addresses the issues accepted for investigation. My tatement must be specific with regard to names, dates, places, circumstances and related events, and disclose my firsthand knowledge of any directly related information which is relevant to the issue(s). My statement, along with my Informal Complaint, Counselor's Summary Report, my Formal Complaint, and the description of the issue(s) for investigation shall serve as the basis for the investigation. While I may voluntarily submit any additional documents or information to the investigator for consideration, it will be the investigator's responsibility to determine what evidence shall actually become part of the investigative report. If there are any documents or facts which substantiate my allegations, I must provide them to the investigator, or make them known to the investigator. I may suggest witnesses to be interviewed by the investigator. However, the investigator will decide which witnesses to interview based on relevant information he or she feels will be furnished.

My statement is made under oath (or affirmation), without a pledge of confidentiality, in accordance with the rules, regulations, policies, and procedures of the Equal Employment Opportunity Commission and the Department of Labor. This means that any employee(s) whom I accuse of discrimination or other acts of impropriety may be shown this statement or relevant portions and be given an opportunity to respond. Agency officials responsible for processing complaints of discrimination will have access to the entire investigative report. If discrimination is found, any employee accused of discrimination will have an opportunity to review a sanitized version of the report. If discrimination is found and disciplinary action is proposed, the employee accused of discrimination will have an opportunity to review the report in its entirety without deletions. Participants in the discrimination complaint process are specifically protected by law and the EEO regulations from any acts of reprisal, discrimination, coercion, harassment, restraint, or inference for their participation in the investigation and other phases of complaint processing.

I have the right to be represented by a person of my choice during presentation of my complaint and preparation of my statement (so long as my choice does not result in a conflict of interest). I have ✓ have not ___ chosen a personal representative at this stage of my complaint. In the event I have not chosen a representative but obtain a representative at a later date, I will advise the investigator and the Director of the Civil Rights Center in writing.

I have the right to review my statement prior to signing it, and may make initialed corrections if it is incomplete or inaccurate. I have a right to receive a copy of the signed statement.

.aving reviewed the preceding information with the investigator, I solemnly ✓ swear ___ affirm that the statement which follows is true and complete to the best of my knowledge and belief, and fully addresses the issues and allegations raised by me in my EEO complaint.

_T26 F1 p.1_



# Tristan Logan, **Esq.**

49 Cannongate III
Nashua, NH 03063
(603) 886-8133
e-mail: tllogan@comcast.net

January 25, 2004

### Response to EEO Complaint Questionnaire on Case No: 03-01-158

Responses:

#1.  Tristan Lambert Logan, 49 Cannongate III Nashua, NH. 03063

#2.  I am an adult male, 55 years old

#3   I have been involved in two previous EEO complaints The case numbers of
     those two complaints are:

     1. CRC Case No. 02-01-084
     2. CRC Case No. 03-01-053

     The date of acceptance for case no. 02-01-084 was March 2002. The
     allegations and issues accepted were: discrimination on the basis of age
     and disability, creating a hostile work environment, failure to provide and
     affirmative action program, and preclusion from career enhancing
     assignments.

     The date of my informal complaint for case no. 03-01-053 was November
     23, 2002. The issues and allegations accepted were for reprisal.

#4.  Mr. James Benages, Boston Office Regional Director, was the selecting
     official for vacancy announcement no. BOS 03-29A. At the time of the
     selection Mr. Benages was aware of my participation in the EEO process.
     He was aware of it because he was named in them and he responded in
     writing to the EEO investigators inquiries.

#5.  I have worked with Mr. Benages since May 1991. He is well aware of my sex
     and age. Mr. Benages has been aware of my disability since January 1999
     when I provided management with a letter from my doctor stating that I had
     bi-polar disorder.

1

Tab F.l  p.**2**




#6.  I applied for the position in question through the standard method of submitting an application. I had a brief interview for the position by Mr. Benages.

#7.  My impairment/disability is bi-polar disorder (manic – depression) and attention deficit disorder.

#8.  See the attached doctor's statements.

#9.  See the attached doctor's statements.

#10.  Mr. James Benages is the agency official involved in making the selection decision. Mr. Benages knows of my disability through: conversations with me, letters from my doctor, conversation with my supervisor Ed Maloney, and through being named in other EEOC action for discrimination based upon disability.

#11  I was qualified to perform the essential functions of the position I applied for because of my experience, past performance, and the fact that I made the certificate of eligible list.

#12.  I was eligible/qualified position I applied for because; I met all of the qualification requirements as a result of my education, experience, past performance, and the fact that I made the certificate of eligible list. I have 13 years experience as an investigator of which 10 years is at the grade 12 level. I also have two advanced degrees; one is a Juris Doctorate (Law) degree.

#13.  I satisfied all of the requirements for applying for this position because I met all of the qualification requirements as a result of my education, experience, past performance, and the fact that I made the certificate of eligible list.

#14.  One of the applicants selected was a woman named Susan Murphy. My qualifications as plainly superior to hers because:

- She had qualified for the GS 13 position for only 3 months where as I have been qualified for it for approximately 10 years.
- She had not completed Our Basic Training before her promotion and was basic training at the time of her selection. Furthermore, she had not completed The Accounting Course, Financial Institutions Training or the Criminal Training Course. I have successfully completed all of those courses.
- From her date of hire to the date of promotion she only closed 11 limited review Program 53 cases, which did not meet Mr. Benages' expectations for investigators per his April 23, 2002 memo in which

2



Tab F1 p.3

 

he states that the processing of 30 cases and 2 referrals for litigation is an appropriate goal for investigators.

- During this past rating period I exceeded Mr. Benages expectations by processing 31 cases and having 2 referrals for litigation.
- During my time with the agency I have processed approximately 211 cases or approximately 20 times more cases then Ms. Murphy
- My 13 years of experience and the knowledge acquired from that experience is plainly superior to her 13 months experience.
- My educational background is plainly superior to hers. I have 2 advanced degrees. One of the degrees is a Juris Doctorate (Law) degree. Ms. Murphy has no advanced degrees.

#15. I believe that Mr. Benages, as the selecting official, intentionally discriminated against me on the basis of sex, age, disability, and/or reprisal because:

- With regards to disability, Mr. Benages has demonstrated a hostility and bias to me as a person with a disability by referring to me " to other members of the Department as being "mentally ill.
- Mr. Benages has a history of hiring and promoting women under 40. This is well known in our office. Since January 2001 Mr. Benages hired 23 persons for investigator and benefit advisor positions. Of the hires 20 were female and only 3 were male.
- With regards to age discrimination, senior investigator promotion statistics in the Boston Office demonstrate disparate treatment. It takes employees over the age of 40 years old approximately 3 times longer to be promoted to senior investigator than those under 40.
- All the selectees in this current round of promotion were under the age of 40 years old, specifically Ms. Murphy. I am over 40 years old, yet I was not chosen even though my experience and qualifications are plainly superior to hers
- I believe reprisal has played a role in my non-selection because Mr. Benages has a history of hostile and vindictive behavior towards persons that are not in his favor.

# 16. Section 501 of the Rehabilitation Act of 1973 requires federal agencies to develop affirmative action programs for advancement of people with disabilities. Federal agency managers and supervisors are responsible for advancement of people with disabilities, to include career development and promotion opportunities. For over three years now I have repeatedly requested to be involved an affirmative action but program but my requests have gone ignored and nothing has ever been done about it. I have requested this from my supervisor Edward Maloney on numerous occasions. I have even provided him with materials showing him the department has an obligation to allow me to participate in affirmative action

3



Tab F-1 p.4

program. Indeed. I have even pointed out to him that I have a disability that is "targeted" for emphasis in affirmative action planning.

Tristan Logan

Tab F-l p.5



**LIFE
BRIDGE**
ASSOCIATES

Dear Mr. Maloney

Tristan Logan was evaluated and diagnosed with bipolar disorder. Bipolar disorder affects and substantially limits all major life activities, including one's ability to perform work.

As a condition of his bipolar disorder, Mr. Logan is experiencing major depression that limits his functioning. I recommend a minimum of six weeks medical leave, from Thursday, January 22, 2004, to March 5, 2004. This time will allow Mr. Logan to undergo more intensive psychopharmacological and psychotherapeutical treatment. He will be re-evaluated prior to his return to work, which he is expected to be able to do.

If you have any questions, please call me.

Sincerely,

Tom Deluse Psy D

20 Park Plaza

Suite 611

Boston,
Massachusetts
02116

617
292-7792
292-7711

Tab F-1 p.6



February 6, 2002

Edward Maloney, Group Supervisor
U.S. Department of Labor/PWBA
JFK Federal Building - Room 575
Boston, MA 02203



**L I F E
BRIDGE**
A S S O C I A T E S

Dear Mr. Maloney:

I am writing to recommend that Tristan Logan be approved for a permanent formal flexiplace work accommodation.

In my letter to you dated January 7, 1999, I informed you that Mr. Logan was diagnosed as having a bipolar disorder. Bipolar disorder affects and substantially limits all major life activities, including, but not limited to, caring for oneself, eating, sleeping, learning, socializing and performing work. It can significantly restrict the condition, manner, or duration under which an individual can perform a major life activity. Bipolar disorder, is a permanent disorder for which there is no known cure, is a serious, sometimes life-threatening disorder that can get worse without appropriate treatment.

Since his diagnosis, Mr. Logan has been treated with combination of psychopharmacology and individual psychotherapy. Although Mr. Logan has learned to manage his mental illness, unfortunately at times, he experiences substantial limits to his life activities.

In my January 7,1999 letter, I recommended that Mr. Logan work flexiplace at home a maximum of three days a week. However, at this present time, because the stresses of his job in a reported hostile work environment greatly exacerbate the symptoms of his bipolar disorder, I now recommend that Mr. Logan work at home a minimum of four days a week. I believe that his working at home will help to alleviate some of this stress. I also recommend that he not be constrained by non-essential reporting and scheduling requirements, other than those required of all other employees in his department.

Ideally, in conjunction with the psychopharmacology and individual psychotherapy treatment he receives, Mr. Logan should be accommodated with a permanent home formal flexiplace program. Mr. Logan has already demonstrated his ability to work at home three days a week and to perform at acceptable or higher levels of productivity.

Therefore, I recommend that Tristan Logan be approved for a permanent home formal flexiplace work accommodation.

20 Park Plaza

Suite 611

Boston,
Massachusetts
02116

617
292-7792
292-7711

If you have any questions about Mr. Logan's status or if I can help facilitate this recommendation in any way, please feel free to call me.

Sincerely,

Toni Delisi, Psy.D

Toni Delisi, Psy. D.
Licensed Psychologist

Cc: Tristan Logan

Tab F-1 p.7



January 7, 1999



**L I F E**
**BRIDGE**
A S S O C I A T E S

Ed Maloney
U.S. Department of Labor/PWBA
JFK Federal Building – Suite 575
Boston MA 02203

Dear Mr. Maloney:

I am writing to provide information about Tristan Logan's mental health status.

Mr. Logan has been diagnosed as having a Bipolar disorder. He is being treated with combination of psychopharmacology and individual psychotherapy. Given his adherence to the prescribed medication regime and utilization of psychotherapy, Mr. Logan has a good prognosis for learning to manage his mental illness, without a marked impairment in his occupational functioning or in his usual social activities or relationships with others.

Mr. Logan will benefit from having you provide and discuss clearly documented job requirements, performance standards and a job plan. I also recommend that you schedule periodic check-ins with him to see how he is managing his work and to determine whether any adjustments ought to be considered. Mr. Logan utilizes a pre-determined schedule to manage and motivate himself, so I recommend that if flextime and flexplace are possible, these options be somewhat structured, particularly during his initial return to work. For example, if flexplace is available, I recommend a maximum of three days a week, scheduled in advance, with a plan for the specific work to be accomplished.

If you have any questions about Mr. Logan's status or if I can help in any way, please feel free to call me.

Sincerely,

*Toni Delisi, Psy D*

Toni Delisi, Psy.D.
Licensed Clinical Psychologist

cc: Tristan Logan

20 Park Plaza

Suite 611

Boston,
Massachusetts
02116

617
292-7792
292-7711

Tab F-1 p.8

I have reviewed this statement, which consists of _____ pages, and hereby solemnly __✓__ swear _____ affirm that it is true and complete to the best of my knowledge and belief. I understand that the information I have given will not be held confidential and may be shown to the interested parties as well as made a permanent part of the record of investigation.

_____          _____2/24/04_____
           (Signature of Deponent)                                    (Date)


Signed before me at (Street and City) __45 CANNONGATE III, NAHUA, NH__

on this __24th__ day of __FEBRUARY__ , 20_04_

_____
        (Signature of Investigator/Witness)

Tab F1 p. 9

Complainant's Questionnaire
EEO Complaint of Tristan Logan Case No: 03-01-158

Please respond to the following request for information relative to this formal complaint of discrimination. Provide your response to the following questions on the affidavit forms enclosed. Number and initial each page and initial any corrections made to any items in your affidavit.

Prepare your response in narrative form to best relate what occurred in this complaint. As you describe circumstances and facts in a time sensitive chronology, give specific and detailed information so that someone who is not familiar with your situation can understand what it is you are trying to explain/demonstrate. In other words, your affidavit should paint a picture for the person who will make the decision relative to the issue raised in this complaint.

Please provide your response to the following:

1. Please state for the record your full name and address.

2. Please state for the record your sex and age.

   **Investigator (Pension), Series/Grade GS-1301-13, advertised under Vacancy Announcement number BOS 03-29A**

3. Please describe your previous participation in the EEO process, including dates(s) of complaint(s) filed and the actions(s) alleged to be discriminatory in each complaint. If you did not file previous EEO complaints, please describe your past opposition to activities prohibited under the EEO regulations, the dates(s) of any such opposition, and the person(s) to whom you complained.

4. Please indicate how the specific agency officials involved in making the selection decision for the position of Investigator (Pension), Series/Grade GS-1801-13, advertised under Vacancy Announcement number BOS 03-29A (Boston, MS) were aware of your previous participation in the EEO process.

*Tab F1 p. 10*



5. Please indicate how the specific agency officials involved in making the selection decision for the position of Investigator (Pension), Series/Grade GS-1801-13, advertised under Vacancy Announcement number BOS 03-29A (Boston, MS) were aware of your sex, age, and disability.

6. Please describe the process by which you applied for the position in question, including whether or not you talked to and/or were interviewed by any agency employee (please provide name(s) of individual(s) if applicable).

7. Please state for the record your physical and/or emotional impairment.

8. Please demonstrate that you have a record or history of a substantially limiting physical and/or emotional impairment or were regarded as having such an impairment. Please provide documentation to support your record or history of a substantially limiting physical and/or emotional impairment.

9. Please describe how your physical and/or emotional impairment substantially limits your ability to perform a major life activity (such as walking, seeing, working, etc.)

10. Please describe how the agency officials involved in making the selection decision at issue were aware of your disability.

11. Please explain how you were qualified to perform the essential functions of the position to which you applied with or without reasonable accommodation.

12. Please describe, in detail, how you were eligible/qualified for this position.

13. Please explain how you satisfied all of the requirements for applying for this position.

14. Please describe in detail why you believe that your qualifications are plainly superior to the applicant who was selected.

15. Please explain why you believe that the specific agency officials involved in

Tab F1 p. 11

making the selection decision of the position of Investigator (Pension),
Series/Grade GS-1801-13, advertised under Vacancy Announcement number
BOS 03-29A (Boston, MS) intentionally discriminated against you on the bases
of your sex, age, disability and/or in reprisal.

16. Please describe, in detail why you believe the Department is not complying with
the Rehabilitation Act and why its alleged failure to comply constitutes
intentional discrimination against you on the basis of sex, age, disability
and/or reprisal.

17. Please provide any other relevant information that you wish to add.

Please read the end of the affidavit form, and note that your signature means that you are
swearing or affirming the truth of the information you have provided. Please sign this
last page and number all the pages of your affidavit and ensure that you have placed your
initials at the bottom of each page, with the exception of the last page.

Please send your finalized statement with any documents you would like to submit as
exhibits to me within fifteen (15) calendar days of receipt of this letter. My address is:
Department of Labor, ATTENTION: Roderick Faulkner, Frances Perkins Building,
OASAM/Civil Rights Center, Room N4123, 200 Constitution Avenue, NW, Washington,
DC 20210. Again, if you have any questions, feel free to contact me at (202) 693-6552.

*Tab F1 p. 12*

Exhibit 3



# U.S. DEPARTMENT OF LABOR
## *- An Equal Opportunity Employer -*
## JOB VACANCY ANNOUNCEMENT

**Position:**
INVESTIGATOR (PENSION)

**Series/Grade:**
GS-1801-13

**Salary Range:**
$70,439 - $91,573

**Type of Appointment:**
PERMANENT

**Duty Station:**
Boston Metro Area

**Announcement No:**
BOS 0329A

**Opening Date:** 04/11/2003

**Closing Date:** 04/24/2003

**Number of Vacancies:** 3

**Bargaining Unit:** NCFLL

**Promotion Potential:** GS-13

**Civil Service Status Required:** YES

**Summer Employment:** NO

**Part-time Position:** NO

**Area of Consideration:**
Regionwide
Status Candidates & ICTAP eligibles in Local
Commuting Area

**Point of Contact:** Vanessa Taylor

Phone: 617-565-1990

**ORGANIZATIONAL/GEOGRAPHIC LOCATION:**
This position is located in the
U. S. Department of Labor
Employee Benefit Security Administration
Boston Regional Office
Boston, MA

**SALARY RANGES:**
GS-13 $70,439 - $91,573
Salaries include applicable locality pay or cost-of-living allowance (COLA)

*Tab F3  P. 1*

## MERIT STAFFING ANNOUNCEMENT

Applications will also be accepted from noncompetitive status persons within the geographic area of consideration who meet the requirements of certain excepted appointment authorities such as Veterans Readjustment Appointment, Physically Handicapped, 30 percent or more compensable veterans, persons with disabilities, or present/former Peace Corps personnel. Additionally, veterans who are preference eligibles or who have separated from the armed forces under honorable conditions after substantially completing 3 years or more of continuous service may apply. See **WHO MAY APPLY** for additional information.

### POSITION DUTIES AND RESPONSIBILITIES:

a. Initiates, plans, coordinates and manages difficult investigations of compliance with civil criminal statutes.

b. Selects specific employee benefit plans, financial institutions, service providers for investigation and examination.

c. Performs or leads and coordinates a team of PWBA staff in review of the plan or service provider, conducts interviews, assesses fiduciary conduct of officials, analyzes plan operations, and applies and interprets applicable provisions of Employee Retirement Income Security Act 1974 (ERISA), Internal Revenue Code, precedents, etc.

d. Initiates and conducts conferences with plan officials and for their legal and financial representatives to explain policy and procedures, negotiates with plan officials to secure voluntary compliance in obtaining monetary restitution, etc.

e. Develops and prepares reports.

### QUALIFICATION REQUIREMENTS

Applicants must meet qualification, legal, and regulatory requirements for the position by closing date of this vacancy announcement.

Applicants must have at least one year of specialized experience which is in or directly related to the line of work of the position to be filled (Investigator-Pension) and which has equipped the applicant with the particular knowledge, skills and abilities to successfully perform the duties of the position. To be creditable, specialized experience must have been at least equivalent to the GS-12 level.

**Selective Ranking Factor:** In addition to the foregoing, to be considered minimally qualified at the GS-13 level, your application must demonstrate knowledge of the operations of employee benefit plans or ERISA laws and regulations.

**Examples of Qualifying Experience:** Experience managing a comprehensive program dealing extensively with ERISA; experience which has demonstrated expert investigative skills which required comprehensive and well-documented reports, analyses which present findings, cite applicable regulations, and substantiate conclusions. Specialized experience may have been gained while employed by a law firm, pension plan administration firm, banking trust department, etc.

Applicants must have met the time-in-grade restriction by the closing date. Complete qualifications

Tab F3 p. 2

standards, including substitution of education for experience, are available for review in the Regional Human Resources Office.

## CONDITIONS OF EMPLOYMENT

The following statements apply if checked:
[ ] Requires a security clearance
[X] Subject to frequent travel
[ ] Requires a medical examination
[X] Requires a valid drivers license
[ ] Subject to financial disclosure requirements
[ ] Subject to geographic mobility
[ ] Requires a supervisory/managerial probationary period if the requirement has not been met
[ ] Subject to drug test prior to appointment at GS-11 and GS-12 grade levels
[ ] Subject to frequent overtime

## RELOCATION COSTS [ ] WILL [X] WILL NOT BE PAID.

## METHOD OF EVALUATION:

Applicants meeting the minimum qualification requirements for this position may be further evaluated against other job related factors to determine who will be referred to the selecting official. The rating and ranking of candidates to determine the best qualified will be accomplished by comparing the candidate's knowledge, skills, and abilities against those of other candidates for each of the evaluation factors. The most important factors will be designated by the letter (H), indicating "High". These factors are essential to the successful performance of the duties of the position. The candidate's experience, training, awards, and supervisory performance appraisal will be considered in the evaluation process. Current and/or past supervisors and individuals listed as references may be contacted unless specified otherwise. Applicants may be interview by a panel and/or the selecting official or his/her designee.

## EVALUATION FACTORS: Factors designated (H) are rated high.

1. Knowledge of the laws, regulations and policies of the Department of Labor with regard to enforcement of the provisions of the ERISA or the knowledge of similarly complex laws such as the Federal securities and commodities laws, tax laws, or banking laws.(H)
2. Sound knowledge of, and an extensive background in, the specialized areas of procedures and laws governing investigations, as well as the experience in determining that adequate proof exists of all elements of an alleged violation of law. This must include an in-depth understanding of the entire spectrum of an enforcement action. (H)
3. Ability to motivate staff and direct activities as a team leader.(H)(M for ICTAP eligibles)
4. Ability to coordinate investigations of difficult factual and legal matters(H)
5. Ability to communicate effectively both orally and in writing.

## HOW TO APPLY

Tab F3 p.3


You may submit an Optional Application for Federal Employment (OF-612), a resume, or any other written format you choose. Applicants wishing to be considered for more than one grade level must indicate grade levels. Certain information is needed in order to evaluate your qualifications for the job, therefore, your resume or application MUST contain the following information:

**JOB INFORMATION:** Vacancy announcement number, title, series, grade for the job for which you are applying. A separate application is required for each vacancy for which you are applying.

**PERSONAL INFORMATION:** Full legal name, mailing address (with zip code), daytime and evening telephone numbers, social security number, country of citizenship (most Federal jobs require United States citizenship), veterans= preference (if claiming veterans' preference, please attach DD-214 and if 10 points or more, also attach SF-15 and proof required by that form), reinstatement eligibility, highest Federal civilian grade (give job series and dates held).

**EDUCATION:** High School (name, city, state, zip code, if known), date of graduation or GED, colleges/universities attended (name, city, state, zip code, if known), major including type of degree(s) and year(s) received (if no degree received, show total credits earned and indicate semester/quarter hours). If your qualifications are based in part or in total on education, a copy of your college/graduate school transcripts must accompany your application so we can validate your course work. If you are currently enrolled in courses which represent part of your qualifications, you must submit a valid copy of school enrollment which documents that you are taking the course(s) AND the courses must be completed before you can be hired.

**WORK EXPERIENCE:** Give the following information for your paid and non-paid work experience related to the jobs for which you are applying: job title (include occupational series, if applicable), name and address of employer, a description of your duties and accomplishments, supervisor's name and telephone number (indicate whether we may contact your current supervisor), start and end dates of employment (month and year), salary and hours worked per week for each job listed, and title/series/grade and dates of highest Federal civilian position held, if applicable.

**OTHER JOB-RELATED QUALIFICATIONS:** Training (course titles, dates, number of hours and name of the institutions from which training was received), honors and awards, special qualifications such as language skills, computer skills along with dates acquired, if relevant to the position, special accomplishments (e.g., publications, members in honor societies, leadership activities, public speaking engagements, and performance awards).

**INTERAGENCY CAREER TRANSITION ASSISTANCE PROGRAM (ICTAP)** eligibles must submit proof of eligibility, i.e., RIF separation notice, certificate of expected separation, or other agency certification that you are in a surplus organization or occupation; submit the last or current performance rating of record of at least fully successful or equivalent; apply for a vacancy at or below the grade level from which separated; file an application for a specific vacancy within the time frame indicated in the announcement; and be "well qualified" for the position. If separated through compensable injury or disability, no performance rating is required. To be "well qualified," in addition to meeting the minimum qualifications requirements and eligibility requirements for special priority consideration, applicants must obtain a rating of "well qualified" according to the

Tab F3 p. 4

predetermined rating plan established by the Human Resources Office.

**The following material is required if checked:**
[X] Application or resume; see above for description
[ ] Most recent supervisory performance appraisal or a statement with reasons as to why you do not have such an appraisal
[ ] DD-214, if applying based on veterans eligibility
[ ] Copies of transcripts, if using education as basis for qualification for any grade level
[X] SF-50, Notification of Personnel Action, which shows your reinstatement eligibility

**Mail your application to/secure forms or information from:**
U.S. Department of Labor - OASAM/OHR
JFK Federal Building
Room E-215
Boston, MA 02203

**An incomplete application package may result in your being considered ineligible.** For more information, please contact 617/565-1990. TDD number for Boston is 800-347-8029.

**APPLICATION MATERIALS MUST BE RECEIVED BY THE CLOSING DATE OF THIS ANNOUNCEMENT.**

**MOTOR VEHICLE LICENSE:** The use of an automobile is essential to the performance of this work. Applicants will be required to: (1) possess a valid automobile operator's license at the time of appointment; and (2) qualify, after appointment, for authorization to operate motor vehicles in accordance with applicable Civil Service regulations and with related requirements of the employing agency.

Applicants applying for special selection priority under Interagency Career Transition Program (ICTAP) must be well qualified and submit proof of eligibility, i.e., RIF separation notice, certificate of expected separation, or other agency certification that you are in a surplus occupation; submit the last or current performance rating of record of at least fully successfully or equivalent; apply for a vacancy at or below the grade level from which separated; file an application for a specific vacancy within the time frame indicated in the announcement; and be well qualified for the position. If separated through compensable injury or disability, no performance rating is required.

-Please complete and submit the Applicant Background Questionnaire, OMB No. 1225-0072, with your application.

Applicant Background Questionnaire, OMB No. 1225-0072:

http://www.dol.gov/libraryforms/forms/oasam/dolrno.html:

FORM

Submission of this form is optional: Data collected will be used only in aggregate, to assess the effectiveness of outreach efforts. Consideration for this job will not be affected by failure to submit this form.



Tab F3 P.6

Exhibit 4

Certificate of Eligibles
For Merit Staffing

**U. S. Department of Labor**

| 1. Title and Grade of Position<br>Investigator (Pension), GS-1801-13 | 4. Name(s) of QRE/Panel Members |
|---|---|
| ☐ Nonbargaining Unit<br>☒ Bargaining Unit (Specify): _____ NCFLL | |
| 2. Agency and Official Duty Station<br>EBAS, Boston, MA | 5. Signature of Panel Chairperson/Personnel Official<br>Beverly Hicks, Personnel Mgmt Specialist |
| 3. Date of Certificate<br>05/14/2003 | 6. Announcement No.   BOS 03-29 A |
| | 7. No. of Vacancies   3 |

8.  ELIGIBLES.  The persons listed below are certified for consideration in accordance with merit staffing requirements. Merit staffing selections must be made without discrimination for any nonmerit reason such as race, religion, sex, national origin, politics, age, marital status, physical handicap or membership or nonmembership in a union.

| Name | | | DOL Employee<br>(Yes or No) | Interviewed<br>(Yes or No) | Action<br>(Select or Nonselect) |
|---|---|---|---|---|---|
| Donna, Helen | | | Y | Y | NS |
| George, Ann | | | Y | Y | NS |
| Lawson, Sheila | | | Y | Y | NS |
| Logan, Tristan | | | Y | Y | NS |
| McCaluley, Lynne | | | Y | Y | NS |
| Moccaldi, Lori | | | Y | Y | NS |
| Murphy, Susan | BOEB | 03-61 | Y | Y | SELECT |
| Phillips, Stephen | " | 03-63 | Y | Y | SELECT |
| Riordan, Brendan | | | Y | Y | NS |
| Shanahan, J. Martin | * | 03-62 | Y | Y | SELECT |
| Surette, Paul | | | Y | Y | NS |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| ALL QUALIFIED APPLICANTS CERTIFIED | | | | | O: 06-11-03<br>A: 06-11-03<br>E: 06-15-03 |

9. SELECTION.  I certify that, based on a comparison with the knowledges, skills, and abilities identified in the vacancy announcement, the individual(s) selected/above is/are well qualified, and more than minimally qualified, for the position.

Selecting Official (Type Name and Signature)

Date 6 0603

Tab F-24 p.1

Exhibit 5

**U.S. Department of Labor**
*Office of the Assistant Secretary for Administration and Management*

*JFK Federal Building - Room E215*          *201 Varick Street - Room 813*
*Boston, MA 02203*                          *New York, NY 10014-4811*
*Phone (617) 565-1991/Fax (617) 565-2025*   *Phone (212) 337-2215/Fax (212) 337-2304*

June 17, 2003

Tristan Logan
49 Cannongate III
Nashua, NH 03063

Dear Mr. Logan:

Thank you for submitting your application for the Merit Staffing Vacancy Announcement No. BOS 03-29A, Investigator (Pension), GS-1801-13, a selection has now been made.  Although your qualifications are impressive, those of other candidates, Susan Murphy, Stephen Phillips, J. Martin Shanahan, were determined to more closely fulfill the requirements of the position.

The application and supporting documents you submitted to our office in response to this vacancy announcement are now part of the permanent record of the Merit Staffing action.  Therefore, it will be necessary for you to submit a new application to be considered for any other positions in our region.

Your interest in the Department's Merit Staffing program is appreciated, and we regret that a favorable reply is not possible at this time.

Sincerely,

*B. Hicks*

BEVERLY E. HICKS
Personnel Management Specialist

*Working for America's Workforce*

*Tab F-26 p. 1*

# Exhibit 6

## WITNESS AFFIDAVIT

I, (name) **JAMES M. BENAGES**

am an __X__ employee of ___ applicant to ___ former employee of the U.S. Department of Labor's:

(Agency) **EMPLOYEE BENEFITS SECURITY ADMINISTRATION**

(Office) **BOSTON REGIONAL OFFICE**

(Division)

(Branch)

Located in (city and state) **BOSTON, MASSACHUSETTS**

In the capacity of (show both your organization title and the classification of your job, if different):

**REGIONAL DIRECTOR** **SES** **5**

Grade ___ between (date) **4-25-95** and (date) **PRESENT**

My telephone number during working hours is: **(617) 565-9600**

I HAVE BEEN ADVISED OF THE FOLLOWING:

̇n required by Federal regulations and Department of Labor policy to cooperate fully with the investigator who has been .gned to conduct an impartial and appropriate investigation into a complaint of discrimination against the Department of Labor. I must provide a statement for the investigative record that is true and complete to the best of my knowledge and belief and fully discloses all of my firsthand knowledge having a bearing on the merits of the complaint. My statement is made under oath (or affirmation), without a pledge of confidentiality, in accordance with the rules, regulations, policies, and procedures of the Equal Employment Opportunity Commission and the Department of Labor. This means that any employee(s) whom I accuse of discrimination or other acts of impropriety may be shown this statement or relevant portions and be given an opportunity to respond. In addition, the Complainant and the appropriate Department of Labor officials involved in the EEO complaint process will receive the entire investigative report. I have the right to review my statement prior to signing it and may make initialized corrections if it is incomplete or inaccurate. I have the right to receive a copy of the signed statement.

I am entitled to representation by a person of my choice during my participation in the EEO process (so long as my choice does not result in a conflict of interest). I have ___ have not __X__ chosen a personal representative at this time.

EEO regulations specifically protect participants in the EEO complaint process from any acts of reprisal, discrimination, coercion, harassment, restraint, or interference as a result of their participation in the EEO complaint process.

Having been advised of the above information about my role as a witness in the investigative process, I solemnly __X__ swear or ___ affirm that the statement to follow is true and complete to the best of my knowledge and belief, and fully addresses the issues and concerns raised by the investigator.

Initials: ___

*Tab F2 p. 1*

My name is James Benages. I am the Regional Director for the Boston Regional Office of EBSA.

I was the selecting official for the vacancy announcement in question and imminently familiar with the work of most if not all candidates on the search. I have been with EBSA and its predecessor agency, PWBA since 1975 and have served in various capacities in both our National and Regional Offices. My experience in a Field Office includes Investigator, Supervisor, Area Director, and Regional Director; all of my experience covers exclusively enforcement operations.

I was appointed to the Boston Regional Office in 1985 and hired, with few exceptions, almost our entire staff including Mr. Logan. I was aware of his sex, age and disability at the time the selections were made.

At the time of the selection for the position in question, I was aware of prior EEO complaints and allegations of discrimination made by Tristan Logan. My recollection is that there have been more than one prior compliant. My recollection is also that the last complaint alleged discrimination on the basis of his prior EEO involvement where he received what he labeled as a "negative" Performance Appraisal and "threats" of being placed in a Performance Improvement Plan. Similar to this complaint, I was required to prepare an affidavit and respond to a number of questions.

I was aware of Susan Murphy, J. Martin Shanahan and Stephen Phillip's sex and their approximate age. I was not aware of any disabilities. To my recollection, they have never requested any kind of accommodation because of any disability issues. I was also not aware of any EEO activity (complaint) by Stephen Phillips and J. Martin Shanahan. I am aware of a complaint filed by Susan Murphy when she was employed by the Office of the Inspector General but I do not know the particulars of her complaint.

Following are summaries of the achievements of all the individuals involved for the period October 2000 through October 2003.

**Stephen Phillips:**

Litigation Referrals – During the period, Investigator Phillips has investigated, referred, and provided litigation support on 28 cases. Of particular note are the churning cases. These cases involve a stockbroker who gained control over the portfolios of small benefit plans, and through a series of manipulated trades, arranged for a kickback type of benefit from a brokerage house he utilized for trades. An expert had to be retained to verify the premise of these cases, which he did, and extensive litigation support had to be provided to the NYRSOL as the complaint was filed and the trial date nears.

Civil Cases Closed – During the period, Investigator Phillips has closed 58 cases, 71% of which had results, and recovered over $4.7 million. Taking into account our national GPRA goal of 50% of closed cases having results, this is a remarkable achievement.

*Tab F2 p.2*

Investigator Phillips had one criminal case closed during the period.

National and Regional Projects – Investigator Phillips has developed a case project involving the actions taken by a third party administrator. Through the issues found, and the actions taken, Investigator Phillips has developed leads that have resulted in the opening of 100 cases. He currently leads a team of three investigators pursuing the project's issues, and to date 30 Voluntary Compliance letters have been prepared citing the ERISA violations found. An additional 50 Voluntary Compliance letters are anticipated.

Outreach – For his work in this area, Investigator Phillips received the Secretary of Labor's Special Achievement Award. Typically, this award is given to teams or groups who perform singular actions warranting recognition. In Investigator Phillips case, it was determined that his work in this area was deserving of this prestigious award.

Investigator Phillips organized and implemented the actions that are the underpinnings of a highly successful Diversity Outreach Program at the Boston Regional Office. Through this program, Investigator Phillips visits colleges (undergraduate and graduate), job fairs, and diverse associations, all in an attempt to attract candidates to apply for employment with the federal sector, and EBSA in particular. He conducts informational meetings and interviews with prospective candidates, and assists the Regional Director in his efforts to diversify the EBSA workforce at the Boston Regional Office. For the period of time this memo addresses, Investigator Phillips has spent, on average, 1-2 days per week on this project. Taking this time commitment into account, the investigative case results achieved by Investigator Phillips mentioned above, are truly remarkable.

**Marty Shanahan:**

Litigation Referrals – Marty referred 4 cases to the Boston RSOL during the time frame. In the Tri-County PSP case (opened in 8/99 and referred to the Boston RSOL in 10/2000), Marty worked with the RSOL and got a monetary recovery for the Plan and had the fiduciaries barred from acting in a fiduciary capacity. In the Chasma Scientific Profit Sharing Plan (opened 5/99 and referred to the Boston RSOL in 11/2001), Marty worked hard on a case where there was evidence of possible churning and/or imprudent investments by the sole Trustee. This case involved and still involves lots of research into the unknown investments and the Trustees' movement in and out of these investments. Once referred, the investigator has worked with an expert in reviewing the case and possible ERISA violations. This case involves complex investment issues, which has resulted in extensive litigation support.

Another case worked by Marty, Olympus Healthcare 401(k) Plan (opened in 2/2000 with recovery received in 4/2003), resulted in over $3.4 million in plan assets protected. This case involved an abandoned plan type of scenario in a bankrupt company and the investigator had to work with the liquidating trustee who was unfamiliar with ERISA and how to handle plan assets. This case took a lot of effort on the investigator's part in order to get the liquidating trustee on board and working with his attorneys in making



Tab F2 p3

distributions to the participants and beneficiaries. In addition, this case also involved a complex OCA referral concerning the actions of a big six accounting firm. Case is currently being worked on at OCA.

Civil Cases Closed – Of the 64 cases, Marty recovered over $6.2 million for participants and beneficiaries.

Marty is currently working on a large criminal case: Kimbell Financial (case opened 12/98 and accepted by the Department of Justice in 8/2000) with a companion criminal case, David Michael Leja (opened and accepted by the DOJ in 4/2003). Both of these connected cases involve a complex insurance scheme to defraud resulting in an indictment last year with a superseding indictment this year for obstruction of justice. The trial is fast approaching during this fiscal year. During the grand jury phase, Marty introduced evidence and testified on complex aspects of sophisticated fraud schemes that victimize participants and beneficiaries of ERISA protected health and pension benefit plans. Marty continues to work closely with the Assistant U.S. Attorney on this case and will be the government's main witness when the case goes to trial (winter of 2003/2004). He is the lead investigator on this case.

National and Regional Projects – Marty was responsible for initiating a Boston Regional Office Project in FY 1999 and 2000: the Home Health and Nursing Home Project. His work on the Home Health and Nursing Home Project helped to protect the benefits for many participants and beneficiaries. The work on these project cases consisted of many hours spent reviewing cost reports concerning Medicaid and Medicare monies. The purpose was to investigate and analyze the dollars that are earmarked under these programs for particular companies' employee benefit plans. In doing his investigation and analysis, Marty worked closely with the Fiscal Intermediary concerning the above reports. This project was initiated as a joint project with Health and Human Services and Marty represented the office well as our liaison.

Outreach – In addition to his casework, Marty initiated outreach activity in June 2002 with the Massachusetts Society of Certified Public Accountants. Marty, worked in conjunction with the Regional Director and the National Office, in order to make a presentation at the MSCPA 33rd Annual Accounting and Auditing Conference. Marty has also offered to be a mentor to new employees on a few occasions. Currently, Marty is the assigned mentor to Gary Smith, who is in another track.

**Susan Murphy:**

It should be noted that Susan was hired in February 2002. In her position as Investigator/Senior Investigator with EBSA from February 2002 through the present time, she has worked as part of a multi-agency team of Investigators from several law enforcement agencies including the FBI, IRS, and U.S. Postal Inspection Service in the investigation of Michael Sparfven, the former President of Quantum International Group, a fraud investigations firm in Providence, R.I. As President of Quantum, Sparfven defrauded Textron Financial Services by falsifying millions of dollars of invoices to draw



Tab F2 p.4

on the line of credit Textron extended to the company. In addition, as Trustee of the Quantum International Group, Inc. Profit Sharing Plan, Sparfven embezzled $136,730.67 in plan assets and used the money for his own purposes. This case is being prosecuted by the U.S. Attorney's Office, Providence, R.I. and is ongoing.

She is also currently working a joint criminal case with the USDOL Office of Labor Management Standards and the Office of Inspector General involving possible labor violations committed by the R.I. International Longshoremen's Association (ILA). Allegations in the case involve union workers paying into a questionable ERISA fund and ghost employees on employer payrolls. This case is currently being investigated and is ongoing.

From May 1995 through February 2002, she was employed as a Special Agent with the USDOL Office of Inspector General. I describe below some of the cases she worked on in that capacity:

During the last six months of 2001 and the beginning of 2002, she worked as part of a team of agents from the Boston USDOL OIG office in the investigation of Teamster Local 25 President George Cashman and Vice President William Carnes. The investigation focused on whether members of the union were forced to pay off Teamster officials in order to obtain health benefits in cases where qualifying work hours were not met. The investigation found that the Teamster officials used companies owned by Thomas DiSilva to falsely report employee hours to obtain health benefits. In January 2002, Cashman and Carnes were charged with several criminal violations relating to their offenses. In 2003, Cashman pled guilty to extortion and conspiracy to commit 18 U.S.C. 664, Theft from an employee benefit plan and 18 U.S.C. 1027, False statements relating to documents required by ERISA, and mail fraud. Carnes pled guilty to 18 U.S.C. 664 and mail fraud.

During 2000-2001 she successfully led a team of investigators from several federal law enforcement agencies to include EBSA, FBI, U.S. Postal Inspection Service, and the R.I. State Police in an investigation of a prominent R.I. Investment Manager, Todd LaScola, who managed a several million dollar union pension fund. LaScola mismanaged plan assets from this fund by investing them in high-risk real estate notes from which he received illegal commissions. When he was caught doing so, the union insisted he sell the notes and restore all plan assets involved. Because of their nature, the notes could not be readily transacted. LaScola panicked and subsequently stole several million dollars in client funds to conceal his actions.

During this investigation, she worked closely with EBSA Investigators to determine which, if any, of the stolen client funds were covered under ERISA. Once ERISA monies were identified, she reviewed plan documents and conducted interviews of plan fiduciaries and participants. She also examined financial documents and interviewed investment company officials to obtain evidence relative to the illegal commissions LaScola received. LaScola was subsequently charged in November 2000 with one count of 18 U.S.C. 664, Theft from an employee benefit plan and 4 counts of 18 U.S.C. 1954,

Tab F2 p5



5

Offer, acceptance, or solicitation to influence the operations of employee benefit funds, as part of a 55 count indictment. LaScola pled guilty in February 2001 and was sentenced in May 2001 to serve 8 years in federal prison and ordered to pay 8 million dollars in restitution.

Lastly during 2000-2001, she was the Team Leader of the Security Detail in the New England region for Secretary of Labor Elaine Chao. In this capacity, she coordinated security details for her when she traveled within the area, and during 2001, traveled with her throughout the country providing for her security.

As to the claim that Mr. Logan is better qualified, Susan Murphy completed the following ERISA related training courses:

- -- Federal Law Enforcement Training Center (FLETC) Basic Criminal Investigator Training (8 weeks)
- -- O.I.G. School Training (3 weeks)
- -- EBSA Basic Training (4 weeks)
- -- EBSA Benefit Plan Accounting (2 weeks)

Susan Murphy has also received the following significant awards:

- -- National Science Foundation – Two Outstanding Performance Awards as a Special Agent.
- -- U.S. DOL – OIG Outstanding Accomplishment Award
- -- U.S. DOL – OIG Special Agent of the Year Award
- -- U.S. DOL Secretary's Valor Award

Of the limited amount of time she has been in our Region, she has been assigned few civil cases. She was hired to primarily do criminal investigations and has devoted most of her time to criminal cases.

**Tristan Logan:**

Litigation Referrals – During the period, Investigator Logan has referred 3 cases. Two of these cases involved issues such as (O'Brien-lawyer as a participant in breach, and Rochester Litho – involving a decision impasse involving the Board of Trustees). As for productivity in this area, Investigator Logan's three referrals place him in the bottom 40% of BRO investigators who worked through the three-year period under review.

Civil Cases Closed – During the period, Investigator Lagan has closed 47 cases, 38% of which had results, and which produced total recoveries of $3,773.    The total average case time for these 47 cases was 9.97 days.

For comparison purposes, the 38% result attained is below the BRO requirement of 50%, as outlined in the agency's GPRA goals. The average case time of 9.97 days places Investigator Logan among those investigators, the upper one third, who spend the most

Tab F2 p.B



6

time on cases in the BRO. And, the $3,773 recovery total is the lowest in the Boston Regional Office, for those investigators who worked throughout the three-year period under review.

Criminal Cases Closed – Investigator Logan did not close any criminal cases during the period and did not achieve any results involving open criminal cases in his inventory.

Projects – Investigator Logan did not develop or participate in any projects during the period in question.

Outreach – Investigator Logan did not develop or participate in any Outreach during the period in question.

I can enhance the comparables if the above effort is not enough in areas such as cases quality, utilization of time, etc.

I did not decline to select Mr. Logan for any other reason but his performance. He is not even comparable to 8 investigators who were not selected and some that did not apply who are more productive than he is and produce quality cases.

Any additional information required can be obtained from Mr. Ed Maloney, his supervisor.

Tab F2 p.7

'ave reviewed this statement, which consists of __6__ pages, and hereby solemnly __X__ swear ____ affirm that it is true and ·nplete to the best of my knowledge and belief. I understand that the information I have given will not be held confidential, will become a permanent part of the record of investigation, and may be shown to any necessary party.

_____    **January 9, 2004**
              (Signature of Affiant)                                                    (Date)

Signed before/received by me at (Street and City) _Patricia Richardson Cambridge St, Boston_

on this **9th**day of ____**January**_____ , 20**04**____

____Patricia Richardson____
              (Signature of Investigator/Witness)

CRC Form 10
(Rev. 3/03)

*Tab F2 p.8*

Witness Questionnaire
EEO Complaint of Tristan Logan Case No. 03-01-158

Please respond to the following request for information relative to these formal complaints of discrimination. Provide your response to the following questions on the affidavit forms enclosed. Number and initial each page and initial any corrections made to any items in your affidavit. Prepare your response in narrative form to best relate what occurred in these complaints. As you describe circumstances and facts in a time sensitive chronology, give specific and detailed information so that someone who is not familiar with the situation can understand what it is you are trying to explain/demonstrate. In other words, your affidavit should paint a picture for the person who will make the decision relative to the issue raised in these complaints.

Please provide your response to the following:

1. Please state for the record your name, position, and location of your work with the Department of Labor.

2. Please state for the record your involvement in the merit staffing process for the aforementioned vacancy announcement.

3. Please indicate if and how you were aware of Mr. Logan's sex, age and disability at the time of the selection for the position in question.

4. At the time of the selection for the position in question, were you aware of any EEO complaints or past opposition to activities prohibited under the EEO regulations (e.g., allegations of discrimination) made by Tristan Logan? If yes, please describe how you were aware and/or if you were involved in any previous EEO activity.

*Tab F-2 p.9*

5. The name of the individuals selected for this position were Susan Murphy and J. Martin Shanahan and Stephen Phillips. Please indicate whether you were aware of the selectees' sex, age, disability, and/or any previous EEO activity at the time the selection was made.

6. Please describe, in sufficient detail, why you selected the selectee(s). Please contrast your reasons for selecting the selectee(s) with your reasons for not selecting Tristan Logan. Your response here must be sufficiently specific to permit the Complainant to mount an evidentiary challenge to any of the explanations offered by the agency for its actions.

7. Did you decline to select Tristan Logan for the position at issue because of his sex, age, disability, and/or reprisal for previous participation in the EEO process?

8. If you wish to provide additional testimony and/or suggest witnesses, please do so.

Please read the end of the affidavit form, and note that your signature means that you are swearing or affirming the truth of the information you have provided. Please sign this last page and number all the pages of your affidavit and ensure that you have placed your initials at the bottom of each page.

Please send your finalized statement with any documents you would like to submit as exhibits to me within fifteen (15) calendar days of receipt of this letter. **My address is:**

> **Department of Labor**
> **ATTENTION: Roderick Faulkner**
> **Frances Perkins Building**
> **OASAM/Civil Rights Center**
> **Room N4123**
> **200 Constitution Avenue, NW**
> **Washington, DC  20210.**

Again, if you have any questions, feel free to contact me at (202) 693-6552.

Tab F-2 p.10

Exhibit 7

◆ **U.S. Department of Labor**
Office of the Assistant Secretary for Administration and Management
Civil Rights Center

**Formal**
complaint of discrimination

**Note:** Complete this form, sign it, and send it in accordance with instructions from your EEO Counselor to Director, Civil Rights Center.
See back for additional information or for help in completing this form.

**1. Name**
TRISTAN LOGAN

**2. Job title and grade**
INVESTIGATOR GS-1801-12

**3a. Home address**
49 CANNONGATE III
NASHUA, NH 03063

**3b. Office address**
U.S. DEPT OF LABOR/EBSA
ROOM 575
JFK FED. BLDG.
BOSTON, MA 02114

**4. Telephone, including area code, extension**
home 603-886-8133
office 617-565-9658

**5. Bases of your complaint** (Check as appropriate and specify where a blank is provided):

☐ race _____   ☐ religion _____   ☒ sex GENDER DISCRIMINATION

☐ color _____   ☒ age DISCRIMINATION THRU DISPARATE TREATMENT   ☐ sexual orientation*

☐ national origin _____   ☒ disability INTENTIONAL DIS & NON- AFFIRMATIVE ACTION DISCRIMINATION—

☒ reprisal FOR PREVIOUS EEOC COMPLAINTS

Please specify the prior EEO activity in which you were involved and the date.

*Protected by Executive Order 13087, not by federal statute. Claimants on this basis may request a final decision, but have no hearing or appeal rights.

**6. Specify the action(s) that gave rise to this complaint.** (Please use the back of this page if needed, and check here ☐ if continued on back.)

**Date(s)**   **Specific action(s)**

1/30/99 and CONTINUING: DISCRIMINATION, INTENTIONAL, WITH RESPECT AGENCY's FAILURE TO COMPLY W/ FEDERAL LAW, re REHABILITATION ACT., REQUIRING AN AFFIRMATIVE ACTION PROGRAM FOR A PERSON WITH A DISABILITY

OVER →

**7. Please specify remedy(ies) you believe will resolve your complaint.**

PROMOTION TO SENIOR INVESTIGATOR GS-1801-13 WITH BACK PAY, BENEFITS AND INTEREST, MAXIMUM COMPENSATORY DAMAGES ALLOWED BY LAW AND PAYMENT OF AN ATTORNEY FEES —

**8. Date notice of right to file was issued**
8/13/03

**9. Counselor's name**
DONNA PORTER

**10. Counselor's telephone**

**11. Have you filed a complaint on this same matter with:**
N/O #

☐ Administrative grievance system?
☐ A union (specify _____)?
☐ Merit Systems Protection Board (MSPB)?

**If yes, date(s) of other filing(s)**

**12a. Representative's name**
W FINLAY-WITZER, ATTORNEY

**12b. Representative's address**
33 MOUNT VERNON ST
BOSTON, MA 02108

**12c. Representative's telephone**
617-723-5630

**Date**
8/19/03

**Signature**
Tristan W.

Tab A p.1

**CRC use only**   **Date received by CRC staff**   R — 9/5/03   **Issue** CRC Case

| When can you file a formal complaint? | When your EEO Counselor notifies you that your informal complaint cannot be resolved and provides you notice of your right to file a formal complaint, you have *15 calendar days from receiving that notice* to complete, sign, and submit this form to the Director, Civil Rights Center (CRC) or to the Secretary of Labor. Please note that the Secretary's office will forward the complaint to CRC, which may delay processing of your complaint. |
|---|---|
| What happens next? | Only allegations that have been presented for EEO counseling will be considered for investigation at the formal stage. *If you wish to amend your formal complaint* during processing with allegations "like or related to" issues you raised in your informal complaint, *you must request an amendment by letter to* Director, Civil Rights Center. |

**6, continued.** Use this space to continue #6 from the face of this form.

| Date(s) | Specific action(s) |
|---|---|
| 6/17/03 | VIOLATION OF AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967. FAILURE TO PROMOTE TO SENIOR INVESTIGATOR GS-1801-13. UNDER VACANCY ANN# BOS-03-29A BECAUSE OF DISCRIMINATORY DISPARATE TREATMENT OF PERSONS OF 40 YEARS OLD - |
| 6/17/03 | VIOLATION OF REHABILITATION ACT OF 1973 - (29 CFR 1614. 203) FAILURE/REFUSAL TO PROMOTE TO SENIOR INVESTIGATOR, GS, 1801-13 UNDER VAC. ANN# BOS-03-29A. INTENTIONAL DISCRIMINATION OF A PERSON W/A DISABILITY. INTENTIONAL NON-AFFIRMATIVE ACTION EMPLOYMENT DISCRIMINATION |
| 6/17/03 | GENDER DISCRIMINATION W/REGARDS TO PROMOTION TO SENIOR INVESTIGATOR GS-1801-13 UNDER VAC. ANN # BOS-03-29A |
| 6/17/03 | REFUSAL IN FAILURE TO PROMOTE TO SENIOR INVESTIGATOR GS-1801-12 UNDER VAC ANN # BOS-03-29A. RETALIATION FOR FILING PREVIOUS EEOC COMPLAINTS - |

**Definitions**

| race | Racial group. For example: | |
|---|---|---|
| | American Indian or Alaska Native | A person having origins in any of the original peoples of North, South, or Central America, and who maintains tribal affiliation or community attachment. |
| | Asian | A person having origins in any of the original peoples of the Far East, Southeast Asia, or the Indian subcontinent, including, for example, Cambodia, China, India, Japan, Korea, Malaysia, Pakistan, the Philippine Islands, Thailand, and Vietnam. |
| | black or African American | A person having origins in any of the black racial groups of Africa. |
| | Native Hawaiian or other Pacific Islander | A person having origins in any of the original peoples of Hawaii, Guam, Samoa, or other Pacific Islands |
| | white | A person having origins in any of the original peoples of Europe, the Middle East, or North Africa. |
| color | One's skin color or complexion, for example, light-skinned or -complexion, dark-skinned or -complexion. | |
| national origin | An individual's (or his or her ancestor's) place of origin; or having the physical, cultural, or linguistic characteristics of a national group. For example: Egyptian, Iroquois Nation, Hispanic. (Hispanic, Latino, or Spanish origin refers to persons of Cuban, Mexican, Puerto Rican, South or Central American, or other Spanish culture or origin, regardless of race.) | |
| religion | One's religious practice or belief. Examples: Baptist, Buddhist, Catholic, Hindu, Jewish, Moslem. | |
| age | 40 and above | |
| disability | A physical or mental impairment which substantially limits one or more of a person's major life activities. | |

Tab A p.2

Exhibit 8

GS 1801-13 Q
Form Approved
OMB No. 3206-0219

# OPTIONAL APPLICATION FOR FEDERAL EMPLOYMENT - OF 612

You may apply for most jobs with a resume, this form, or other written format. If your resume or application does not provide all the information requested on this form and in the job vacancy announcement, you may lose consideration for a job.

| 1 Job title in announcement | | 2 Grade(s) applying for | 3 Announcement number |
|---|---|---|---|
| Investigator (Pension) | | GS- 13 | BOS 03-29 |

| 4 Last name | First and middle names | 5 Social Security Number |
|---|---|---|
| Murphy | Susan  Jean | |

| 6 Mailing address | | | | 7 Phone numbers (include area code) |
|---|---|---|---|---|
| | | | | Daytime |
| City | State | ZIP Code | | |
| | | | | Evening |

## WORK EXPERIENCE

8 Describe your paid and nonpaid work experience related to the job for which you are applying. Do not attach job descriptions.

1)   Job title (if Federal, include series and grade)
Investigator, 1801, GS-12 / 5

| From (MM/YY) | To (MM/YY) | Salary | per | Hours per week |
|---|---|---|---|---|
| 2/ 02 | 4/ 03 | $66,298 | year | 40+ |

| Employer's name and address | Supervisor's name and phone number |
|---|---|
| U.S. Department of Labor, EBSA, J.F.K. Federal Building, Room 575, Boston, MA 02203 | Frank Ceraso |

Describe your duties and accomplishments

In this position, I plan and conduct complex civil and criminal investigations of employee benefit plans, service providers, insurance companies and various related financial institutions to determine potential ERISA violations. In doing so, I look for breaches of fiduciary duty and prohibited transactions with parties in interest. Towards that end, I conduct formal interviews with plan administrators, service providers, accountants, investment-managers, union officials, and plan participants to obtain evidence of ERISA violations. I also prepare comprehensive reports of investigation and litigation / prosecution reports for submission to the USDOJ Office of Solicitor and the USDOJ U.S. Attorney's Office. When cases are litigated or prosecuted, I work closely with the attorneys involved and provide the relevant support in the civil or criminal process.

In the past year, I have worked closely with the FBI , IRS, and the R.I. U. S. Attorney's Office towards the indictment of a Company President who embezzled the 401(k) plan assets of his employees, among other federal crimes. I have proactively (con't on attached page 1)

2)   Job title (if Federal, include series and grade)
Special Agent

| From (MM/YY) | To (MM/YY) | Salary | per | Hours per week |
|---|---|---|---|---|
| 5  95 | 2  02 | $76,913 | year | 50+ |

| Employer's name and address | Supervisor's name and phone number |
|---|---|
| U.S. Department of Labor, Office of Inspector General, 12 New England Executive Park, Burlington, MA  01803 | Dennis Kurdek |

Describe your duties and accomplishments

During my tenure as a Special Agent with the OIG, I planned and conducted investigations of waste, fraud, and abuse relating to USDOL programs to include unemployment insurance, federal employees workmans' compensation, and welfare-to-work. I also investigated violations of federal labor law governing unions and union benefit funds, and labor racketeering activities.

In this position during 2000- 2001, I successfully led a team of investigators from several federal law enforcement agencies to include EBSA, FBI, U.S. Postal Inspection Service, and the R.I. State Police in an investigation of a prominent R.I. Investment Manager, who mismanaged union pension funds, and stole several million dollars in client funds to conceal his actions. His conviction resulted in an eight -year federal prison sentence.  During 1997-98, I investigated a union treasurer who illegally paid himself thousands of dollars from a union benefit plan for the overtime hours he worked.  He was subsequently charged and convicted of his offenses.  Further, I led a five-year investigation of a union official who committed fraud under a USDOL training grant.  The latter resulted in a four -count indictment against the official in 2001 and his subsequent conviction.  From 1995 through 2002, I investigated several fraudulent FECA claims which resulted in hundreds of thousands of dollars in cost savings to the government due to the claimants' termination from the periodic roles. Lastly, I was the Team Leader of the Security Detail in the New England region for Secretary of Labor Elaine Chao. In this capacity, I coordinated security details for her when she traveled within the area, and during 2001, traveled with her throughout the country providing for her security.



**9** May we contact your current supervisor?

YES ☒    NO ☐ è    If we need to contact your current supervisor before making an offer, we will contact you first.

## EDUCATION

**10** Mark highest level completed.    Some HS ☐    HS/GED ☐    Associate ☐    Bachelor ☐    Master ☒    Doctoral ☐

**11** Last high school (HS) or GED school. Give the school's name, city, State, ZIP Code (if known), and year diploma or GED received.

Maine Township High School East, Park Ridge, IL 60068  Graduated June 1982

**12** Colleges and universities attended. Do **not** attach a copy of your transcript unless requested.

| Name | | | Total Credits Earned | | Major(s) | Degree (if any) | Year Received |
|------|---|---|----------------------|---|----------|-----------------|---------------|
| 1) St. Olaf College | | | Semester | Quarter | | | |
| City Northfield | State MN | ZIP Code 55057 - | 130 | | Political Science Sociology | B.A. | 1986 |
| 2) George Washington University | | | | | | | |
| Washington | DC | 20052 - | 36 | | Political Science Science and Technology | M.A. | 1989 |
| 3) | | | | | | | |

## OTHER QUALIFICATIONS

**13** Job-related training courses (give title and year). Job-related skills (other languages, computer software/hardware, tools, machinery, typing speed, etc. Job-related certificates and licenses (current only). Job-related honors, awards, and special accomplishments(publications, memberships in professional/honor societies, leadership activities, public speaking, and performance awards.) Give dates, but do not send documents unless requested.

Training:
- Federal Law Enforcement Training Center (FLETC) Basic Criminal Investigator Training (8 Weeks) Completed May 1992
- OIG School Training (3 Weeks) Completed 1995
- EBSA Basic Training (2 Weeks) Completed March 2003

Awards:
- National Science Foundation- Two Outstanding Performance Awards as a Special Agent 1991- 1994
- U.S. DOL OIG Outstanding Accomplishment Award, July 2001
- U.S. DOL OIG Special Agent of the Year Award, December 2001
- U.S. DOL Secretary's Valor Award, April 2002

## GENERAL

**14** Are you a U.S. citizen?    YES ☒    NO ☐ è    Give the country of your citizenship.    U.S.A.

**15** Do you claim veterans' preference?    NO ☒    YES ☐ è    Mark your claim of 5 or 10 points below.

5 points ☐ è    Attach your DD 214 or other proof.    10 points ☐ è    Attach an *Application for 10-Point Veterans' Preference* (SF 15) and proof required.

**16** Were you ever a Federal civilian employee?

NO ☐    YES ☒ è    For highest civilian grade give:

| | Series | Grade | From (MM/YY) | To (MM/YY) |
|---|--------|-------|--------------|------------|
| GS | 12 | | 6 98 | 4 03 |

**17** Are you eligible for reinstatement based on career or career-conditional Federal status?

NO ☐    YES ☒ è    If requested, attach SF 50 proof.

## APPLICANT CERTIFICATION

**18** I certify that, to the best of my knowledge and belief, all of the information on and attached to this application is true, correct, complete and made in good faith. I understand that false or fraudulent information on or attached to this application may be grounds for not hiring me or firing me after I begin work, and may be punishable by fine or imprisonment. I understand that any information I give may be investigated.

SIGNATURE  *Susan J. Murphy*    DATE SIGNED  4/15/03

Tab F9 p.2

Page 1 (Continued)

8. Work Experience

1. EBSA (con't) opened two other cases on R.I. union officials, one of them criminal, involving potential misuse of union benefit funds. Further, I have assisted three other investigators in this office with their criminal cases by providing essential investigative support and helping to present their cases to the U.S. Attorney's Office. Also, I have established contacts with several individuals in the law enforcement community, and this network frequently requests my involvement in cases of potential ERISA violations.

On the civil side, I have planned and conducted several investigations of defined contribution plans and have found many cases of delinquent employee contributions and one case of plan forfeitures incorrectly paid to a Plan Trustee . I have addressed these violations through VC letters, and have obtained cooperation from Plan Fiduciaries in making the plans whole.  In addition, I have planned and conducted several investigations of health plans in regards to HIPAA compliance, which have resulted in several action cases for this office.  Lastly, I have written three referrals to RSOL to submit proofs of claim to protect the plan assets of participants whose employers have filed for bankruptcy.  Towards that end, I have worked with Bankruptcy Trustees and Attorneys for the Employer to ensure those proofs were filed properly.

Tab F9 p.3

Announcement # BOS 03-29
Susan J. Murphy

Response to Evaluation Factors

1. In my almost eight years of employment with the U.S. Department of Labor, I have investigated allegations of both criminal and civil violations of U.S. labor law, to include several violations of ERISA. As previously mentioned on the attached application, during 2000-2001, I led a multi-agency investigative team that oversaw the indictment and conviction of a prominent R.I. Investment Manager, Todd LaScola, on violations of 18 U.S.C. 664, Theft from an employee benefit fund, and 1854, Offer, acceptance or solicitation to influence operations of employee benefit funds. Through this and other criminal cases, I learned what evidence is required to meet the statutory elements of these violations. I have recently learned more about the application of 18 U.S.C. 664 through a case that I am currently working, including that it qualifies as a predicate offense in money laundering cases.

As a result of my tenure as a USDOL OIG Special Agent for seven years, and my two and one-half years experience as a Special Agent for the National Science Foundation, I have proven knowledge of not only the criminal violations relating to ERISA, but other criminal violations as well, such as 18 U.S.C. 1001; False statements, 1341; Mail fraud, and 1343; Wire Fraud. Oftentimes these statutes are charged alongside the criminal ERISA statutes. I also have experience working on union plans and am aware of the Taft Hartley violation involving the exchange of anything valuable between union officials and employers. I have knowledge of the labor statutes which bar union officials and fiduciaries from holding their positions after the conviction of various offenses, both state and federal. Overall, I feel that my knowledge of U.S. labor law and related criminal violations, coupled with my experience in working criminal cases, makes me a strong candidate for the GS-13 position.

2. Through my above described experience as a Special Agent with two U.S. government agencies, I have obtained sound knowledge of the procedures and laws governing investigations, both criminal and civil. For example, I know the rules relating to 6(e) material and the prohibition against disclosure of such to parties not present on the 6(e) list. I know the precautions that need to be taken to protect 6(e) material, as well as the procedures in keeping 6(e) material separate from other material. I also am aware of the differences between the criminal and civil processes and know that one cannot use the civil process to enhance a criminal case, or likewise, use material obtained through the criminal process for civil purposes. Lastly, through my experience in working with Assistant U.S. Attorneys, I know the processes for determining whether adequate proof exists to satisfy the statutory elements of potential violations. If the proof does not exist, I have the intuitive knowledge to consider other potential violations, and work towards that end, to develop the necessary elements to prove those violations.

Tab F9 p.4

3. I have proven abilities to motivate individuals and direct activities as a Team Leader. This was evident during 2000-2001 through my leadership of individuals from several law enforcement agencies involved in working the previously mentioned case against Investment Manager Todd LaScola. The case involved the efforts of EBSA, FBI, the U.S. Postal Inspection Service, and the R.I. State Police. Each agency gathered separate evidence and produced individual interview reports, all of which had to be organized and collated for the indictment, and ultimately copied for purposes of discovery. Towards that end, I was instrumental in eliciting the cooperation of all of the individuals and agencies involved and in seeing that all of the necessary tasks were accomplished.

My leadership abilities were also displayed through my position as Team Leader of the Security Detail for the Secretary of Labor during 2000- 2001. While serving in this position, I was responsible for directing the efforts of 4-5 Special Agents, all involved in providing security for the Secretary of Labor during her visits to the New England region. This involved the strategic planning and placement of Agents at all locations of the Secretary's visit and was further characterized by constant communication and coordination among the Agents to cover any unexpected events or stops. My leadership abilities were tested while performing this role, as many times, last minute scheduling changes or events made for stressful situations for all of the Agents involved. Nonetheless, all of the security details which I led were successfully executed.

4. My ability to coordinate investigations of difficult factual and legal matters is proven in the many criminal cases I have successfully worked. In the previously mentioned LaScola case, I worked successfully with two Assistant U.S. Attorneys to organize the evidence in support of the several criminal violations charged. I also worked successfully with three different U.S. DOJ Attorneys from Washington, D.C. to organize the evidence on the previously mentioned grant fraud case I worked, which resulted in a four-count indictment. In organizing the evidence for both of these cases, I dealt with complex factual and legal issues which needed to be addressed and resolved during the criminal process.

On the civil side, I have already worked cases which are factually and legally of a complex nature in my tenure as an Investigator with EBSA. On one case, I looked at several different areas of violations including breaches of fiduciary duty, prohibited transactions, employer negligence, bankruptcy, and non-compliance with IRS statutes. I dealt with each of these violations separately, and in the end, was successful in holding the fiduciaries responsible for their breaches and financially liable for making the plan whole. The latter was accomplished while dealing with the bankruptcy issues and non-compliance with IRS statutes.

5. Throughout my thirteen year career as an Investigator and Special Agent with the federal government, I have honed my oral and writing skills through the many tasks assigned to me. Through many successful presentations of criminal cases to Assistant United States Attorneys, I have proven that my oral skills are solid and effective. In my coordination of the Security Details for the Secretary of Labor, I often had to deal with high-ranking government officials, and my oral communication skills were both tested

2

Tab F9 p.5

and proven. My writing skills, likewise, through numerous written interviews and reports over the years, have been proven strong and effective.

3

Tab F9 p. 6

Exhibit 9

**OPTIONAL APPLICATION FOR FEDERAL EMPLOYMENT**
**(OF 612 -- Form Approved: OMB No. 3206-021)**

You may apply for most jobs with a resume, this form, or other written
format. If your resume or application does not provide all the
information requested on this form and in the job vacancy announcement,
you may lose consideration for a job.

=================================================================

1.  **JOB TITLE IN ANNOUNCEMENT:** Investigator  GS-1801-13
    ----------------------------------------------------
2.  **GRADE(S) APPLYING FOR:** 13
    -----------------
3.  **ANNOUNCEMENT NUMBER:** BOS 03-29
    ------------------------
4.  **LAST NAME:** Shanahan          **FIRST, MIDDLE:** James, Martin
    ----------------------          ------------------------
5.  **SOCIAL SECURITY NUMBER:** ▓▓▓▓▓▓▓▓
    -------- ---- -------
6.  **MAILING ADDRESS:** ▓▓▓▓▓▓▓▓▓▓▓▓▓2
    ------------------------------------------------------
    **CITY/STATE/ZIP:** ▓▓▓▓▓▓▓▓▓▓▓
    ------------------------------------------------------
7.  **PHONE NUMBERS** (include area code)  **DAYTIME:** ▓▓▓▓▓▓▓▓
    ------------------------
                                          **EVENING:** ▓▓▓▓▓▓▓▓
    ------------------------

=================================================================

8.  **WORK EXPERIENCE:** Describe your paid and nonpaid work experience
    related to the job for which you are applying. (Do not attach job
    descriptions)

1)  **JOB TITLE** (If Federal,
    include series and grade): Investigator 1801-12

    FROM (MM/YY): 07/98     TO (MM/YY): Present
    ------------           ------------
    SALARY: $ 53,721     per Year     HOURS PER WEEK: 40
    ------------     --------              --------
    EMPLOYER'S NAME: USDOL-EBSA
    ---------------------------------------------------
        AND ADDRESS: Room 575, JFK Federal Building
    ---------------------------------------------------
    SUPERVISOR'S NAME: Carol Hamilton, Group Supervisor
    ---------------------------------------
            AND PHONE: ▓▓▓▓▓▓▓▓
    ------------------------

Tab F ¶4 p.1

DESCRIBE YOUR DUTIES AND ACCOMPLISHMENTS:

Experience - Civil Investigations:

As an Investigator, I conduct civil investigations that require knowledge of the laws of the Department of Labor with regard to enforcement provisions of the Employee Retirement Income Security Act ("ERISA"), Health Insurance Portability and Accountability Act ("HIPAA"), Consolidated Omnibus Budget Reconciliation Act ("COBRA") and other similarly complex laws relating to employee benefits.

Accordingly, as an Investigator, I have acquired an in-depth knowledge of the laws of the Department of Labor while collecting facts and reviewing documents required under ERISA, COBRA and HIPAA. This requires in-depth working knowledge of complex DOL Regulations, DOL Opinion Letters, Treasury Regulations and the Internal Revenue Code to determine violations. Also, I review ERISA required documentation for the particular employee benefit plan in question (i.e. Plan Document, Summary Plan Descriptions, IRS 5500 Forms, Summary of Material Modifications and Individual Benefit Statements). Also, I analyze financial data supplied from Plan Administrators, Trustees, Accountants, Actuaries, Attorney's and participants such as employment records, tax records, union records and other documents to determine if a violation of ERISA, COBRA or HIPAA has occurred. I also review FEDS targeting data to obtain information concerning the nature and type of other employee benefit plans sponsored by the organization in question. Similarly, I also review the EMS investigative database to determine if any other EBSA investigators are reviewing an employee benefit plan sponsored by the organization in question.

Also, as Investigator, I have obtained an in-depth knowledge of bankruptcy laws. I have experience with legal analysis of Chapter 7 and Chapter 11 Bankruptcy cases and how the interact with the fiduciary protections of ERISA. This issue is important when employer contributions to ERISA protected defined contribution (i.e. 401k, etc.) are not being made in a timely basis. Also, bankruptcy issues often involve other agencies such as the Pension Benefit Guarantee Corporation (PBGC), IRS or U.S. Justice Department Bankruptcy Trustees. This function of my job is important because a company declaring bankruptcy is a warning sign that there may be a fiduciary violation of ERISA. As a result, I frequently address complex issues while conducting investigations involving delinquent contributions to ERISA protected plans and bankruptcy.

As Investigator, I also interview individuals while conducting complex civil investigations. This function requires an in depth knowledge of the laws of the Department of Labor such as ERISA, COBRA and HIPAA along with an extensive working knowledge of complex DOL Regulations, DOL Opinion Letters, Treasury Regulations and the Internal Revenue Code to determine violations. This function required the ability to gage the questions based on the professional expertise of the interviewee. I must collect germane facts and summarize them in the form of a Report of Interview.

I work closely with the Regional Solicitors Office concerning the interpretation of highly complex regulatory material to obtain and enforce DOL administrative subpoenas. In order for a subpoena to be approved, I must prove to RSOL and the Regional Director that a cause of action under ERISA exists and that the subpoena which will be issued can actually be enforces. This further demonstrated my ability to interpret highly complex regulatory material and to summarize facts

Ultimately, I interpret highly complex regulatory material to write memorandums of law concerning facts collected and violations of ERISA or similarly complex laws. I frequently write Reports which cite

Tab FH p.2

violations of DOL Regulations, DOL Opinion Letters, Treasury Regulations and the Internal Revenue Code and court cases and present those memoranda to the Regional Solicitor's Office ("RSOL"), the Regional Director, and Group Supervisor. This function requires the knowledge of the laws of the Department of Labor while interpreting regulations concerning ERISA, COBRA and HIPAA and identification of fiduciary breaches, prohibited transactions, health care fraud and other fraud concerning ERISA protected employee benefit plans.

In some cases, I place the subject of the investigation into Voluntary Compliance to correct the cited violation. This involves preparing a letter citing violations of ERISA, HIPAA, COBRA or other highly complex laws and regulations. In addition, I track the subject to ensure that they complied with the Departments findings. If the party does not comply with the violations cited in the Voluntary Compliance letter, then I refer the party to RSOL for litigation.

My work conducting civil investigations demonstrates my sound knowledge of, and extensive background in, the specialized areas of procedures and laws governing investigations, as well as the experience in determining that adequate proof exists of all elements of an alleged violation of law. My experience conducting civil investigations has contributed to my in-depth understanding of the entire spectrum of an enforcement action.

Experience - Civil Litigation:

Accordingly, I work closely with RSOL to provide litigations support, such as deposing witnesses, collecting additional facts and providing financial analysis (e.g. exhibits, spreadsheets etc.) and negotiating settlement agreements concerning civil investigations. These require knowledge of the laws of the Department of Labor with regard to enforcement provisions of the ERISA, HIPAA, COBRA and other similarly complex laws relating to employee benefits.

I conducted several investigative depositions with fiduciaries of employee benefits plans under investigation. This process involved working with RSOL to enforce subpoenas to compel sworn testimony at the U.S. Department of Labor. Three cases have been/will be referred to RSOL for further action.

In addition to conducting investigative depositions, I have applied my knowledge of financial accounting and reporting, corporate finance and the time value of money to calculate the amount owed to a plan, participants or the U.S. government under ERISA Section 502(l). For example, I have assisted RSOL and other EBSA investigators by preparing a loss worksheet which calculated the present value of the loss to the Plan based on a variety of interest rates. This 30-page spreadsheet was integral to negotiate a multi-million dollar settlement agreement with RSOL.

My experience in civil litigation support demonstrates my sound knowledge of, and extensive background in, the specialized areas of procedures and laws governing investigations, as well as the experience in determining that adequate proof exists of all elements of an alleged violation of law. My experience in civil litigation support has also contributed to my in-depth understanding of the entire spectrum of an enforcement action.

Experience - Criminal Investigations:

As an Investigator, I conduct complex criminal investigations concerning service providers (e.g. brokers and

Tab F ¼ p. 3

consultants), plan fiduciaries and others. This position requires an in-depth knowledge of criminal laws the Department of Labor enforces along with collecting facts and reviewing documents required under ERISA, COBRA and HIPAA.

My criminal cases are complex and require an extensive working knowledge Title 18 of the U.S. Criminal Code and other highly complex laws, such as the Federal Sentencing Guidelines, Federal Rules of Criminal Procedure and U.S. Constitutional law (e.g. rights of accused, etc.).

My criminal cases have involved conducting interviews with individuals concerning complex criminal violations. I have an extensive working knowledge of complex laws of the Department of Labor, such as Title 18 of the U.S. Criminal Code. This requires in-depth knowledge of the elements of the offense, statute of limitations and punishment. In addition, I have applied my in-depth knowledge of U.S. Constitutional law when dealing with the accused to protect their rights and the government's case against them. For example, as Lead Investigator, I conducted interviews immediately following the execution of a search warrant. Working with an AUSA, I protected the government's case and the rights of the accused. This demonstrates my extensive understanding of complex case law relating to the Fourth, Fifth and Fourteenth Amendments to the U.S. Constitution.

Moreover, as Lead Investigator on criminal investigations and have worked with closely with AUSA's to obtain Grand Jury Subpoenas. This requires an in-depth understanding of the law and through familiarity with all material facts in order to identify the appropriate documents necessary to prove the violation and obtain a Grand Jury Subpoena. This requires the ability to understand the significance of certain documents, required under ERISA, such as the Plan Document, Summary Plan Descriptions, IRS 5500 Forms, Summary of Material Modifications, Individual Benefit Statements or Explanation of Benefits and Stop Loss contracts and supporting documents. Also, I analyze financial data supplied from Plan Administrators, Trustees, Accountants, Actuaries, Attorney's and participants such as employment records, tax records, union records and other documents to assist the AUSA in drafting the Grand Jury Subpoenas.

Moreover, I have been the custodian of Grand Jury materials covered under Federal Rule of Criminal Procedure 6(e). This requires an ability to efficiently organize vast quantities of data based on extensive working knowledge of complex laws of the Department of Labor, such as Title 18 of the U.S. Criminal code. For example, one of my criminal cases has over eighty boxes obtained by Grand Jury Subpoena. I devised a tickler file in a QuattroPro spreadsheet to easily search for documents flagged during the review process. Each document was assigned an Audit Control Number and a summary of that data was entered into the spreadsheet. This process provided an efficient way to sort, track and analyze Grand Jury materials covered under Federal Rule of Criminal Procedure 6 (e) and further demonstrates my extensive working knowledge of complex laws of the Department of Labor, such as Title 18 of the U.S. Criminal code.

Similarly, I have been the Lead Investigator on criminal investigations and have participated in writing affidavits to obtain search warrants. This required extensive working knowledge of complex laws of the Department of Labor, such as Title 18 of the U.S. Criminal code in order to identify germane facts necessary to prove the violation. For example, I wrote a narrative describing the facts of a two year federal criminal investigation into a service provider being investigated jointly by the FBI an EBSA. This narrative served as a template for the AUSA to write the affidavit.

Additionally, I have been the Lead Investigator on criminal investigations and have executed search warrants with the FBI, which required an extensive working knowledge of complex laws of the Department of Labor,

Tab F44p.4

such as Title 18 of the U.S. Criminal Code in order to seize documents computers and other objects necessary to prove the violation This function required an in-depth understanding of documents required under ERISA, such as the Plan Document, Summary Plan Descriptions, IRS 5500 Forms, Summary of Material Modifications, Individual Benefit Statements, Explanation of Benefits and Stop Loss contracts and supporting documents for self-funded health plans. In addition, executing search warrants also require an understanding of case law relating to the Fourth, Fifth and Fourteenth Amendments to the U.S. Constitution and other provisions of Title 18 or the U.S. Code.

Accordingly, I have reviewed evidence obtained by search warrant and grand jury subpoena's to identify germane documents to prove the violation. This critical step requires an extensive working knowledge of complex laws of the Department of Labor, such as Title 18 of the U.S. Criminal Code, along with the ability to identify and understand significant documents required under ERISA and other similarly complex laws.

As the lead investigator, I provide testimony to the grand jury and at trial as both a summary witness and fact witness for the U.S. Government. This function requires my ability to present complex issues in a clear and precise manner and gage those presentations to the level of sophistication of the audience. Similarly, I have worked with the AUSA to prepare other witnesses to provide testimony before the grand jury.

I have also made recommendations to AUSA's concerning sentencing and punishment under the Federal Sentencing Guidelines. This requires an extensive working knowledge of complex laws of the Department of Labor, such as the Federal Sentencing Guidelines and Title 18 of the U.S. Criminal Code. For example, I researched the meaning of "Loss" under the guidelines for the AUSA. This involved legal research on case law in the First Circuit, U.S. Supreme Court, law review articles and contacting a clerk at the U.S. Sentencing Commission to make a recommendation on a sentence.

Most recently, I have worked with the Commonwealth of Massachusetts, Office of the Attorney General in a criminal investigation. This requires an extensive working knowledge of complex laws of the Department of Labor, such as Massachusetts General Laws Chapter 265 (criminal law) and understanding of the elements of Grand Larceny.

<u>Supervisory Experience at EBSA:</u>

I was able to direct staff and motivate others as a Team Leader while being a Mentor and Acting Group Supervisor at EBSA. I have served as a mentor at EBSA for a new investigator. This involved answering a variety of questions from career advice and technical questions about ERISA, to questions involving living and working in Boston. As the Acting Group Supervisor, I reviewed cases and supervised a staff of eight professionals. An example, of how I motivated the staff included working with an investigator to expeditiously process a $55 million dollar recovery.

My supervisory experience at EBSA demonstrates my sound knowledge of, and extensive background in, the specialized areas of procedures and laws governing investigations, as well as the experience in determining that adequate proof exists of all elements of an alleged violation of law. My supervisory experience at EBSA has also contributed to my in-depth understanding of the entire spectrum of an enforcement action.



2)  JOB TITLE (If Federal,
    include series and grade): Investigator (Trainee) 1899-7-----------
    FROM (MM/YY): 06/96        TO (MM/YY): 7/98
           --------------           -----------
    SALARY: $ 26,105      per Year      HOURS PER WEEK: 20 - 40*
           ------------        --------          --------

*. Please note that June through September 1996, December 1996 and
January 1997, June through September 1997 and December 1997 was work on
a full-time basis.


    EMPLOYER'S NAME: USDOL-EBSA
                    ------------------------------------------------------
        AND ADDRESS: Room 575, JFK Federal Building
                    ------------------------------------------------------
    SUPERVISOR'S NAME: Henry DeSantis, Associate Regional Director
                      ------------------------------------
            AND PHONE: ████████████
                      -------------------------


    DESCRIBE YOUR DUTIES AND ACCOMPLISHMENTS:

Interviewing and Collecting Facts:

Receive participant complaints regarding plan noncompliance with the ERISA, COBRA and HIPAA. Serve
as primary contact for all plan participants, employee benefit plans, professionals and plan officials.
Interview participants, professionals and plan officials to determine relevant facts telephonically. Also
respond in writing to participants, professionals and plan officials relative to the determination of ERISA,
COBRA or HIPAA violations. Use relevant facts obtained through telephonic interviews or written
documentation to determine relevant facts to determine ERISA, COBRA or HIPPA violations.

Legal Analysis and Application:

Apply regulations relative to ERISA, COBRA and HIPAA to relevant facts. Extensive working knowledge
of complex Department of Labor Regulations or Internal Revenue Regulations is necessary to determine
violations. Also, review legal documents specific to the particular employee benefit plan in question (i.e.
Plan Document, Summary Plan Descriptions, 5500 Forms and Summary of Material Modifications,
Individual Benefit statements). Also analyze financial data supplied from participants such as employment
records, tax records, union records and other documents to determine if a violation has occurred.

Apply legal analysis to rectify the dispute. Contact participants, professionals and plan officials to educate
them relative to rights and duties under ERISA. This function requires proficiency in oral advocacy and the
ability to quickly analyze new facts. In 1996, I responded to more inquiries than the rest of the customer
service staff combined. In 1997 I also led the way in total dollar recoveries at $800,000.00 out of $2.2
million in the customer service function of the Boston Regional Office of EBSA. I was awarded two Special
Service Act Awards for my outstanding service.

Tab F#4p.6

Written and Oral Responses:

Preparing replies to technical inquires relative to ERISA, COBRA and HIPAA. This function requires the ability to gage the level complexity to the appropriate party (e.g. union member/participant to ERISA attorney. This function requires the ability to generate concise, candid responses to highly complex legal issues involving ERISA, COBRA or HIPAA.

Assisting Investigators:

Assisted auditors and investigators in researching legal issues involving employee benefit plans. Prepared spreadsheet on Quatropro which details expenditures incurred by an ERISA covered defined contribution pension plan. This position required knowledge and application of ERISA and Generally Accepted Accounting Principles.

Review New Court Cases and Prepare Summaries:

Prepared memorandums of law involving new decisions involving employee benefit plans. These summaries are prepared to analyze changes in laws and regulations. This function requires the ability to conduct highly complex legal research using Westlaw, Lexis-Nexis, BNA Pension Reporter or A Employee Benefits Expert Database. This position also involves contacting the Regional Solicitors Office and complex analysis of the legal position the U.S. Department of Labor and the impact on developing telephone inquires to civil and criminal investigations for EBSA.

```
3)  JOB TITLE (If Federal,
    include series and grade): Law Intern-----------------------------

    FROM (MM/YY): January 1998 TO (MM/YY): June 1998
           ------------              ------------
    SALARY: $0           per N/A      HOURS PER WEEK: 20
           ------------       --------            --------
    EMPLOYER'S NAME: United States Department of Justice
                     Office of the U.S. Attorney
                     Economic Crimes Unit
                     ----------------------------------------------------
        AND ADDRESS: 1003 J.W. McCormack Building, P.O. & Courthouse
                     ----------------------------------------------------
    SUPERVISOR'S NAME: Victor A. Wild, Assistant United States Attorney
                       ------------------------------------
           AND PHONE: ████████████
                      -------------------------
```

DESCRIBE YOUR DUTIES AND ACCOMPLISHMENTS:

Conduct legal research involving criminal case prosecutions involving ERISA covered employee benefit plans for Assistant United States Attorney. This position requires highly proficient use of Westlaw, Lexis-Nexis, BNA Pension Reporter or RIA Employee Benefits Expert Database. This position also requires the ability to analyze highly complex legal issues relative to criminal prosecutions of ERISA covered employee

Tab F # p.7

benefit plans (e.g. theft of ERISA plan assets, kickbacks to ERISA pension plan trustees, materially false statements to the U.S. Department of Labor, etc.)

Interview and conduct meetings with special agents from DOL-EBSA, FBI, IRS-CID and other federal law enforcement agencies. This position requires the ability to ascertain relevant facts from irrelevant facts based on complex legal standards courts have used in federal criminal prosecutions of ERISA covered employee benefit plans. This function requires the ability to gage the level complexity to the appropriate party.

Write memorandums of law regarding criminal case prosecutions involving ERISA covered employee benefit plans. This position requires the ability to compare relevant decisions, distinguish irrelevant decisions to arrive at well reasoned conclusions involving highly complex prosecutions involving ERISA covered employee benefit plans.

Assist Assistant United States Attorney with trial preparation. This function requires an extensive level of knowledge with the Federal Rules of Evidence, Grand Jury Proceedings, and the United States Criminal Code and their application to ERISA covered employee benefit plans.

```
4)  JOB TITLE (If Federal,
    include series and grade):  Committee Member & Chairman of the Legal
                                     and Regulatory Subcommittee

    FROM (MM/YY): March 1993  TO (MM/YY): Present
               ------------            ------------
    SALARY: $0  -           per N/A    HOURS PER WEEK: 2-5
           ----------- ----   --------              --------
    EMPLOYER'S NAME: City of Worcester
                     Cable Television Advisory Committee

            --------------------------------------------------
        AND ADDRESS: City Hall-
                     454 Main Street, Worcester, MA 01608
            --------------------------------------------------
    SUPERVISOR'S NAME: George Neuman, Committee Chairman
                       ---------------------------------
            AND PHONE: ████████ (ask for the Law Department)
                       ------------------------
    DESCRIBE YOUR DUTIES AND ACCOMPLISHMENTS:
```

Wrote a ten (10) year multi-million dollar contract between the City of Worcester and Greater Media Cable covering over 70,000 rate payers. This position required analysis of highly complex legal issues involving regulatory authorities such as the Federal Communication Commission, Massachusetts Cable Television Commission and principals

Worked with U.S. Senator John Kerry to obtain IRS Taxpayer Advice Memorandum 960626 involving Treasury Regulation 1.501(c)(3) and the tax impact of political activities of a tax exempt 501(c)(3) organization funded through the cable contract.

Tab F##p.8

5)  JOB TITLE (If Federal,
    include series and grade): Accounting Analyst – Temporary Position
    FROM (MM/YY): November 1994  TO (MM/YY): August 1995

    SALARY: $14.00            per: Hour      HOURS PER WEEK: 40

    EMPLOYER'S NAME: Flagship Bank & Trust
                    (Arranged through Robert Half International–
                     Account Manager Jeff Auge███ ██████)

        AND ADDRESS:
                    120 Front Street, Worcester, MA 01608

    SUPERVISOR'S NAME: Martha Dean, Assistant Vice President

            AND PHONE: ██████ █████

    DESCRIBE YOUR DUTIES AND ACCOMPLISHMENTS:

Assisted in computer system conversion relative to accuracy of banking records.  This position involved
analyzing detailed and complex reports relative investment management of ERISA protected assets in the
trust department. Also, this function required experience with Real Estate, Real Estate Investment Trusts
and Property Taxation to develop a spreadsheet based tickler file.   This function also requires extensive
knowledge of Generally Accepted Accounting Principles and other highly complex rules and regulations.
Also, reviewed mortgage and commercial loan portfolio guarantors, surities and comakers for accuracy and
adjusted accounting records as necessary.

6)  JOB TITLE (If Federal,
    include series and grade): Auditor

    FROM (MM/YY): August 1993 :   TO (MM/YY) :  May  1994 *

    SALARY: $28,000.00            per: Year     HOURS PER WEEK: 50+

    EMPLOYER'S NAME: McCarthy, Hargrave & Co.
                    Certified Public Accountants

    ------------------------------------------------------
        AND ADDRESS: 484 Main Street, Worcester, MA 01608
    ------------------------------------------------------
    SUPERVISOR'S NAME: Christopher Sandini, Certified Public Accountants

            AND PHONE: ██████████

 * Part-time from 5/94 till 11/95

Tab F ██/p.9

**DESCRIBE YOUR DUTIES AND ACCOMPLISHMENTS:**

Audit experience in banking, manufacturing, publishing and governmental organizations.

Prepared and updated audit program to conduct audit of banking organization. Audit included testing account balances, disclosures and internal controls of a major regional banking institution. For example, tested account balances with confirmation letters to other organizations such as ERISA covered employee benefit plans and other major banking customers. Also, conducted surprise cash counts of several branches of the bank and reconciled those balances with the general ledger and balance sheet. Audit also included compliance with Federal Deposit Insurance Corporation, Federal Reserve and Comptroller of the Currency regulations concerning collective trust funds. These funds are used by small to medium sized ERISA covered employee benefit plans.

Prepared and updated audit program and conducted audit of manufacturing organization. This audit included testing the operation of an ERISA covered defined contribution 401(k) plan and employer contributions to Taft-Hartley defined benefit pension plan, pursuant to a collective bargaining agreement. Sent out confirmations with financial institutions to confirm account balances and contributions. Also, tested all other material balances reflected in the balance sheet, income statement and statement of cash flows were tested, constant with rendering an unqualified opinion under Generally Accepted Auditing Standards.

Prepared and updated audit program and conducted audit of a major housing authority. This audit included testing the operation of the 403(b) defined contribution pension plan. For example, payroll calculations were re-computed on a test basis. Deductions from payroll were traced to the trial balance and contributions independently confirmed with financial institutions and canceled checks.

Prepared and updated audit program and conducted audit pursuant to the Single Audit Act. The Single Audit Act requires an entity which receives $100,000.00 or more from the Federal government to be audited by an independent auditor. This audit examined whether the terms and conditions of receiving money from the U.S. Department of Housing and Urban Development were followed according to the terms of a community block grant.

Prepared corporate and individual income tax returns. This function included a working knowledge of tax qualified ERISA covered employee benefit plans. Employer contributions, employee contributions, taxable pre-retirement distributions, and ordinary distributions at retirement age).

Tab F-14 p.10

7)  ·JOB TITLE (If Federal,
    include series and grade): Accounting Analyst (Internal Auditor)

    FROM (MM/YY): May 1991       TO: May 1993

    SALARY: $26,000.00              per: Year    HOURS PER WEEK: 50+

    EMPLOYER'S NAME: New England Electric System


        AND ADDRESS: 25 Research Drive
                     Westborough, MA 01582

    SUPERVISOR'S NAME: John Igbokwe

            AND PHONE: [redacted]


    DESCRIBE YOUR DUTIES AND ACCOMPLISHMENTS:

Coopers & Lybrand:

Coopers & Lybrand is the accounting firm engaged to conduct an independent audit of New England Electric on an annual basis.

Prepared workpapers and detailed reports and schedules quarterly to support the audit conducted by Coopers & Lybrand, Certified Public Accountants. These schedules reconcile the trial balance to the general ledger and reflect procedures necessary in the audit program required under Generally Accepted Auditing Standards.

Prepared an analysis of the Allowance of Funds Used During Construction ("AFDC") to support Coopers & Lybrand audit. The AFDC schedule reflects the amount allocated for all employee benefit plans such as the New England Electric Non-Contributory Defined Benefit Pension Plan, New England Electric 401(k) Plan and employer contributions to the International Brotherhood of Electric Workers, Brotherhood of Utility Workers of New England and the Utility Workers Union of America pursuant to collective bargaining agreements. AFDC represents the overhead allocated to major capital construction projects. This schedule reflects $10 to $15 million dollars of expenditures per year in the years 1990, 1991, 1992 and 1993.

Established a tickler file on Lotus 1-2-3 and Paradox software to improve the integrity of accounting information. This computer application generated reports used to compute property taxes for one hundred and twenty (120) miles of real estate supporting a transmission line for the Hydro Quebec Project. This function requires extensive working knowledge of real estate law, property valuation methodology, and property taxation.

Tab F#4 p.11

Federal Energy Regulatory Commission Audit (FERC):

FERC generally audits every investor owned utility at least every five years. The purpose of this audit is to ensure that the interstate sale of electricity is in compliance with FERC/Department of Energy Regulations. For example, certain costs may not be included in the rate base (i.e. the amount that can be charged as rates). Investor owned public utilities are allowed to recover their expenses plus a return that provides a net profit. Only costs and expenses which are "prudent" may be passed along to ratepayers.

Prepared report detailing contributions and expenses relating to the New England Electric Non-contributory Defined Benefit Pension Plan, New England Electric 401(k) Plan and employer contributions to the International Brotherhood of Electric Workers, Brotherhood of Utility Workers of New England and the Utility Workers Union of America pursuant to collective bargaining agreements.

Prepared the "Form 1" to meet compliance with Federal Energy Regulatory Commission Regulations regarding the disclosure of financial information of investor owned utilities. This function involves analysis of information prepared by accounting clerks, reconciling inconsistencies and completing the form in accordance with Department of Energy Regulations.
Quality Team:

Worked closely with the Controller, Assistant Controller and accounting managers to make policy changes to effectuate a reductions in financial accounting and reporting errors. This position involved complex accounting analysis of major electric retail subsidiaries (Massachusetts Electric, Narragansett Electric, Granite State Electric, Nantucket Electric), major transmission subsidiaries (New Hampshire Hyro and New Hampshire Hydro Electric) and all power generating subsidiaries (New England Power Company). This position involved examination of accounting for payroll, employee benefits such as New England Electric Non-contributory Defined Benefit Pension Plan, New England Electric 401(k) Plan and employer contributions to the International Brotherhood of Electric Workers, Brotherhood of Utility Workers of New England and the Utility Workers Union of America. This function also involved compliance with U.S. Department of Labor Regulations relative to defined benefit and defined contribution pension plans. Achieved twenty-five percent (25%) reduction in financial accounting and reporting errors in 1991 and fifteen percent (15%) reduction in errors for 1992.

Reports and Presentations to the Board of Directors:

Prepared reports and schedules cost breakdowns for the Board of Directors involving major construction projects. Prepared detailed compliance reports for the Hyro Quebec Project ($130 million) and the Manchester Street Power Station Repowering Project ($460 million). These reports were used for regulatory compliance with the U.S. Department of Labor, Internal Revenue Service, Federal Energy Regulatory Commission and other state regulatory and rule making authorities.

Conducted Internal Audit of Retail Subsidiary:

Prepared audit plan and conducted an internal audit of a retail subsidiary. This function involved preparing an audit plan used to test amounts, disclosures and transactions reflected in the general ledger and balance sheet. This position also involved hiring engineering consultants to assist in physical inspection of major equipment of Narragansett Electric (e.g. substations, transformers, transmission towers, buildings, etc.).

Tab F ¶ p.12

transcript unless requested.)

1) NAME: Nichols College

-----------------------------------------------------------------

CITY/STATE/ZIP: Dudley, MA, 01570

-----------------------------------------------------------------

SEMESTER CREDITS EARNED: 137          MAJOR(S): Double Major: Accounting & Finance

(or)       ------          ------------------------

QUARTER CREDITS EARNED:
                           ------          ------------------------

DEGREE (if any): BSBA, Cum Laude        YEAR RECEIVED:1991

-----------------------------------------------------------------

2) NAME: Suffolk Law School

-----------------------------------------------------------------

CITY/STATE/ZIP: Boston, MA 01602

-----------------------------------------------------------------

SEMESTER CREDITS EARNED: 87        MAJOR(S): Law School - no major
(or)       ------          ------------------------

QUARTER CREDITS EARNED:
                           ------          ------------------------

DEGREE (if any): J.D.                YEAR RECEIVED: May 1998

-----------------------------------------------------------------

3) NAME: Harvard University School of Public Health

-----------------------------------------------------------------

CITY/STATE/ZIP: Boston, MA 02115

-----------------------------------------------------------------

SEMESTER CREDITS EARNED: 20          MAJOR(S): MPH - LPH (health care law)

(or)       ------          ------------------------

QUARTER CREDITS EARNED:
                           ------          ------------------------

DEGREE (If any): MPH-LPH            YEAR RECEIVED:  2002

-----------------------------------------------------------------

OTHER QUALIFICATIONS

13. Job-related training courses (give title and year).  Job-related skills (other languages, computer software/hardware, tools, machinery, typing speed, etc.).  Job-related certificates and licenses (current only).  Job-related honors, awards, and special accomplishments (publications, memberships in professional/honor societies, leadership activities, public speaking, and performance awards).  Give dates, but do not send documents unless requested.

Tab FHp.14

**Professional Licenses:** I am a licensed Certified Public Accountant (Fully Licensed in Massachusetts and Maryland) and an Attorney(Fully Licensed in Massachusetts and am also a member of the U.S. District Court).

**Recent Professional Publications:** Harvard Health Policy Review, Volume II, Number 1, "*Unfamiliar Regulatory Risks - Are There Lessons to be Learned From the Federal Regulation of Human Cloning Technology?*".

**Honors and Awards:**

Nichols College Alumni Achievement Award - 2001
Special Service Act Award - DOL-EBSA 2000, 1997 and 1996
Suffolk Law School Dean's List 1997 - 1998
First Year Best Oral Advocate - Suffolk University Law 1996
Nichols College - Commencement - Cum Laude 1991
Colonel Conrad Founder's Award - Commencement Award - Nichols College May 1991
Who's Who Among Students at American Colleges and Universities 1988 - 1991
Zeta Alpha Phi (National Honor Society - Accounting Majors) 1988-1991
Delta Mu Delta (National Honor Society - Business Administration Students) 1988-1991
U.S. Department of the Treasury - Commendation Award - 1990

**Computer Skills:** Computer Skills: Lotus, Quatropro, Microsoft Word, WordPerfect 6, FEDS data base

=========================================================================
GENERAL:

14. ARE YOU A U.S. CITIZEN? Yes

15. Do you claim veterans' preference? NO[X ]  YES[  ] > Mark your
claim of 5 or 10 points below.
        5 points [  ] > Attach you DD 214 or other proof.
        10 points [  ] > Attach an Application for 10-Point
    Veterans' Preference (SF 15) and proof required.

16. Were you ever a Federal civilian employee?
        NO [  ]  YES [X ] For highest civilian grade give:

    Series: 1801____Grade 12____From (MM/YY)6/96 To(MM/YY)Present_____

17. Are you eligible for reinstatement based on career or career-
    conditional Federal status?  N/A
        NO [  ]  YES [  ] > If requested, attach FS 50 proof.

Tab FH p.15

18.  I certify that, to the best of my knowledge and belief, all of the information on and attached to this application is true, correct, complete and made in good faith.  I understand that false or fraudulent information on or attached to this application may be grounds for not hiring me or for firing me after I begin work, and may be punishable by fine or imprisonment.  I understand that any information I give may be investigated.

SIGNATURE _____    DATE SIGNED __4-12-03__

GENERAL INFORMATION

*   You may apply for most Federal jobs with a resume, this Optional Application for Federal Employment or other written format.  If your resume or application does not provide all the information requested on this form and in the job vacancy announcement, you may lose consideration for a job.  Type or print clearly in dark ink.  Help speed the selection process by keeping your application brief and sending only the requested information.  If essential to attach additional pages, include your name and Social Security Number on each page.

*   For information on Federal employment, including job lists, alternative formats for persons with disabilities, and veterans' preference, call the U.S. Office of Personnel Management at 912-757-3000, TDD 912-744-2299, by computer modem 912-757-3100, or via the Internet (Telnet only) at FJOB.MAIL.OPM.GOV.

*   If you served on active duty in the United States Military and were separated under honorable conditions, you may be eligible for veterans' preference.  To receive preference if your service began after October 15, 1976, you must have a Campaign Badge, Expeditionary Medal, or a service-connected disability.  Veterans preference is not a factor for Senior Executive Service jobs or when competition is limited to status candidates (current or former career or career-conditional Federal employees).

*   Most Federal jobs require United States citizenship and also that males over age 18 born after December 31, 1959, be registered with the Selective Service System or have an exemption.

*   The law prohibits public official from appointing. promoting, or recommending their relatives.

*   Federal annuitants (military and civilian) may have their salaries or annuities reduced.  All employees must pay any valid

Tab FM p.16

- delinquent debts or the agency may garnish their salary.

* Send your application to the office announcing the vacancy. If you have questions, contact that office.

THE FEDERAL GOVERNMENT IS AN EQUAL OPPORTUNITY EMPLOYER.

## PRIVACY ACT AND PUBLIC BURDEN STATEMENTS

The Office of Personnel Management and other Federal agencies rate applicants for Federal jobs under the authority of sections 1104, 1302, 3301, 3304, 3320, 3361, 3393, and 3394 of title 5 of the United States Code. We need the information requested in this form and in the associated vacancy announcements to evaluate your qualifications. Other laws require us to ask about citizenship, military service, etc.

We request your Social Security Number (SSN) under the authority of Executive Order 9397 in order to keep your records straight; other people may have the same name. As allowed by law or Presidential directive, we use your SSN to seek information about you from employers, schools, banks, and others who know you. Your SSN may also be used in studies and computer matching with other Government files, for example, files on unpaid student loans.

If you do not give us your SSN or any other information requested, we cannot process your application, which is the first step in getting a job. Also, incomplete addresses and ZIP Codes will slow processing.

We may give information from your records to: training facilities; organizations deciding claims for retirement, insurance, unemployment or health benefits; officials in litigation or administrative proceedings where the Government is a party; law enforcement agencies concerning violations of law or regulation; Federal agencies for statistical reports and studies; officials of labor organizations recognized by law in connection with representing employees; Federal agencies or other sources requesting information for Federal agencies in connection with hiring or retaining, security clearances, security or suitability investigations, classifying jobs, contracting, or issuing licenses, grants, or other benefits; public and private organizations including news media that grant or publicize employee recognition and awards; and the Merit Systems Protection Board, the Office of Special Counsel, the Equal Employment Opportunity Commission, the Federal Labor Relations Authority, the National Archives, the Federal Acquisition Institute, and congressional offices in connection with their official functions.

Tab FY/p.17

We may also give information from your records to: prospective nonfederal employers concerning tenure of employment, civil service status, length of service, and date and nature of action for separation as shown on personnel action forms of specifically identified individuals; requesting organizations or individuals concerning the home address and other relevant information on those who might have contracted an illness or been exposed to a health hazard; authorized Federal and nonfederal agencies for use in computer matching; spouses or dependent children asking whether the employee has changed from self-and-family to self-only health benefits enrollment; individuals working on a contract, service, grant, cooperative agreement or job for the Federal Government; non agency members of an agency's performance or other panel; and agency-appointed representatives of employees concerning information issued to the employee about fitness-for-duty or agency-filed disability retirement procedures.

We estimate the public reporting burden for the employment information will vary from 20 to 240 minutes with an average of 40 minutes per response, including time for reviewing instructions, searching existing data sources, gathering data, and completing and reviewing the information. You may send comments regarding the burden estimate or any other aspect of the collection of information, including suggestions for reducing this burden, to U.S. Office of Personnel Management, Reports and Forms Management Officer, Washington, DC 20415-0001.

Send your application to the agency announcing the vacancy.

Tab F #p.18

**J. Martin Shanahan, CPA, Esq.**
**KSA - Investigator 1801-13**

*1. "Knowledge of the laws, regulations and policies of the Department of Labor with regard to enforcement of the provisions of the ERISA or the Knowledge of similarly complex laws such as the Federal securities and commodities laws, tax laws, or banking laws".*

**Education :** I have 51 credit hours at the undergraduate level directly related to ERISA, the Internal Revenue Code and federal regulation of securities, commodities, banking and insurance: Federal Income Tax (3), Finance (3), Money & Banking (3), Micro Economics (3), Macro Economics (3), Corporate Finance (3), Problems in Business Finance (3), Investments (3), Security Analysis (3), Intro Accounting I (3), Intro Accounting II (3), Intermediate Accounting I (3), Intermediate Accounting II (3), Intermediate Accounting III (3), Advanced Accounting (3), Cost Accounting (3) and Auditing (3).

I have over 32 credit hours of legal education directly related to ERISA, the Internal Revenue Code and federal regulation of securities, commodities, banking and insurance or similarly complex laws: Contracts (5), Employment Law (3), Labor Law (3), Federal Income Tax ("Tax Qualifications of Employee Benefit Plans") (4), Federal Criminal Prosecution (2), Criminal Law (3), Criminal Procedure (3), Evidence (4), Trial Advocacy Intensive ("Knowledge of Federal Rules of Evidence for Objections to Inadmissible Evidence") (3), Fiduciary Relations (2).

Most recently, I have earned 25 credit hours of graduate education relating to health care law earned at Harvard University: Federal Health Policy (5), Biostatistics (statistics applied in health care) (5), John F. Kennedy School of Government - Strategic Management of Enforcement and Regulatory Agencies (5), Research Project *"Health Care Fraud Involving Russian Organized Crime"*, Harvard School of Public Health - Epidemiology in Medicine (5).

I have also completed DOL-EBSA Basic Fiduciary Training and DOL-EBSA Criminal Training and additional training at the Federal Law Enforcement Training Center (Health Care Fraud).

**Professional Licenses:** I am a licensed Certified Public Accountant and Attorney-at-Law (Bar Membership includes the Massachusetts Bar and U.S. District Court).

**Recent Professional Publications:** Harvard Health Policy Review, Volume II, Number 1, *"Unfamiliar Regulatory Risks - Are There Lessons to be Learned From the Federal Regulation of Human Cloning Technology?"*.

1

Tab FM p.19



### J. Martin Shanahan, CPA, Esq.
### KSA - Investigator 1801-13

#### Honors and Awards:   

Nichols College Alumni Achievement Award - 2001
Special Service Act Award - DOL-EBSA 2000, 1997 and 1996
Suffolk Law School Dean's List 1997 - 1998
First Year Best Oral Advocate - Suffolk University Law 1996
Nichols College - Commencement - Cum Laude 1991
Colonel Conrad Founder's Award - Commencement Award - Nichols College May 1991
Who's Who Among Students at American Colleges and Universities 1988 - 1991
Zeta Alpha Phi (National Honor Society - Accounting Majors) 1988-1991
Delta Mu Delta (National Honor Society - Business Administration Students) 1988-1991
United States Department of the Treasury Commendation Award - 1990

Experience: At the U.S. Department of Labor-Pension and Welfare Benefits Administration
(EBSA), I conduct civil and criminal investigations involving violations of employee benefit
related laws. Additionally, I have approximately ten (10) years of professional experience which
includes accounting, law and volunteer activities. As such, I have gained a knowledge of the
laws, regulations and policies of the Department of Labor with regard to enforcement of the
provisions of the ERISA and knowledge of similarly complex laws such as the Federal securities
and commodities laws, tax laws, and banking laws.

#### A. Civil Experience:

As an Investigator, I conduct civil investigations which require knowledge of the laws of the
Department of Labor with regard to enforcement provisions of the Employee Retirement Income
Security Act ("ERISA"), Health Insurance Portability and Accountability Act ("HIPAA"),
Consolidated Omnibus Budget Reconciliation Act ("COBRA") and other similarly complex laws
relating to employee benefits.

Accordingly, as an Investigator, I have acquired an in-depth knowledge of the laws of the
Department of Labor while collecting facts and reviewing documents required under ERISA,
COBRA and HIPAA. This requires in-depth working knowledge of complex DOL Regulations,
DOL Opinion Letters, Treasury Regulations and the Internal Revenue Code to determine
violations. Also, I review ERISA required documentation for the particular employee benefit
plan in question (i.e. Plan Document, Summary Plan Descriptions, IRS 5500 Forms, Summary of
Material Modifications and Individual Benefit Statements). Also, I analyze financial data
supplied from Plan Administrators, Trustees, Accountants, Actuaries, Attorney's and participants
such as employment records, tax records, union records and other documents to determine if a
violation of ERISA, COBRA or HIPAA has occurred. I also review FEDS targeting data to
obtain information concerning the nature and type of other employee benefit plans sponsored by
the organization in question. Similarly, I also review the EMS investigative database to

2

Tab F#p.20

**J. Martin Shanahan, CPA, Esq.**
**KSA - Investigator 1801-13**

determine if any other EBSA investigators are reviewing an employee benefit plan sponsored by the organization in question.

Also, as Investigator, I have obtained an in-depth knowledge of bankruptcy laws. I have in-depth experience with legal analysis of Chapter 7 and Chapter 11 Bankruptcy cases and how they interact with the fiduciary protections of ERISA. This issue is important when employer contributions to ERISA protected defined contribution (i.e. 401k, etc.) are not being made in a timely basis. Also, bankruptcy issues often involve other agencies such as the Pension Benefit Guarantee Corporation (PBGC), IRS or U.S. Justice Department Bankruptcy Trustees. This function of my job is important because a company declaring bankruptcy is a warning sign that there may be a fiduciary violation of ERISA. As a result, I frequently address complex issues while conducting investigations involving delinquent contributions to ERISA protected plans and bankruptcy.

As Investigator, I also interview individuals while conducting complex civil investigations. This function requires an in depth knowledge of the laws of the Department of Labor such as ERISA, COBRA and HIPAA along with an extensive working knowledge of complex DOL Regulations, DOL Opinion Letters, Treasury Regulations and the Internal Revenue Code to determine violations. This function required the ability to gage the questions based on the professional expertise of the interviewee. I must collect germane facts and summarize them in the form of a Report of Interview.

I work closely with the Regional Solicitors Office concerning the interpretation of highly complex regulatory material to obtain and enforce DOL administrative subpoenas. In order for a subpoena to be approved, I must prove to RSOL and the Regional Director that a cause of action under ERISA exists and that the subpoena which will be issued can actually be enforced. This further demonstrated my ability to interpret highly complex regulatory material and to summarize facts.

The product of collecting evidence is a written Report of Interview which discusses violations of ERISA or similarly complex laws. I frequently cite violations of DOL Regulations, DOL Opinion Letters, Treasury Regulations and the Internal Revenue Code and court cases and present those memoranda to the Regional Solicitor's Office ("RSOL"), the Regional Director, and Group Supervisor. This function requires the knowledge of the laws of the Department of Labor while interpreting regulations concerning ERISA, COBRA and HIPAA and identification of fiduciary breaches, prohibited transactions, health care fraud and other fraud concerning ERISA protected employee benefit plans.

In some cases, I place the subject of the investigation into Voluntary Compliance to correct the cited violations. This involves preparing a letter citing violations of ERISA, HIPAA, COBRA or other highly complex laws and regulations. In addition, I track the subject to ensure that they

3

*Tab FM p.21*

**J. Martin Shanahan, CPA, Esq.**
**KSA - Investigator 1801-13**

complied with the Department's findings. If the party does not comply with the violations cited
in the Voluntary Compliance letter, then I refer the party to RSOL for litigation.

Accordingly, I work closely with RSOL to provide litigation support, such preparing to depose
witnesses, collecting additional facts and providing financial analysis (e.g. exhibits, spreadsheets
etc.) and negotiating settlement agreements concerning civil investigations. This function
requires knowledge of the laws of the Department of Labor with regard to enforcement
provisions of the ERISA, HIPAA, COBRA and other similarly complex laws. In addition, I have
applied my knowledge of financial accounting and reporting and corporate finance to provide
litigation support to RSOL by preparing a loss worksheet which calculated the present value of
the loss.

Prior to converting to a 1801 Investigator, I was employed for two years as an 1899-7
Investigator (now called a "Pension Benefit Advisor" and hereafter referred to as a "PBA"). This
position required that I contact participants, professionals and plan officials to educate them
concerning the rights and duties required under ERISA, COBRA or HIPAA. For example, one
individual came into our office who had worked for thirty years in the maritime industry but was
repeatedly denied a pension. I researched ERISA Section 206, the American Maritime Officers
Pension Plan Document, and court cases to determine his legal right to a pension. I also
contacted the U.S. Coast Guard, three former employers, and an administrative law judge to
reconstruct his employment history over the past thirty years. As a result, I recovered over
$200,000.00 in pension money for this individual.

As a PBA, I frequently worked with the Internal Revenue Service to resolve disputes involving
employee benefit plans. IRS also has jurisdiction over ERISA (i.e. Tile II of the ERISA), This
function required comparison of complex facts and application to the Internal Revenue Code,
Treasury Regulations, Court Cases, Private Letter Rulings, IRS Technical Advice
Memorandums, etc. For example, in one case a participant contacted EBSA and stated he or she
was wrongfully denied participation in a defined contribution plan (i.e. 401k). Interpretation of
the Average Compensation Percentage (ACP) Test or Average Deferral Percentage (ADP) Test
were important to determine if the rank-and-file employees compared to highly compensated
employees were being discriminated against. Since it appeared there was a violation, I referred
the ease to the IRS.

Also as a PBA I obtained an in-depth knowledge of state insurance laws in EBSA-Boston's
jurisdiction. Frequently, states have adopted laws which are more protective worker's rights than
ERISA minimum standards. For example, under COBRA there is an exemption for small
business with less than twenty employees. On the other hand, in Massachusetts goes beyond the
federal rules and requires employers provide COBRA coverage even when the employer has less
than twenty employees. Massachusetts refers to this as "Mini-Cobra". I frequently succeed in
reinstating former employees health insurance by contacting employers, insurance companies and

4

Tab F¶ p.22



**J. Martin Shanahan, CPA, Esq.**
**KSA - Investigator 1801-13**

the Commonwealth of Massachusetts while interpreting the state law.

I received several Special Service Act Awards concerning my service as a PBA. For example, in 1996, I responded to more inquiries than all the entire customer service staff combined. Moreover, I participated in training full time customer service employees in 1996. Likewise, in 1997, I also led the way in total dollar recoveries at $800,000.00 out of $2.2 million in the customer service function of the Boston Regional Office of EBSA.

Prior to joining EBSA, I had extensive knowledge of the laws of the Department of Labor, such as ERISA and COBRA in the private sector working at a bank, CPA firm and a *Fortune 500* investor owned public utility.   These positions required extensive working knowledge of complex DOL Regulations, DOL Opinion Letters, Treasury Regulations and the Internal Revenue Code to determine violations.

At Flagship Bank & Trust Company, I assisted in their computer system conversion. This position involved analyzing detailed and complex reports involving investment management of ERISA protected assets in the trust department. Also, this function required experience with real estate, real estate investment trusts and property taxation to develop a spreadsheet based tickler file.  Also, I reviewed mortgage and commercial loan portfolio guarantors, sureties and comakers for accuracy and adjusted accounting records as necessary. This position further exemplifies my in-depth knowledge of complex laws such as ERISA.

At McCarthy Hargrave & Co., Certified Public Accountants, I obtained in-depth experience with state banking and securities laws. I updated an audit program and conducted an audit of a credit union which is regulated by Massachusetts General Law 167A. For example, I tested account balances with confirmation letters to other organizations such as ERISA covered employee benefit plans and other major banking customers. Also, I conducted surprise cash counts of several branches of the bank and reconciled those balances with the general ledger and balance sheet. The audit also included compliance with Federal Deposit Insurance Corporation, Federal Reserve and Comptroller of the Currency regulations concerning collective trust funds. These funds are used by small to medium sized ERISA protected employee benefit plans.

At McCarthy, Hargrave & Co., Certified Public Accountants, I also prepared and updated audit programs and conducted audits of manufacturing organizations. These audits included testing the operation of ERISA protected defined contribution 401(k) plans and employer contributions to Taft-Hartley defined benefit pension plans, pursuant to collective bargaining agreements. I also drafted and sent out confirmation letters to financial institutions to confirm account balances and contributions. Also, I tested all other material balances reflected in the balance sheet, income statement and statement of cash flows.

Also at McCarthy, Hargrave & Co., I prepared and updated an audit program and conducted an

5

Tab F H p.23



### J. Martin Shanahan, CPA, Esq.
### KSA - Investigator 1801-13

audit of a major housing authority. This audit included testing the operation of the 403(b) defined contribution pension plan. For example, payroll calculations were re-computed on a test basis. Deductions from payroll were traced to the trial balance and contributions independently confirmed with financial institutions and canceled checks.

This audit was required under the Single Audit Act. This federal law requires an entity which receives $100,000.00 or more from the Federal government to be audited by an independent CPA. This audit examined whether the terms and conditions of receiving money from the U.S. Department of Housing and Urban Development were followed according to the terms of a community block grant.

Also, at McCarthy, Hargrave & Co., I prepared corporate and individual income tax returns. This function required an in-depth knowledge of tax qualified ERISA covered employee benefit plans. I completed tax returns for corporations taking deductions for employer contributions to employee accounts in a tax qualified employee benefit plan. Also, I completed tax returns for former employees and retirees who are receiving taxable pre-retirement distributions and ordinary distributions at retirement age. This position required extensive working knowledge of complex tax regulation such as the Internal Revenue Code, Treasury Regulations, Court Cases, Private Letter Rulings, IRS Technical Advice Memorandums, etc.

Likewise, at New England Electric System, I prepared workpapers and complex reports and schedules quarterly to support the audit conducted by Coopers & Lybrand, an independent auditing firm. For example, I prepared an analysis of the Allowance of Funds Used During Construction ("AFDC"). The AFDC schedule reflects the amount allocated for all employee benefit plans such as the New England Electric Non-Contributory Defined Benefit Pension Plan, New England Electric 401(k) Plan and employer contributions to the International Brotherhood of Electric Workers, Brotherhood of Utility Workers of New England and the Utility Workers Union of America pursuant to collective bargaining agreements. AFDC represents the overhead allocated to major capital construction projects. This schedule reflects $10 to $15 million dollars of expenditures per year in the years 1991, 1992 and 1993.

Also, at New England Electric, I prepared complex reports for the Federal Energy Regulatory Commission (FERC) which further exemplifies an in-depth understanding of complex laws like ERISA. For example, I prepared reports detailing contributions and expenses relating to the New England Electric Non-Contributory Defined Benefit Pension Plan, New England Electric 401(k) Plan and employer contributions to the International Brotherhood of Electric Workers, Brotherhood of Utility Workers of New England and the Utility Workers Union of America pursuant to collective bargaining agreements. I also prepared the "FERC Form 1" to meet compliance with Federal Energy Regulatory Commission Regulations regarding the disclosure of financial information of investor owned utilities. This function involved analysis of information prepared by accounting clerks, reconciling inconsistencies and supplying information according

6

Tab F#/p.24


### J. Martin Shanahan, CPA, Esq.
### KSA - Investigator 1801-13

to Department of Energy Regulations.

Similarly, at New England Electric, I worked closely with the Controller, Assistant Controller and accounting managers to make policy changes to effectuate a reduction in financial accounting and reporting errors. After superior work in my first year as an Accounting Analyst, I was appointed to an upper level management Accounting Quality Team to study and make changes in the accounting department. This position involved complex accounting analysis of electric retail subsidiaries (Massachusetts Electric, Narragansett Electric, Granite State Electric, Nantucket Electric), major transmission subsidiaries (New Hampshire Hyro and New Hampshire Hydro Electric) and all power generating subsidiaries (New England Power Company). This position also involved examination of the accounting system for payroll, and employee benefits such as New England Electric Non contributory Defined Benefit Pension Plan, New England Electric 401(k) Plan and employer contributions to the International Brotherhood of Electric Workers, Brotherhood of Utility Workers of New England and the Utility Workers Union of America. Accordingly, this also involved compliance with U.S. Department of Labor Regulations relative to defined benefit and defined contribution pension plans. We achieved a twenty-five percent (25%) reduction in financial accounting and reporting errors in 1991 and a fifteen percent (15%) reduction in errors for 1992.

At New England Electric, I also prepared a report for the Board of Directors. This function of my job required preparing schedules and cost breakdowns involving major construction projects (e.g. Hyro Quebec Project - $130 million and the Manchester Street Power Station Repowering Project - $460 million). These reports were used for regulatory compliance with the U.S. Department of Labor, Internal Revenue Service, Federal Energy Regulatory Commission and other state regulatory and rule making authorities and further exemplifies my in-depth knowledge of complex laws like ERISA.

At New England Electric, I worked with banking institutions to facilitate wire transfers of funds to a major equipment and construction vendors (i.e. ABB AC, Inc. of Sweden and ABB AG, Inc. of Switzerland). This requires knowledge of banking organizations relative to electronic funds transfers of large sums (over $100k for purchase of electrical generation and transmission equipment).

Also at New England Electric, I established a tickler file on Lotus 1-2-3 and Paradox software to improve the integrity of accounting information. This computer application generated reports used to compute property taxes for one hundred and twenty (120) miles of real estate supporting a transmission line for the Hydro Quebec Project. This function requires extensive working knowledge of real estate law, property valuation methodology, and property taxation.

Similarly, I volunteered for the City of Worcester and was appointed to the City of Worcester Cable Television Advisory Committee. I drafted a ten (10) year multi-million dollar contract

7

Tab F p.25

**J. Martin Shanahan, CPA, Esq.**
**KSA - Investigator 1801-13**

between the City of Worcester and Greater Media Cable covering over 70,000 rate payers. This position required analysis of highly complex legal issues involving regulatory authorities such as the Federal Communication Commission and Massachusetts Cable Television Commission.

While serving on the Committee, I worked with U.S. Senator John Kerry to obtain IRS Taxpayer Advice Memorandum 960626 involving Treasury Regulation 1.501(c)(3) and the tax impact of political activities of a tax exempt 501(c)(3) organization funded through the cable contract. This ruling was of national importance to clarify the law in this area of taxation (please see newspaper article I have attached). The ruling I received from the Regional Director of the Internal Revenue Service was incorporated into the minimum standards between the City and the non profit organization providing public access television.

In business school, I was the first undergraduate student to intern at the United States Department of the Treasury - Financial Management Service. In this position, I worked with accountants from a variety of agencies to establish a standard general ledger for U.S. government agencies. In addition, I assisted in preparing and analyzed financial statements. This position required in-depth knowledge of Generally Accepted Accounting Principles. I was also the first and only intern to receive a Commendation Award from the Commissioner of the Financial Management Service.

B. Criminal Experience:

As an Investigator, I conduct complex criminal investigations concerning service providers (e.g. brokers and consultants), plan fiduciaries and others. This position requires an in-depth knowledge of criminal laws the Department of Labor enforces along with collecting facts and reviewing documents required under ERISA, COBRA and HIPAA.

My criminal cases are complex and require an extensive working knowledge of Title 18 of the U.S. Criminal Code and other highly complex laws, such as the Federal Sentencing Guidelines, Federal Rules of Criminal Procedure and U.S. Constitutional law (e.g. rights of accused, etc.).

My criminal cases have involved conducting interviews with individuals concerning complex criminal violations. I have an extensive working knowledge of complex laws of the Department of Labor, such as Title 18 of the U.S. Criminal Code. This requires in-depth knowledge of the elements of the offense, statute of limitations and Federal Sentencing Guidelines. In addition, I have applied my in-depth knowledge of U.S. Constitutional law when dealing with the accused to protect their rights and the government's case against them.

Moreover, as Lead Investigator on criminal investigations, I have worked with closely with AUSA's to obtain Grand Jury Subpoenas. This requires an in-depth understanding of the law and thorough familiarity with all material facts in order to identify the appropriate documents

Tab F# p.26

## J. Martin Shanahan, CPA, Esq.
### KSA - Investigator 1-01-13

necessary to prove the violation and obtain a Grand Jury Subpoena. This requires the ability to understand the significance of certain documents, required under ERISA, such as the Plan Document, Summary Plan Descriptions, IRS 5500 Forms, Summary of Material Modifications, Individual Benefit Statements or Explanation of Benefits and Stop Loss contracts and supporting documents. Also, I analyze financial data supplied from Plan Administrators, Trustees, Accountants, Actuaries, Attorney's and participants such as employment records, tax records, union records and other documents to assist the AUSA in drafting the Grand Jury Subpoenas.

Moreover, I have been the custodian of Grand Jury materials covered under Federal Rule of Criminal Procedure 6(e). This requires an ability to efficiently organize vast quantities of data based on extensive working knowledge of complex laws of the Department of Labor, such as Title 18 of the U.S. Criminal Code. For example, one of my criminal cases has over eighty (80) boxes obtained by Grand Jury Subpoena. I devised a tickler file in a QuattroPro spreadsheet to easily search for documents flagged during the review process. Each document was assigned an Audit Control Number and a summary of that data was entered into a spreadsheet. This process provided an efficient way to sort, track and analyze Grand Jury materials covered under Federal Rule of Criminal Procedure 6 (e) and further demonstrates my extensive working knowledge of complex laws of the Department of Labor, such as Title 18 of the U.S. Criminal code.

Similarly, I have been the Lead Investigator on criminal investigations and have participated in writing affidavits to obtain search warrants. This required extensive working knowledge of complex laws of the Department of Labor, such as Title 18 of the U.S. Criminal code in order to identify germane facts necessary to prove the violation. For example, I wrote a narrative describing the facts of a two year federal criminal investigation into a service provider being investigated jointly by the FBI an EBSA. This narrative served as a template for the AUSA to write the affidavit.

Additionally, I have been the Lead Investigator on criminal investigations and have executed search warrants on the FBI, which required an extensive working knowledge of complex laws of the Department of Labor, such as Title 18 of the U.S. Criminal Code in order to seize documents, computers and other objects necessary to prove the violation. This function required an in-depth understanding of documents required under ERISA, such as the Plan Document, Summary Plan Descriptions, IRS 5500 Forms, Summary of Material Modifications, Individual Benefit Statements, Explanation of Benefits and Stop Loss contracts and supporting documents for self-funded health plans. In addition, executing search warrants also require an understanding of case law relating to the Fourth, Fifth and Fourteenth Amendments to the U.S. Constitution and other provisions of Title 18 or the U.S. Code.

Accordingly, I have reviewed evidence obtained by search warrant and grand jury subpoena's to identify germane documents to prove the violation. This critical step requires an in-depth knowledge of complex laws of the Department of Labor, such as Title 18 of the U.S. Criminal

9

Tab FFP.27

**J. Martin Shanahan, CPA, Esq.**
**KSA - Investigator 1801-13**

Code, along with the ability to identify and understand significant documents required under ERISA and other similarly complex laws.

As the Lead Investigator, I provide testimony to the grand jury as the summary witness for the U.S. Government. This function requires my ability to present complex issues in a clear and precise manner and gage those presentations to the level of sophistication of the audience. Similarly, I have worked with the AUSA to prepare other witnesses to provide testimony before the grand jury.

I have also prepared written memorandums to AUSA's concerning sentencing and punishment under the Federal Sentencing Guidelines. This requires an extensive working knowledge of complex laws of the Department of Labor, such as the Federal Sentencing Guidelines and Title 18 of the U.S. Criminal Code. For example, I researched the meaning of "Loss" under the guidelines for the AUSA. This involved legal research on case law in the First Circuit, U.S. Supreme Court, law review articles and contacting a clerk at the U.S. Sentencing Commission to make a recommendation based on the Federal Sentencing Guidelines.

Most recently, I have worked with the Commonwealth of Massachusetts, Office of the Attorney General in a criminal investigation. This requires an extensive working knowledge of complex laws of the Department of Labor, such as Massachusetts General Laws Chapter 265 (criminal law) and understanding of the elements of Grand Larceny.

Prior to joining the Department of Labor as an Investigator, I was an Honors Intern at the United States Department of Justice, U.S. Attorney's Office - Economic Crimes Unit. I conducted legal research involving criminal case prosecutions involving ERISA covered employee benefit plans for Assistant United States Attorneys. This position required highly proficient use of Westlaw, Lexis-Nexis, BNA Pension Benefits Reporter or RIA Employee Benefits Expert Database. This position also required the ability to analyze highly complex legal issues relative to criminal prosecutions of ERISA covered employee benefit plans (e.g. theft of ERISA plan assets, kickbacks to ERISA pension plan trustees, materially false statements to the U.S. Department of Labor, etc.).

At the U.S. Attorney's Office, I also participated in meetings with Special Agents from the DOL, FBI, IRS-CID and other federal law enforcement agencies concerned with ERISA protected employee benefit plans. This position required the ability to ascertain relevant facts based on complex legal standards courts have used in federal criminal prosecutions of ERISA covered employee benefit plans. This function also required the ability to gage the level complexity to the appropriate party.

At the U.S. Attorney's Office, I also write memorandums of law regarding criminal case prosecutions involving ERISA covered employee benefit plans. This position required the ability

10

Tab F N p. 28

**J. Martin Shanahan, CPA, Esq.**
**KSA - Investigator 1801-13**

to compare relevant decisions and distinguish irrelevant decisions to arrive at a well reasoned conclusion based on legal analysis of highly complex fact patterns. This function requires an extensive level of knowledge of the Federal Rules of Evidence, Grand Jury Proceedings, and the United States Criminal Code and their application to ERISA covered employee benefit plans.

11

Tab F#p.29

**J. Martin Shanahan, CPA, Esq.**
KSA - Investigator 1801-13

*2. "Sound knowledge of, and extensive background in, the specialized areas of procedures and laws governing investigations, as well as the experience in determining that adequate proof exists of all elements of an alleged violation of law. This must include an in-depth understanding of the entire spectrum of an enforcement action".*

## Education:

I have 51 credit hours at the undergraduate level directly related to knowledge of, and extensive background in, the specialized areas of procedures and laws governing investigations: Federal Income Tax (3), Money & Banking (3), Micro Economics (3), Macro Economics (3), Corporate Finance (3), Problems in Business Finance (3), Investments (3), Security Analysis (3), Intro Accounting I (3), Intro Accounting II (3), Intermediate Accounting I (3), Intermediate Accounting II (3), Intermediate Accounting III (3), Advanced Accounting (3), Cost Accounting (3) and Auditing (3).

I have over 32 credit hours of legal education directly related to knowledge of, and extensive background in, the specialized areas of procedures and laws governing investigations: Contracts (5); Employment Law (3), Labor Law (3), Federal Income Tax ("Tax Qualifications of Employee Benefit Plans") (4); Federal Criminal Prosecution (2), Criminal Law (3), Criminal Procedure (3), Evidence (4), Trial Advocacy Intensive ("Knowledge of Federal Rules of Evidence for Objections to Inadmissible Evidence") (3), Fiduciary Relations (2).

Most recently, I have earned 25 credit hours of graduate education relating to health care law earned at Harvard University: Federal Health Policy (5); Biostatistics (statistics applied in health care) (5); John F. Kennedy School of Government - Strategic Management of Enforcement and Regulatory Agencies (5); Research Project *"Health Care Fraud Involving Russian Organized Crime"*; Harvard School of Public Health - Epidemiology in Medicine (5) .

I have also completed DOL-EBSA Basic Fiduciary and Criminal training and additional training at the Federal Law Enforcement Training Center (Health Care Fraud).

**Professional Licenses:**  I am a licensed Certified Public Accountant and Attorney-at-Law (Bar Membership includes the Massachusetts Bar and U.S. District Court).

**Recent Professional Publications:** Harvard Health Policy Review, Volume II, Number I, *"Unfamiliar Regulatory Risks - Are There Lessons to be Learned From the Federal Regulation of Human Cloning Technology?"*.

12

Tab F/p.30

### J. Martin Shanahan, CPA, Esq.
### KSA - Investigator 1801-13

#### Honors and Awards:

Nichols College Alumni Achievement Award - 2001
Special Service Act Award - DOL-EBSA 2000, 1997 and 1996
Suffolk Law School Dean's List 1997 - 1998
First Year Best Oral Advocate - Suffolk University Law 1996
Nichols College - Commencement - Cum Laude 1991
Colonel Conrad Founder's Award - Commencement Award - Nichols College May 1991
Who's Who Among Students at American Colleges and Universities 1988 - 1991
Zeta Alpha Phi (National Honor Society - Accounting Majors) 1988-1991
Delta Mu Delta (National Honor Society - Business Administration Students) 1988-1991

**Experience:** At the U.S. Department of Labor-Pension and Welfare Benefits Administration (EBSA), I conduct civil and criminal investigations involving violations of employee benefit related laws. Additionally, I have approximately ten (10) years of professional experience which includes accounting, law and volunteer activities. As such, I have gained a sound knowledge of, and extensive background in, the specialized areas of procedures and laws governing investigations, as well as the experience in determining that adequate proof exists of all elements of an alleged violation of law. I have an in-depth understanding of the entire spectrum of an enforcement action.

#### A. Spectrum of Enforcement - Customer Service:

Prior to converting to a 1801 Investigator, I was employed for two years as an 1899-7 Investigator (now called a "Pension Benefit Advisor" and hereafter referred to as a "PBA"). This position required that I contact participants, professionals and plan officials to educate them concerning the rights and duties required under ERISA, COBRA or HIPAA.

Frequently, I was able to solve problems without referring the inquiry for investigation. For example, one individual came into our office who had worked for thirty years in the maritime industry but was repeatedly denied a pension. I researched ERISA Section 206, the American Maritime Officers Pension Plan Document, and court cases to determine his legal right to a pension. I also contacted the U.S. Coast Guard, three former employers, and an administrative law judge to reconstruct his employment history over the past thirty years. As a result, I recovered over $200,000.00 in pension money for this individual.

Sometimes, however, I would refer the inquiry for a full investigation. Prior to this action, I would interview the inquirer to determine EBSA jurisdiction, question whether or not there was a violation, question the date of the activity (statute of limitations) and analyze whether or not sufficient evidence exist to prove the case. If the inquiry appeared to be viable case, I would refer that inquiry for a full EBSA investigation.

13

Tab F ¶ p.31

**J. Martin Shanahan, CPA, Esq.**
**KSA - Investigator 1801-13**

Also as a PBA I obtained an in-depth knowledge of state insurance laws in EBSA-Boston's jurisdiction. Frequently, states have adopted laws which are more protective worker's rights than EdSA minimum standards. For example, under COBRA there is an exemption for small business with less than twenty employees. On the other hand, in Massachusetts goes beyond the federal rules and requires employers provide COBRA coverage even when the employer has less than twenty employees. Massachusetts refers to this as "Mini-Cobra". I frequently succeed in reinstating former employees health insurance by contacting employers, insurance companies and the Commonwealth of Massachusetts while interpreting the state law.

I received several Special Service Act Awards concerning my service as a PBA. For example, in 1996, I responded to more inquiries that all the entire customer service staff combined. Moreover, I participated in training full time customer service employee in 1996. Likewise, in 1997, I also led the way in total dollar recoveries at $800,000.00 out of $2.2 million in the customer service function of the Boston Regional Office of EBSA.

My work as a PBA demonstrates my sound knowledge of, and extensive background in, the specialized areas of procedures and laws governing investigations, as well as the experience in determining that adequate proof exists of all elements of an alleged violation of law. My experience as a PBA has contributed to my in-depth understanding of the entire spectrum of an enforcement action.

B. Spectrum of Enforcement Action - Investigator Experience (Civil Investigations):

As an Investigator, I conduct civil investigations which require knowledge of the laws of the Department of Labor with regard to enforcement provisions of the Employee Retirement Income Security Act ("ERISA"), Health Insurance Portability and Accountability Act ("HIPAA"), Consolidated Omnibus Budget Reconciliation Act ("COBRA") and other similarly complex laws relating to employee benefits.

Accordingly, as an Investigator, I have acquired an in-depth knowledge of the laws of the Department of Labor while collecting facts and reviewing documents required under ERISA, COBRA and HIPAA. This requires in-depth working knowledge of complex DOL Regulations, DOL Opinion Letters, Treasury Regulations and the Internal Revenue Code to determine violations. Also, I review ERISA required documentation for the particular employee benefit plan in question (i.e. Plan Document, Summary Plan Descriptions, IRS 5500 Forms, Summary of Material Modifications and Individual Benefit Statements). Also, I analyze financial data supplied from Plan Administrators, Trustees, Accountants, Actuaries, Attorney's and participants such as employment records, tax records, union records and other documents to determine if a violation of ERISA, COBRA or HIPAA has occurred. I also review FEDS targeting data to obtain information concerning the nature and type of other employee benefit plans sponsored by the organization in question. Similarly, I also review the EMS investigative database to

14

Tab F/p.32

**J. Martin Shanahan, CPA, Esq.**
**KSA - In estigator 1801-13**

determine if any other EBSA investigators are reviewing an employee benefit plan sponsored by the organization in question.

Also, as Investigator, I have obtained an in-depth knowledge of bankruptcy laws. I have experience with legal analysis of Chapter 7 and Chapter 11 Bankruptcy cases and how the interact with the fiduciary protections of ERISA. This issue is important when employer contributions to ERISA protected defined contribution (i.e. 401k, etc.) are not being made in a timely basis. Also, bankruptcy issues often involve other agencies such as the Pension Benefit Guarantee Corporation (PBGC), IRS or U.S. Justice Department Bankruptcy Trustees. This function of my job is important because a company declaring bankruptcy is a warning sign that there may be a fiduciary violation of ERISA. As a result, I frequently address complex issues while conducting investigations involving delinquent contributions to ERISA protected plans and bankruptcy.

As Investigator, I also interview individuals while conducting complex civil investigations. This function requires an in depth knowledge of the laws of the Department of Labor such as ERISA, COBRA and HIPAA along with an extensive working knowledge of complex DOL Regulations, DOL Opinion Letters, Treasury Regulations and the Internal Revenue Code to determine violations. This function required the ability to gage the questions based on the professional expertise of the interviewee. I must collect germane facts and summarize them in the form of a Report of Interview.

I work closely with the Regional Solicitors Office concerning the interpretation of highly complex regulatory material to obtain and enforce DOL administrative subpoenas. In order for a subpoena to be approved, I must prove to RSOL and the Regional Director that a cause of action under ERISA exists and that the subpoena which will be issued can actually be enforced. This further demonstrated my ability to interpret highly complex regulatory material and to summarize facts

Ultimately, I interpret highly complex regulatory material to write memorandums of law concerning facts collected and violations of ERISA or similarly complex laws. I frequently write Reports which cite violations of DOL Regulations, DOL Opinion Letters, Treasury Regulations and the Internal Revenue Code and court cases and present those memoranda to the Regional Solicitor's Office ("RSOL"), the Regional Director, and Group Supervisor. This function requires the knowledge of the laws of the Department of Labor while interpreting regulations concerning ERISA, COBRA and HIPAA and identification of fiduciary breaches, prohibited transactions, health care fraud and other fraud concerning ERISA protected employee benefit plans.

In some cases, I place the subject of the investigation into Voluntary Compliance to correct the cited violation. This involves preparing a letter citing violations of ERISA, HIPAA, COBRA or

15

Tab F ## p.33



**J. Martin Shanahan, CPA, Esq.**
**KSA - Investigator 1801-13**

other highly complex laws and regulations. In addition, I track the subject to ensure that they complied with the Departments findings. If the party does not comply with the violations cited in the Voluntary Compliance letter, then I refer the party to RSOL for litigation.

My work conducting civil investigations demonstrates my sound knowledge of, and extensive background in, the specialized areas of procedures and laws governing investigations, as well as the experience in determining that adequate proof exists of all elements of an alleged violation of law. My experience conducting civil investigations has contributed to my in-depth understanding of the entire spectrum of an enforcement action.

C. Spectrum of Enforcement Action - Civil Litigation:

Accordingly, I work closely with RSOL to provide litigation support, such as preparing to depose witnesses, collecting additional facts and providing financial analysis (e.g. exhibits, spreadsheets etc.) and negotiating settlement agreements concerning civil investigations. These require knowledge of the laws of the Department of Labor with regard to enforcement provisions of the ERISA, HIPAA, COBRA and other similarly complex laws relating to employee benefits.

In addition, I have applied my knowledge of financial accounting and reporting, corporate finance and the time value of money to calculate the amount owed to a plan, participants or the U.S. government under ERISA Section 502(l). For example, I have assisted RSOL and other EBSA investigators by preparing a loss worksheet which calculated the present value of the loss to the Plan based on a variety of interest rates. This 30-page spreadsheet was integral to negotiate a multi-million dollar settlement agreement with RSOL.

I conducted several investigative depositions with fiduciaries of employee benefits plans under investigation. This process involved working with RSOL to enforce subpoenas to compel sworn testimony at the U.S. Department of Labor. Conducting civil deposition requires an in depth understanding of the Federal Rules of Civil Procedure and oral advocacy skills. Three cases have been be referred to RSOL for further legal action.

In addition to conducting investigative depositions, my experience in civil litigation demonstrates my sound knowledge of, and extensive background in, the specialized areas of procedures and laws governing investigations, as well as the experience in determining that adequate proof exists of all elements of an alleged violation of law. My experience in civil litigation support has also contributed to my in-depth understanding of the entire spectrum of an enforcement action.

D. Spectrum of Enforcement Action: Criminal Investigative Experience:

As an Investigator, I conduct complex criminal investigations concerning service providers (e.g. brokers and consultants), plan fiduciaries and others. This position requires an in-depth

16

Tab F■/p.34

**J. Martin Shanahan, CPA, Esq.**
KSA - Investigator 1801-13

knowledge of criminal laws the Department of Labor enforces along with collecting facts and reviewing documents required under ERISA, COBRA and HIPAA.

My criminal cases are complex and require an extensive working knowledge Title 18 of the U.S. Criminal Code and other highly complex laws, such as the Federal Sentencing Guidelines, Federal Rules of Criminal Procedure and U.S. Constitutional law (e.g. rights of accused, etc.).

My criminal cases have involved conducting interviews with individuals concerning complex criminal violations. I have an extensive working knowledge of complex laws of the Department of Labor, such as Title 18 of the U.S. Criminal Code. This requires in-depth knowledge of the elements of the offense, statute of limitations and punishment. In addition, I have applied my in-depth knowledge of U.S. Constitutional law when dealing with the accused to protect their rights and the government's case against them. For example, as Lead Investigator, I conducted interviews immediately following the execution of a search warrant. Working with an AUSA, I protected the government's case and the rights of the accused. This demonstrates my extensive understanding of complex case law relating to the Fourth, Fifth and Fourteenth Amendments to the U.S. Constitution.

Moreover, as Lead Investigator on criminal investigations, I have worked closely with AUSA's to obtain Grand Jury Subpoenas. This requires an in-depth understanding of the law and thorough familiarity with all material facts in order to identify the appropriate documents necessary to prove the violation and obtain a Grand Jury Subpoena. This requires the ability to understand the significance of certain documents, required under ERISA, such as the Plan Document, Summary Plan Descriptions, IRS 5500 Forms, Summary of Material Modifications, Individual Benefit Statements or Explanation of Benefits and Stop Loss contracts and supporting documents. Also, I analyze financial data supplied from Plan Administrators, Trustees, Accountants, Actuaries, Attorney's and participants such as employment records, tax records, union records and other documents to assist the AUSA in drafting the Grand Jury Subpoenas.

Moreover, I have been the custodian of Grand Jury materials covered under Federal Rule of Criminal Procedure 6(e). This requires an ability to efficiently organize vast quantities of data based on extensive working knowledge of complex laws of the Department of Labor, such as Title 18 of the U.S. Criminal code. For example, one of my criminal cases has over eighty boxes obtained by Grand Jury Subpoena. I devised a tickler file in a QuattroPro spreadsheet to easily search for documents flagged during the review process. Each document was assigned an Audit Control Number and a summary of that data was entered into the spreadsheet. This process provided an efficient way to sort, track and analyze Grand Jury materials covered under Federal Rule of Criminal Procedure 6 (e) and further demonstrates my extensive working knowledge of complex laws of the Department of Labor, such as Title 18 of the U.S. Criminal code.

Similarly, I have been the Lead Investigator on criminal investigations and have participated in

17

Tab F¼ p.35

**J. Martin Shanahan, CPA, Esq.**
**KSA - Investigator 1801-13**

writing affidavits to obtain search warrants. This required extensive working knowledge of complex laws of the Department of Labor, such as Title 18 of the U.S. Criminal code in order to identify germane facts necessary to prove the violation. For example, I wrote a narrative describing the facts of a two year federal criminal investigation into a service provider being investigated jointly by the FBI an EBSA. This narrative served as a template for the AUSA to write the affidavit.

Additionally, I have been the Lead Investigator on criminal investigations and have executed search warrants with the FBI, which required an extensive working knowledge of complex laws of the Department of Labor, such as Title 18 of the U.S. Criminal Code in order to seize documents computers and other objects necessary to prove the violation This function required an in-depth understanding of documents required under ERISA, such as the Plan Document, Summary Plan Descriptions, IRS 5500 Forms, Summary of Material Modifications, Individual Benefit Statements, Explanation of Benefits and Stop Loss contracts and supporting documents for self-funded health plans. In addition, executing search warrants also require an understanding of case law relating to the Fourth, Fifth and Fourteenth Amendments to the U.S. Constitution and other provisions of Title 18 or the U.S. Code.

Accordingly, I have reviewed evidence obtained by search warrant and grand jury subpoena's to identify germane documents to prove the violation. This critical step requires an extensive working knowledge of complex laws of the Department of Labor, such as Title 18 of the U.S. Criminal Code, along with the ability to identify and understand significant documents required under ERISA and other similarly complex laws.

As the Lead Investigator, I provide testimony to the grand jury as the summary witness for the U.S. Government. This function requires my ability to present complex issues in a clear and precise manner and gage those presentations to the level of sophistication of the audience. Similarly, I have worked with the AUSA to prepare other witnesses to provide testimony before the grand jury.

I have also made recommendations to AUSA's concerning sentencing and punishment under the Federal Sentencing Guidelines. This requires an extensive working knowledge of complex laws of the Department of Labor, such as the Federal Sentencing Guidelines and Title 18 of the U.S. Criminal Code. For example, I researched the meaning of "Loss" under the guidelines for the AUSA. This involved legal research on case law in the First Circuit, U.S. Supreme Court, law review articles and contacting a clerk at the U.S. Sentencing Commission to make a recommendation on a sentence.

Most recently, I have worked with the Commonwealth of Massachusetts, Office of the Attorney General in a criminal investigation. This requires an extensive working knowledge of complex laws of the Department of Labor, such as Massachusetts General Laws Chapter 265 (criminal

Tab F4/p.36



## J. Martin Shanahan, CPA, Esq.
### KSA - Investigator 1801-13

law) and understanding of the elements of Grand Larceny.

My experience in conduction criminal investigations demonstrates my sound knowledge of, and extensive background in, the specialized areas of procedures and laws governing investigations, as well as the experience in determining that adequate proof exists of all elements of an alleged violation of law. My experience conducting criminal investigations has also contributed to my in-depth understanding of the entire spectrum of an enforcement action.

E. Federal Criminal Prosecutorial Experience:

Prior to joining the Department of Labor as an Investigator, I was an Honors Intern at the United States Department of Justice, U.S. Attorney's Office - Economic Crimes Unit. I conducted legal research involving criminal case prosecutions involving ERISA covered employee benefit plans for Assistant United States Attorneys. This position required highly proficient use of Westlaw, Lexis-Nexis, BNA Pension Benefits Reporter or RIA Employee Benefits Expert Database. This position also required the ability to analyze highly complex legal issues relative to criminal prosecutions of ERISA covered employee benefit plans (e.g. theft of ERISA plan assets, kickbacks to ERISA pension plan trustees, materially false statements to the U.S. Department of Labor, etc.).

At the U.S. Attorney's Office, I also participated in meetings with Special Agents from the DOL, FBI, IRS-CID and other federal law enforcement agencies concerned with ERISA protected employee benefit plans. This position required the ability to ascertain relevant facts based on complex legal standards courts have used in federal criminal prosecutions of ERISA covered employee benefit plans. This function also required the ability to gage the level of complexity to the appropriate party.

At the U.S. Attorney's Office, I also wrote memorandums of law regarding criminal case prosecutions involving ERISA covered employee benefit plans. This position required the ability to compare relevant decisions and distinguish irrelevant decisions to arrive at a well reasoned conclusion based on legal analysis of highly complex fact patterns. This function requires an extensive level of knowledge of the Federal Rules of Evidence, Grand Jury Proceedings, and the United States Criminal Code and their application to ERISA covered employee benefit plans.

My experience in federal criminal prosecution demonstrates my sound knowledge of, and extensive background in, the specialized areas of procedures and laws governing investigations, as well as the experience in determining that adequate proof exists of all elements of an alleged violation of law. My experience in federal criminal prosecution has also contributed to my in-depth understanding of the entire spectrum of an enforcement action.

19

Tab F M p.37



**J. Martin Shanahan, CPA, Esq.**
**KSA - Investigator 1801-13**

F. Supervisory Experience at EBSA:

I was able to direct staff and motivate others as a Team Leader while being a Mentor and Acting Group Supervisor at EBSA. I have served as a mentor at EBSA for a new investigator. This involved answering a variety of questions from career advice and technical questions about ERISA, to questions involving living and working in Boston. As the Acting Group Supervisor, I reviewed cases and supervised a staff of eight professionals. An example, of how I motivated the staff included working with an investigator to expeditiously process a $55 million dollar recovery.

My supervisory experience at EBSA demonstrates my sound knowledge of, and extensive background in, the specialized areas of procedures and laws governing investigations, as well as the experience in determining that adequate proof exists of all elements of an alleged violation of law. My supervisory experience at EBSA has also contributed to my in-depth understanding of the entire spectrum of an enforcement action.

20

Tab F p. 38



J. Martin Shanahan, CPA, Esq.
KSA - Investigator 1801-13

### 3. *"Ability to Motivate Staff and Direct Activities as a Team Leader"*:

**Education :** I have earned several credits relating to oral advocacy which have indirectly helped me motivate staff and direct activities as a team leader. I have 6 credits related to conducting interviews, making presentations and orally conveying information at Nichols College: Washington Seminar Paper & Presentation (3) , Effective Speaking (3);

I also have 11 credit hours directly relating to conducting interviews, making presentations and orally conveying information at Suffolk Law School: Legal Practice Skills (3), Trial Advocacy Intensive (3), Prosecutors Internship Class (5).

In addition, I was the leader of a debate team at the John F. Kennedy School of Government. The debate topic was "For Regulators, Law is a Tool, not the Master". My team was in opposition to the premise that regulators were not required to follow the rule of law. Topics such as U.S. Constitutional Law, Non-Delegation and Ultra Vires Doctrine, and the Administrative Procedure Act were explored.

**Experience:** At the U.S. Department of Labor-Pension and Welfare Benefits Administration (EBSA), I conduct civil and criminal investigations involving violations of employee benefit related laws. Additionally, I have approximately ten (10) years of professional experience which includes accounting, law and volunteer activities. As such, I have gained an ability to motivate staff and direct activities as a Team Leader.

As the Lead Investigator on a complex criminal case, I motivated staff and directed activities as a Team Leader when executing search warrants with the FBI. This required my ability to direct a Team of Special Agents and EBSA Investigators in surveillance of the premises to be searched and to develop a search plan. On the day of the searches, I further directed the Special Agents and EBSA Investigators to seize certain items specified in search warrants.

My Regional Project on Nursing Homes and Home Health Agencies demonstrates my ability to motivate staff and direct the activities of others as a Team Leader. I have worked with other EBSA investigators and Special Agents from the U.S. Department of Health and Human Services, Office of Inspector General ("HHS-OIG")to target health care fraud in New England. This project required my ability to convince the Special Agent in Charge of the Boston Field Office to share information which would be used to target violators in New England. This was the first project of its kind in New England. Several multi-million dollar investigations are ongoing as a result of this project.

Similarly, I was able to direct staff and motivate others as Team Leader while working with the New York Regional Office. After identifying a "Boiler-Room Operation" in operation on Long

21

*Tab F ¾ p. 39*

**J. Martin Shanahan, CPA, Esq.**
**KSA - Investigator 1801-13**

Island, New York, I worked with the Regional Director and a EBSA Investigator of the New York Regional Office to subpoena documents to identify similar pension plans that have been victimized by the "Boiler-Room Operation".

I was also able to direct staff and motivate others as a Team Leader while being a Mentor and Acting Group Supervisor at EBSA. I have served as a mentor at EBSA for a new investigator. This involved answering a variety of questions from career advice and technical questions about ERISA, to questions involving living and working in Boston. As the Acting Group Supervisor, I reviewed cases and supervised a staff of eight professionals. An example, of how I motivated the staff included working with an investigator to expeditiously process a $55 million dollar recovery.

I was a Team Leader when I served as a Mentor in the Worcester Public Schools at the Accelerated Learning Laboratory. I used my personal experience to educate at-risk youth on the link between higher education and prosperity and alternatives to violence. I helped with home work, answered questions on college admissions, the SAT and provided guidance on how to become an attorney. I found this experience rewarding and continue to volunteer. To that end, my role as Mentor had strengthened my leadership skills.

Similarly, I set-up a discussion on Health Care in the United States for students at Worcester's North High. This school offers a program for students who wish to pursue careers in Health Care. Many of the North High students participating in this program aspire to be physicians and administrators.

Another volunteer activity which demonstrates my ability to motivate others as a Team Leader when I was Chairman of the Legal and Regulatory Subcommittee of the City of Worcester Cable Television Committee. I utilized my motivational skills to build a consensus on a ten (10) year multi-million dollar contract between the City of Worcester and Greater Media Cable, covering over 70,000 rate payers.

I demonstrated the ability to direct and motivate Committee members when determining contract provisions concerning limitations on the use of a Cable Television Access Station by political candidates. This issue was hotly disputed and sharply divided the Committee. Ultimately, I worked with U.S. Senator John Kerry to obtain IRS Taxpayer Advice Memorandum 960626 involving Treasury Regulation 1.501(c)(3) and the tax impact of political activities of a tax exempt 501(c)(3) organization funded through the cable contract. This ruling was of national importance to clarify the law in this area of taxation (please see newspaper article I have attached). The ruling I received from the Regional Director of the Internal Revenue Service was incorporated into the minimum standards between the City and the non profit organization providing public access television.

22

Tab F#4 p. 40



**J. Martin Shanahan, CPA, Esq.**
**KSA - Investigator 1801-13**

As a professional accountant, I also motivated others a Team Leader at New England Electric, when I worked closely with the Controller, Assistant Controller and accounting managers to make policy changes to effectuate a reduction in financial accounting and reporting errors. After superior work in my first year as an Accounting Analyst, I was appointed to an upper level management Accounting Quality Team to study and make changes in the accounting department. Working as a Team, we achieved a twenty-five percent (25%) reduction in financial accounting and reporting errors in 1991 and a fifteen percent (15%) reduction in errors for 1992.

Tab FM p.41

J. Martin Shanahan, CPA, Esq.
KSA - Investigator 1801-13

*4. "Ability to Coordinate Investigations of Difficult Factual and Legal Matters"*:

Education:

I have 51 credit hours at the undergraduate level related to coordinating investigations of difficult factual and legal matters:   Federal Income Tax (3), Finance (3), Money & Banking (3), Micro Economics (3), Macro Economics (3), Corporate Finance (3), Problems in Business Finance (3), Investments (3), Security Analysis (3), Intro Accounting I (3), Intro Accounting II (3), Intermediate Accounting I (3), Intermediate Accounting II (3), Intermediate Accounting III (3), Advanced Accounting (3), Cost Accounting (3) and Auditing (3).

I have over 32 credit hours of legal education related to coordinating investigations of difficult factual and legal matters:   Contracts (5); Employment Law (3), Labor Law (3), Federal Income Tax ("Tax Qualifications of Employee Benefit Plans") (4); Federal Criminal Prosecution (2), Criminal Law (3), Criminal Procedure (3), Evidence (4), Trial Advocacy Intensive ("Knowledge of Federal Rules of Evidence for Objections to Inadmissible Evidence") (3), Fiduciary Relations (2).

Most recently, I have earned 25 credit hours of graduate education relating to health care law earned at Harvard University: Federal Health Policy (5); Biostatistics (statistics applied in health care) (5); John F. Kennedy School of Government - Strategic Management of Enforcement and Regulatory Agencies (5); Research Project "*Health Care Fraud Involving Russian Organized Crime*"; Harvard School of Public Health - Epidemiology in Medicine (5).

I have also completed DOL-EBSA Basic Fiduciary and Criminal training and additional training at the Federal Law Enforcement Training Center (Health Care Fraud).

Professional Licenses:   I am a licensed Certified Public Accountant and Attorney-at-Law (Bar Membership includes the Massachusetts Bar and U.S. District Court).

Recent Professional Publications: Harvard Health Policy Review, Volume II, Number 1, "*Unfamiliar Regulatory Risks - Are There Lessons to be Learned From the Federal Regulation of Human Cloning Technology?*".

24

Tab FM p.42

### J. Martin Shanahan, CPA, Esq.
### KSA - Investigator 1801-13

Honors and Awards:

Nichols College Alumni Achievement Award - 2001
Special Service Act Award - DOL-EBSA 2000, 1997 and 1996
Suffolk Law School Dean's List 1997 - 1998
First Year Best Oral Advocate - Suffolk University Law 1996
Nichols College - Commencement - Cum Laude 1991
Colonel Conrad Founder's Award - Commencement Award - Nichols College May 1991
Who's Who Among Students at American Colleges and Universities 1988 - 1991
Zeta Alpha Phi (National Honor Society - Accounting Majors) 1988-1991
Delta Mu Delta (National Honor Society - Business Administration Students) 1988-1991

**Experience:** At the U.S. Department of Labor-Pension and Welfare Benefits Administration (EBSA), I conduct civil and criminal investigations involving violations of employee benefit related laws. Additionally, I have approximately ten (10) years of professional experience which includes accounting, law and volunteer activities. As such, I have gained an ability to coordinate investigations of difficult factual and legal matters.

### A. Civil Investigations:

Similarly, I was able to coordinate investigations of difficult factual and legal matters while conducting a civil investigation with the New York Regional Office. After identifying a "Boiler-Room Operation" in operating on Long Island, New York, I worked with the Regional Director and a EBSA Investigator of the New York Regional Office to subpoena documents to identify similar pension plans that have been victimized by the "Boiler-Room Operation". This investigation required my ability to convince the New York Regional Office to cooperate and share information to the end of targeting other pension benefit plans which have been victimized by the "Boiler-Room Operation".

Also, as Investigator, I have obtained an in-depth knowledge of bankruptcy laws and further demonstrated my ability to coordinate investigations of difficult factual and legal matters. I examined Chapter 7 and Chapter 11 Bankruptcy cases and how they relate to the fiduciary protections of ERISA. The is important when employer contributions to ERISA protected defined contribution (i.e. 401k, etc.) are not being made in a timely basis. Also, bankruptcy issues often involve other agencies such as the Pension Benefit Guarantee Corporation (PBGC), IRS or U.S. Justice Department Bankruptcy Trustees. This function of my job is important because a company declaring bankruptcy is a warning sign that there may be a fiduciary violation of ERISA. As a result, I frequently make case referrals based on delinquent contributions to ERISA protected plans and bankruptcy.

25



**J. Martin Shanahan, CPA, Esq.**
**KSA - Investigator 1801-13**

B. Civil Litigation:

I work closely with RSOL to provide litigations support and in doing so, demonstrated my ability to coordinate investigations of difficult factual and legal matters. For instance, I depose witnesses, collecting additional facts and providing financial analysis (e.g. exhibits, spreadsheets etc.) and negotiating settlement agreements concerning civil investigations. These require knowledge of the laws of the Department of Labor with regard to enforcement provisions of the ERISA, HIPAA, COBRA and other similarly complex laws relating to employee benefits.

I conducted several investigative depositions with fiduciaries of employee benefits plans under investigation. This process involved working with RSOL to enforce subpoenas to compel sworn testimony at the U.S. Department of Labor. Conducting civil deposition requires an in depth understanding of the Federal Rules of Civil Procedure and oral advocacy skills. Three cases have been be referred to RSOL for further legal action.

In addition to conducting investigative depositions, I have applied my knowledge of financial accounting and reporting, corporate finance and the time value of money to calculate the amount owed to a plan, participants or the U.S. government under ERISA Section 502(l). For example, I have assisted RSOL and other EBSA investigators by preparing a loss worksheet which calculated the present value of the loss to the Plan based on a variety of interest rates. This 30-page spreadsheet was integral to negotiate a multi-million dollar settlement agreement with RSOL.

C. Criminal Investigative Experience:

As an Investigator, I conduct complex criminal investigations concerning service providers (e.g. brokers and consultants), plan fiduciaries and others. This position requires an ability to work with a variety of law enforcement agencies such as the U.S. Attorney's Office, FBI, OIG and state police. By conducting complex criminal investigations with other agencies, I demonstrate my ability to coordinate investigations of difficult factual and legal matters

My criminal cases have involved conducting interviews with the U.S. Attorney, FBI and others. For example, as Lead Investigator, I conducted interviews immediately following the execution of a search warrant working with FBI Special Agents.

Moreover, as Lead Investigator on criminal investigations, I have worked closely with AUSA's to obtain Grand Jury Subpoenas. This requires an in-depth understanding of the law and an ability to coordinate investigations of difficult factual and legal matters.

Similarly, as Lead Investigator on criminal investigations and have participated in writing affidavits to obtain search warrants. This required an ability to summarize material facts, while

26

Tab F# p.44

## J. Martin Shanahan, CPA, Esq.
### KSA - Investigator 1801-13

working with the FBI and U.S. Attorney. For example, I wrote a narrative describing the facts of a two year federal criminal investigation into a service provider being investigated jointly by the FBI an EBSA. This narrative served as a template for the AUSA to write the affidavit.

Additionally, I have been the Lead Investigator on criminal investigations and have executed search warrants with the FBI, which required an ability to coordinate investigations of difficult factual and legal matters in order to seize documents, computers and other objects necessary to prove the violation.

As the Lead Investigator, I provide testimony to the grand jury as the summary witness for the U.S. Government. This function requires my ability to present complex issues in a clear and precise manner and gage those presentations to the level of sophistication of the audience. Similarly, I have worked with the AUSA to prepare other witnesses to provide testimony before the grand jury.

Moreover, I have also worked with the FBI and U.S. Attorney to make recommendations concerning sentencing and punishment under the Federal Sentencing Guidelines and in doing so further demonstrate my ability to coordinate investigations of difficult factual and legal matters. For example, I researched the meaning of "Loss" under the guidelines for the AUSA. This involved legal research on case law in the First Circuit, U.S. Supreme Court, law review articles and contacting a clerk at the U.S. Sentencing Commission to make a recommendation on a sentence.

Most recently, I have worked with the Commonwealth of Massachusetts, Office of the Attorney General in a criminal investigation. This requires an extensive working knowledge of complex laws of the Department of Labor, such as Massachusetts General Laws Chapter 265 (criminal law) and understanding of the elements of Grand Larceny.

### D. Federal Criminal Prosecutorial Experience:

Prior to joining the Department of Labor as an Investigator, I was an Honors Intern at the United States Department of Justice, U.S. Attorney's Office - Economic Crimes Unit. I conducted legal research involving criminal case prosecutions involving ERISA covered employee benefit plans for Assistant United States Attorneys. This position required the ability to coordinate investigations of difficult factual and legal matters. For example, at the U.S. Attorney's Office, I participated in meetings with Special Agents from the DOL, FBI, IRS-CID and other federal law enforcement agencies concerned with ERISA protected employee benefit plans. This position required the ability to ascertain relevant facts based on complex legal standards courts have used in federal criminal prosecutions of ERISA covered employee benefit plans. This function also required the ability to gage the level complexity to the appropriate party.

27

Tab F pp. 45

**J. Martin Shanahan, CPA, Esq.**
**KSA – Investigator 1801-13**

At the U.S. Attorney's Office, I also wrote memorandums of law regarding criminal case prosecutions involving ERISA covered employee benefit plans and in doing so demonstrated my ability to coordinate investigations of difficult factual and legal matters. This position required the ability to compare relevant decisions and distinguish irrelevant decisions to arrive at a well reasoned conclusion based on legal analysis of highly complex fact patterns. This function requires an extensive level of knowledge of the Federal Rules of Evidence, Grand Jury Proceedings, and the United States Criminal Code and their application to ERISA covered employee benefit plans.

My Regional Project on Nursing Homes and Home Health Agencies also demonstrates my ability to coordinate investigations of difficult factual and legal matters. I have worked with other EBSA investigators and Special Agents from the U.S. Department of Health and Human Services, Office of Inspector General ("HHS-OIG")to target health care fraud in New England. This project required my ability to convince the Special Agent in Charge of the Boston Field Office to share information which would be used to target violators in New England. This project was the first time HHS-OIG shared information with EBSA. After I convinced the Special Agent in Charge, I briefed the Special Agents which were assigned to assist me in the project. After being briefed, a team of EBSA Investigators and HHS-OIG Special Agents went to the HCFA Fiscal Intermediary to target fraudulent cost reports. Several multi-million dollar investigations are ongoing as a result of this project.

28

Tab FM p. 46

**J. Martin Shanahan, CPA, Esq.**
**KSA - Investigator 1801-13**

### 5. "Ability to communicate effectively both orally and in writing":

**Education- Oral Communication:** I have 6 credits directly related to conducting interviews, making presentations and orally conveying information at Nichols College: Washing Seminar Paper & Presentation (3) , Effective Speaking (3);

I also have 11 credit hours directly relating to conducting interviews, making presentations and orally conveying information at Suffolk Law School: Legal Practice Skills (3), Trial Advocacy Intensive (3), Prosecutors Internship Class (5)

I also have 10 Credit Hours indirectly related to effectively communicating orally and in writing at Harvard University: John F. Kennedy School of Government - Strategic Management for Enforcement Agencies (5); John F. Kennedy School of Government - Non-State Threats to International Security (5) (both classes require presentations using Powerpoint to communicate complex subjects).

JFK School of Government Debate "Law is a Tool not the master"

**Education - Written Comminication:** I have 9 credits directly related to writing clearly and concisely at Nichols College: Washington Seminar Paper & Presentation (3), Composition & Literature (6).

I also have 6 credit hours directly related to writing clearly and concisely at Suffolk Law School: Legal Practice Skills (3), Wills (3). Also, please note that nearly every law school course is graded on a three hour final exam which requires clear, concise legal analysis leading to a well reasoned conclusions.

### Honors and Awards:

Nichols College Alumni Achievement Award - 2001
Special Service Act Award - DOL-EBSA 2000, 1997 and 1996
Suffolk Law School Dean's List 1997 - 1998
First Year Best Oral Advocate - Suffolk University Law 1996
Nichols College - Commencement - Cum Laude 1991
Colonel Conrad Founder's Award - Commencement Award - Nichols College May 1991
Who's Who Among Students at American Colleges and Universities 1988 - 1991
Zeta Alpha Phi (National Honor Society - Accounting Majors) 1988-1991
Delta Mu Delta (National Honor Society - Business Administration Students) 1988-1991

Tab FM p.47



**J. Martin Shanahan, CPA, Esq.**
**KSA - Investigator 1801-13**

**Experience - Oral Communication:** At the U.S. Department of Labor-Pension and Welfare
Benefits Administration (EBSA), I conduct civil and criminal investigations involving violations
of employee benefit related laws. Additionally, I have approximately ten (10) years of
professional experience which includes accounting, law and volunteer activities. As such, I have
gained an ability to communicate effectively both orally and in writing.

As Investigator, I also interview individuals while conducting complex civil investigations. This
function requires an in depth knowledge of the laws of the Department of Labor such as ERISA,
COBRA and HIPAA along with an extensive working knowledge of complex DOL Regulations,
DOL Opinion Letters, Treasury Regulations and the Internal Revenue Code to determine
violations. This function required the ability to gage the questions based on the professional
expertise of the interviewee. I must collect germane facts and summarize them in the form of a
Report of Interview.

On civil investigations, I conducted several investigative depositions with fiduciaries of
employee benefits plans under investigation. This process involved working with RSOL to
enforce subpoenas an compel sworn testimony at the U.S. Department of Labor. Conducting
civil deposition requires an in depth understanding of the Federal Rules of Civil Procedure and
oral advocacy skills. Three cases have been be referred to RSOL for further legal action.

On criminal investigations, as the Lead Investigator, I provide testimony to the grand jury as the
summary witness for the U.S. Government. This function requires my ability to present complex
issues in a clear and precise manner and gage those presentations to the level of sophistication of
the audience. Similarly, I have worked with the AUSA to prepare other witnesses to provide
testimony before the grand jury.

Additionally, as a PB A I received participant complaints regarding noncompliance with the
ERISA, COBRA and HIPAA. As a result, I interview participants, professionals and plan
officials to determine relevant facts telephonically. For example, I use information I obtain by
interviewing and prepare worksheets to determine if delinquent contributions to ERISA protected
401(k) plans are merely a timing error or if money is truly missing. Moreover, I frequently
interviewed the investment managers, third party plan administrators, named fiduciaries or de
facto fiduciaries to determine the status of plans and obtain information. Since interviews range
from participants (i.e. bricklayer) to professionals rendering services to the plan (i.e. plan
attorney or actuary), it is necessary to gage the questions according to the professional expertise
of the interviewee in order to gain the most useful information.

At the U.S. Attorney's Office as an Intern, I also interview and conduct meetings with special
agents from DOL-EBSA, FBI, IRS-CID and other federal law enforcement agencies concerned
with ERISA protected employee benefit plans. This position requires the ability to ascertain
relevant facts based on complex legal standards courts have used in federal criminal

30

Tab FM p.48



**J. Martin Shanahan, CPA, Esq.**
**KSA - Investigator 1801-13**

prosecutions of ERISA covered employee benefit plans. This function also requires the ability to gage the level complexity to the appropriate party.

At Suffolk Law School, I competed with approximately five hundred first year law students in oral advocacy. This position required highly proficient use of oral advocacy and the ability to quickly analyze new facts as they apply to the law. This function also required highly proficient knowledge of the Federal Rules of Evidence, Federal Rules of Civil Procedure and general knowledge of trial procedure. Received First Year Best Oral Advocate Award at Suffolk University.

At Flagship Bank & Trust, I interviewed lending officers, assistant vice presidents and accounting and clerical staff to reconcile account guarantors, surities and comakers which were improperly recorded. This function required the ability to gage the nature and complexity of inquiry with the professional expertise of the staff member.

At McCarthy, Hargrave & Co., Certified public Accountants, I would interview the staff of the client to determine how events were recorded in the subsidiary ledgers and general ledger of their particular accounting system. I used this information to adjust the audit program. Also, I interviewed the client's staff to reconcile inconsistencies that came up relative to account balances, disclosures or items which required an adjusting entry. This function required the ability to gage the complexity of questions and inquiries between low level accounting clerks to Chief Financial Officers or Controllers.

At New England Electric I interviewed accounting clerks, engineers and other personnel to reconcile amounts and diselosures in the financial statements. For example, at New England Electric, I conducted an internal audit of a multi-million dollar retail subsidiary which supplies power to the entire State of Rhode Island. This function involved preparing an audit plan used to test amounts, disclosures and transactions reflected in the general ledger and balance sheet. This position also involved working with engineering consultants, and interviewing field personnel as to the disposition of certain assets major assets (e.g. substations, transformers, transmission towers, buildings, etc.) to complete audit of Narragansett Electric. This position requires the ability to gage the complexity and nature of the inquiry with the level of professional expertise of the individual in question.

**Experience - Written Communication:** At the U.S. Department of Labor-Pension and Welfare Benefits Administration (EBSA), I conduct civil and criminal investigations involving violations of employee benefit related laws. Additionally, I have approximately ten (10) years of professional experience which includes accounting, law and volunteer activities. As such, I have gained an ability communicate effectively both orally and in writing.

On civil investigations, I write memorandums of law concerning facts collected and violations of

31

Tab F## p.4#



### J. Martin Shanahan, CPA, Esq.
### KSA - Investigator 1801-13

ERISA or similarly complex laws. I frequently write reports which cite violations of DOL Regulations, DOL Opinion Letters, Treasury Regulations and the Internal Revenue Code and court cases and present those memoranda to the Regional Solicitor's Office ("RSOL"), the Regional Director, and Group Supervisor. This function requires the knowledge of the laws of the Department of Labor while interpreting regulations concerning ERISA, COBRA and HIPAA and identification of fiduciary breaches, prohibited transactions, health care fraud and other fraud concerning ERISA protected employee benefit plans.

On criminal investigations, as the Lead Investigator, I participated in writing affidavits to obtain search warrants. This required extensive working knowledge of complex laws of the Department of Labor, such as Title 18 of the U.S. Criminal code in order to identify germane facts necessary to prove the violation. For example, I wrote a narrative describing the facts of a two year federal criminal investigation into a service provider being investigated jointly by the FBI an EBSA. This narrative served as a template for the AUSA to write the affidavit.

Additionally, as a PBA I responded in writing to participant's, members of Congress, attorneys and other professionals and agencies (state and federal) who interact with ERISA protected employee benefit plans. This requires expressing complex legal and financial issues in two or three pages. Also, this function requires the ability to gage the complexity of the letter to the professional expertise of the reader (e.g. letter to bricklayer union member vs. letter to attorney representing the plan). Also, I draft memorandums of law concerning new court cases, inquiries requiring further investigation or other issues relative to ERISA protected employee benefit plans. This function requires preparing a brief summary of the facts, legal issues presented and a reasoned conclusion. These summaries are prepared to analyze changes in laws and regulations. The Associate Regional Director and Regional Director of EBSA-Boston use those memorandums to select organizations for investigation.

This position also involves contacting the Regional Solicitors Office and consists of complex analysis of the legal position the U.S. Department of Labor and the impact on developing cases into civil and criminal investigations for EBSA.

At the U.S. Department of Justice, U.S. Attorney's Office, I prepare memorandums of law involving federal criminal prosecution of ERISA protected employee benefit plans. This requires analysis of highly complex fact patterns and applying the Federal Criminal Code (i.e. 18 U.S.C. 664, 18 U.S.C. 1954, and 18 U.S.C. 1027) and court decisions in the first circuit. This position requires the ability to write Pros Memos (pre-indictment internal memo), and assist in writing briefs and responses to motions (i.e. Motion in Limine to suppress evidence, etc.). This position also requires proficiency with the Uniform System of Citation to properly cite court cases, statutes and other legal authorities. These documents are used in Federal District Court and by other Assistant United States Attorneys.

32

Tab FR4 p. 50

### J. Martin Shanahan, CPA, Esq.
### KSA - Investigator 1801-13

At Flagship Bank, I wrote letters to borrowers regarding terms of their mortgage, personnel loans or other debt with the lending institution. This function required brevity and accuracy.

At McCarthy Hargrave & Co., Certified Public Accountants, I contacted banks and other lending institutions relative to confirming balances of cash accounts as of a particular date. This function required brevity and accuracy.

At New England Electric, I wrote internal memorandums to the Controller, Assistant Controller and accounting managers to make policy changes to effectuate a reductions in financial accounting and reporting errors. At New England Electric, I also worked closely with the Controller, Assistant Controller and accounting managers to make policy changes to effectuate a reduction in financial accounting and reporting errors. After superior work in my first year as an Accounting Analyst, I was appointed to an upper level management Accounting Quality Team to study and make changes in the accounting department. This position involved complex accounting analysis of electric retail subsidiaries (Massachusetts Electric, Narragansett Electric, Granite State Electric, Nantucket Electric), major transmission subsidiaries (New Hampshire Hydro and New Hampshire Hydro Electric) and all power generating subsidiaries (New England Power Company). This position also involved examination of the accounting system for payroll, and employee benefits such as New England Electric Non-contributory Defined Benefit Pension Plan, New England Electric 401(k) Plan and employer contributions to the International Brotherhood of Electric Workers, Brotherhood of Utility Workers of New England and the Utility Workers Union of America. Accordingly, this also involved compliance with U.S. Department of Labor Regulations relative to defined benefit and defined contribution pension plans. We achieved a twenty-five percent (25%) reduction in financial accounting and reporting errors in 1991 and a fifteen percent (15%) reduction in errors for 1992.

At New England Electric, I also made presentations and reports to the Board of Directors. This function of my job required preparing reports, schedules cost breakdowns for the Board of Directors involving major construction projects (e.g. Hyro Quebec Project - $130 million and the Manchester Street Power Station Repowering Project - $460 million). These reports were used for regulatory compliance with the U.S. Department of Labor, Internal Revenue Service, Federal Energy Regulatory Commission and other state regulatory and rule making authorities.

33

Tab FM p.51

EACH PAGE OF THIS TRANSCRIPT HAS A CRIMSON BACKGROUND ON WHITE PAPER

## HARVARD UNIVERSITY
## SCHOOL OF PUBLIC HEALTH



ISSUED TO STUDENT
THIS IS A UD STAMP

**James Martin Shanahan**

**Master of Public Health**
**Law & Public Health**

First Enrolled: 9/18/00

Degree awarded: Master of Public Health 6/6/02

| FALL 2000 | Code | Sect | Title | Credits | Grade |
|---|---|---|---|---|---|
| | BIO200ab | 01 | Principles of Biostatistics | 5.00 | A- |
| | HPM241ab | 01 | Health Policy in the U.S. | 5.00 | B |

Semester credits:   Attempted: 10.00     Earned: 10.00     GPA: 3.350

| SPRING 2001 | Code | Sect | Title | Credits | Grade |
|---|---|---|---|---|---|
| | HPM291cd | 01 | App Rsch in the Law of HP&M | 5.00 | A |
| | STM112 | 01 | KSG-Stratg. Mangnt of Reg. Enfr. | 5.00 | A- |

Semester credits:   Attempted: 10.00     Earned: 10.00     GPA: 3.350

| FALL 2001 | Code | Sect | Title | Credits | Grade |
|---|---|---|---|---|---|
| | EH201b | 01 | Intro to Environmental Health | 2.50 | A- |
| | EPI200a | 01 | Principles of Epidemiology | 2.50 | P |
| | ID250b | 01 | Ethic Basis:Practice Pub Hlth | 2.50 | P |
| | ISP211 | 01 | KSG-Non-State Threats to Int. Secu | 2.50 | B |

Semester credits:   Attempted: 10.00     Earned: 10.00     GPA: 3.350

| SPRING 2002 | Code | Sect | Title | Credits | Grade |
|---|---|---|---|---|---|
| | HPM217 | 01 | Advanced Topics Hlth Lw & Plcy | 2.50 | B+ |
| | HPM244d | 01 | Pharmeceutical & Biotech Ind | 1.25 | A |
| | HPM255d | 01 | Payment Systems in Healthcare | 2.50 | B+ |
| | HPM278d | 01 | Negotiation Conflict Resolutio | 1.25 | B+ |
| | HSB295 | 01 | Health & Social Policy Seminar | 2.50 | P |

Semester credits:   Attempted: 10.00     Earned: 10.00     GPA: 3.417

Cumulative credits:   Attempted: 40.00     Earned: 40.00     GPA: 3.519

================ END OF TRANSCRIPT ================

Transcript not valid without Registrar's signature and the embossed seal of the Harvard School of Public Health

Transcript printed on 2/14/03

REGISTRAR

Page: 1

Tab FW p.52

NICHOLS COLLEGE

OFFICE OF THE REGISTRAR
DUDLEY, MASSACHUSETTS 015..

ISSUED TO STUDENT

Shanahan James M

ID number: ........
Birth date: 15-Aug-69

Page 2 of 2

Report date: 20-Aug-93

| COURSE | DESCRIPTION | GRADE | HOURS | POINTS | COURSE | DESCRIPTION | GRADE | HOURS | POINTS |
|---|---|---|---|---|---|---|---|---|---|
| | Spring Semester 1989-90 | | | | | Spring Semester 1990-91 | | | |
| ECON302 | Business Law II | A | 3.00 | 12.00 | FIN 480 | Prob Business Fin | C+ | 3.00 | 6.90 |
| FIN 403 | Investments | B | 3.00 | 9.00 | MGMT201 | Prin of Management | A- | 3.00 | 11.10 |
| HIST470 | Depression & War | B+ | 3.00 | 9.90 | ESCI401 | Accounting Seminar | A- | 3.00 | 11.10 |
| ACCT302 | Advanced Acct | A | 3.00 | 12.00 | ESCI243 | The Physical World | A | 4.00 | 14.80 |
| ACCT402 | Federal Taxes | B | 3.00 | | | Business Policy | A- | 3.00 | 11.10 |
| | Dean's List | | | | | Dean's List | | | |

|  | Attempt | Earned | Points | Divisor | GPA |  | Attempt | Earned | Points | Divisor | GPA |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Current Term | 15.00 | 15.00 | 51.90 | 15.00 | 3.46 | Current Term | 16.00 | 16.00 | 55.00 | 16.00 | 3.44 |
| Cumulative | 94.00 | 94.00 | 330.00 | 94.00 | 3.51 | Cumulative | 131.00 | 131.00 | 451.30 | 131.00 | 3.45 |

Summer Session 1989-90

| COURSE | DESCRIPTION | GRADE | HOURS | POINTS |
|---|---|---|---|---|
| PA 495 | Wash Internship | P | 6.00 | |
| PA 496 | Washington Seminar | A- | 3.00 | 11.10 |
| PA 497 | Paper & Presentation | B+ | 3.00 | 9.90 |

|  | Attempt | Earned | Points | Divisor | GPA |
|---|---|---|---|---|---|
| Current Term | 6.00 | 12.00 | 21.00 | | |
| Cumulative | 100.00 | 106.00 | 351.00 | 100.00 | 3.51 |

Fall Semester 1990-91

| COURSE | DESCRIPTION | GRADE | HOURS | POINTS |
|---|---|---|---|---|
| ECON307 | Money & Banking | B- | 3.00 | 8.10 |
| FIN 325 | Corporate Finance | A | 3.00 | 12.00 |
| FIN 425 | Security Analysis | A | 3.00 | 12.00 |
| ENGL250 | World Lit I | B | 3.00 | 9.00 |
| ACCT404 | Auditing | B- | 3.00 | 8.10 |
| | Dean's List | | | |

|  | Attempt | Earned | Points | Divisor | GPA |
|---|---|---|---|---|---|
| Current Term | 15.00 | 15.00 | 45.30 | 15.00 | 3.02 |
| Cumulative | 115.00 | 121.00 | 396.30 | 115.00 | 3.45 |

Bachelor of Science in Business Administration
Specialization in Accounting and Finance
Graduated Magna Cum Laude
Degree Awarded: May 10, 1991

END OF TRANSCRIPT

* means repeat of course
# means course credit not counted

THE FAMILY EDUCATIONAL RIGHTS AND PRIVACY ACT
OF 1974 PROHIBITS DISCLOSURE OF INFORMATION
FROM THIS ... WITHOUT ...

REGISTRAR

AUG 19 1993

DATE

Tab FM p.53



Shanahan James M

ID number:
Birth date: 19-Aug-69

Report date: 20-Aug-93

OFFICE OF THE REGISTRAR
DUDLEY, MASSACHUSETTS

NICHOLS COLLEGE

ISSUED TO STUDENT

Page 1 of 2

| COURSE | DESCRIPTION | GRADE | HOURS | POINTS | COURSE | DESCRIPTION | GRADE | HOURS | POINTS |
|---|---|---|---|---|---|---|---|---|---|
| | Fall Semester 1987-88 | | | | | Dean's List | | | |
| SEM100 | Freshman Seminar-A | P | 0.00 | | | Attempt Earned Points Divisor GPA | | | |
| ENGL105 | Comp and Lit I | D+ | 3.00 | 3.90 | | Current Term | 16.00 16.00 53.10 16.00 | | 3.32 |
| HIST101 | U S Hist to 1877 | A- | 3.00 | 11.10 | | Cumulative | 46.00 46.00 154.20 46.00 | | 3.35 |
| MATH101 | College Math I | C | 3.00 | 5.00 | | | | | |
| ACCT101 | Intro Account I | B+ | 3.00 | 12.00 | | Spring Semester 1988-89 | | | |
| PSY 101 | General Psychology | A | 3.00 | 12.00 | ECON222 | Prin Macro Econ | A- | 3.00 | 11.10 |
| | Attempt Earned Points Divisor GPA | | | | FIN 201 | Prin of Finance | A- | 3.00 | 11.10 |
| | Current Term | 15.00 15.00 42.90 15.00 | | | ENGL204 | Effective Speaking | A- | 3.00 | 11.10 |
| | Cumulative | 15.00 15.00 42.90 | | | MATH202 | Stat Analysis | A | 3.00 | 9.90 |
| | | | | | ACCT202 | Intermed Acct II | A | 3.00 | 12.00 |
| | Spring Semester 1987-88 | | | | | * Dean's High Honors | | | |
| SEM101 | Freshman Seminar-B | P | 0.00 | | | Attempt Earned Points Divisor GPA | | | |
| ENGL106 | Comp and Lit II | A- | 3.00 | 11.10 | | Current Term | 15.00 15.00 18.00 | | 3.78 |
| HIST102 | U S Hist from 1877 | A- | 3.00 | 11.10 | | Cumulative | 64.00 64.00 222.30 64.00 | | 3.47 |
| MATH102 | College Math II | A- | 3.00 | 11.10 | | | | | |
| ACCT102 | Intro Account II | A | 3.00 | 12.00 | | Fall Semester 1989-90 | | | |
| SOC 101 | Sociology | A | 3.00 | 12.00 | ECON | Business Law I | B | 3.00 | 12.00 |
| | * Dean's High Honors | | | | ECON | Bus Behavior | B+ | 3.00 | 9.90 |
| | Attempt Earned Points Divisor GPA | | | | MARK201 | Prin of Marketing | A | 3.00 | 12.00 |
| | Current Term | 15.00 15.00 58.20 | | | ACCT301 | Intermed Acct III | B+ | 3.00 | 9.90 |
| | Cumulative | 30.00 30.00 101.10 | | | ACCT303 | Cost Accounting | A | 3.00 | 12.00 |
| | | | | | | Dean's High Honors | | | |
| | Fall Semester 1988-89 | | | | | Attempt Earned Points Divisor GPA | | | |
| ECON221 | Prin Micro Econ | A- | 3.00 | 11.10 | | Current Term | 15.00 15.00 55.80 15.00 | | 3.72 |
| MATH201 | Math Analysis | B | 3.00 | 9.00 | | Cumulative | 79.00 79.00 278.10 79.00 | | 3.52 |
| COMP110 | Computer Principles | A | 3.00 | 12.00 | | | | | |
| ACCT201 | Intermed Acct I | B | 3.00 | 9.00 | | | | | |
| ESCI223 | Human Biology | B | 4.00 | 12.00 | | | | | |

* * * CONTINUED ON NEXT PAGE * * *

AUG 19 1993

REGISTRAR                                    DATE

\* means repeat of course
( ) means course credit not counted

THE FAMILY EDUCATIONAL RIGHTS AND PRIVACY ACT OF 1974 PROHIBITS DISCLOSURE OF INFORMATION FROM THIS TRANSCRIPT TO THIRD PARTIES WITHOUT PRIOR WRITTEN CONSENT OF THE STUDENT.

Tab FM p.54



**SUFFOLK UNIVERSITY LAW SCHOOL**
41 TEMPLE STREET • BOSTON, MA 02114

ACADEMIC RECORD

NAME Shanahan, James M
DIVISION DAY                CANDIDATE JD    GRADUATED        ID #              SS#
                                                            HONORS

| PRE-LEGAL EDUCATION | DEGREE | YEAR | | | | | REVIEW | ADMITTED |
|---|---|---|---|---|---|---|---|---|
| NICHOLS COLLEGE | BS | 91 | | | | | | |

| START DATE | | END DATE | YEARLY | CUMULATIVE | |
|---|---|---|---|---|---|
| 08/28/95 | TO | 05/14/96 | 2.33 | 2.33 | |
| 08/22/96 | TO | 05/17/97 | 2.66 | 2.48 | |

HONORS, PRIZES, SCHOLARSHIPS:
1996: BEST ORAL ADVOCATE
      LPS SECTION.

| COURSE | GRADE | CREDIT | | | COURSE | SEM HRS | DE-? |
|---|---|---|---|---|---|---|---|
| **SEMESTER 95/FA** | | | | | **SEMESTER 97/SP** | | |
| CRIMINAL LAW | 3.00 B | 3 | | | BANKRUPTCY | 2 | 2.67 B |
| COMPOSITE | 2.00 C | 1 | | | EMPLOYMENT DISCR | 3 | 3.33 C |
| TH NGH GP AVE | | | | | FED CRIM PROS | 2 | 2.00 B |
| SEM TOTAL 3 4 1.00 2.75 | | | | | LABOR LAW | 3 | 2.67 B |
| CUM TOTAL 3 4 1.00 2.75 | | | | | NON PROFIT ORGAN | 3 | 3.6 A |
| **SEMESTER 96/SP** | | | | | TH NGH GP AVE | | |
| CONTRACTS | 6 2.67 B | 6 | | | SEM TOTAL 13 13 37.35 2.87 | | |
| PROPERTY | 5 2.00 C | 5 | | | YR TOTAL 27 27 72.03 2.66 | | |
| TORTS | 5 2.00 C | 5 | | | CUM TOTAL 57 144.38 2.48 | | |
| CIVIL PROCEDURE I | 2.33 | 4 | | | **SEMESTER 97/FA** | | |
| CONSTITUTIONAL LAW I | 2.00 | 4 | | | EMPLOYMENT LAW | 3 2 B | |
| LPS | 2.6 | 3 | | | ENVIRONMENTAL LAW | 3 3 A | |
| TH NGH GP AVE | | | | | DV LAW | 3 2 B | |
| SEM TOTAL 27 61.35 27 | | | | | RESP | 2 3 B | |
| YR TOTAL 30 31 62.35 2.33 | | | | | | 2 3 A | |
| CUM TOTAL 30 31 62.35 2.33 | | | | | TH NGH GP AVE | | |
| **SEMESTER 96/FA** | | | | | SEM TOTAL 13 13 40 3.10 | | |
| FIDUCIARY RELATIONS | 2 2.00 C | 2 | | | CUM TOTAL 70 71 184.75 2.60 | | |
| CORPORATIONS | 4 3.00 B | 4 | | | *** End of Academic Record *** | | |
| EVIDENCE | 4 2.67 B | 4 | | | | | |
| BASIC INCOME TAX | 4 2.00 C | 4 | | | | | |
| TH NGH GP AVE | | | | | | | |
| SEM TOTAL 14 14 34.68 2.47 | | | | | | | |
| CUM TOTAL 44 45 107.03 2.37 | | | | | | | |

PRINTED ON 04/29/98

SEE REVERSE SIDE FOR EXPLANATION OF GRADES.

REGISTRAR

Tab F 84 p.55

**J. Martin Shanahan**
CERTIFIED PUBLIC ACCOUNTANT
ATTORNEY AT LAW

GS-1801-13 Q

RECVD OASAM FEG-1

2CB APR 14  AM 10: 05

VIA HAND DELIVERY

April 14, 2003

U.S. Department of Labor – OASAM/OHR
JFK Federal Building
Room E-215
Boston, MA 02203

Subject:    Announcement Number: BOS 03-29

Dear Sir/Madam:

Enclosed please find the following relating to my Application for Announcement Number BOS
03-29:

1.  Completed and Signed OF 612 Form (18 pages)
2.  Resume (2 pages)
3.  KSA (33 pages)
4.  Most Recent Performance Appraisal (19 pages)
5.  Academic Transcript – Harvard University (1 page)
6.  Academic Transcript – Suffolk Law School (1 page)
7.  Academic Transcript – Nichols College (2 pages)
8.  Most Recent SF 50

Please contact me if you have any questions relating to my Application for Announcement
Number BOS 03-29.

Thank you.

J. Martin Shanahan, CPA, Esq.

5 Suburban Road · Suite 512 · Worcester · MA · 01602 · 617/285 5033

Tab F84 p. 56

# J. MARTIN SHANAHAN



## LEGAL EXPERIENCE

**U.S. Department of Labor, Employee Benefits Security Administration,**
**Boston Regional Office,** *Investigator*, 6/96 to present

Criminal Prosecution:

- Conduct criminal investigations involving complex violations relating to employee benefit plans subject to the Employee Retirement Income Security Act ("ERISA"). Demonstrate extensive working knowledge of Title 18 of the U.S. Criminal Code and other highly complex criminal laws while working with Assistant U.S. Attorneys

- Investigate and collect key evidence to prove sophisticated kickback, fraud and embezzlement schemes relating to 401(k) pension plans, ESOP's, defined benefit pension plans, self-funded health benefit plans, HMO's and fully-insured health plans

- Draft and serve Grand Jury subpoenas covered under Federal Rule of Criminal Procedure 6(e) and review documents produced

- Draft search warrant affidavits and execute search warrants with the FBI

- Interview witnesses and work with Assistant U.S. Attorneys to prepare witnesses to testify

- Testify and present key evidence in court on complex criminal investigations

- Research case law and draft memoranda involving Sentence. Memoranda incorporate the Federal Sentencing Guidelines, case law and contacts with the U.S. Sentencing Commission to address potential defenses, including Ex Post Facto defenses

Civil Enforcement:

- Manage difficult and complex civil investigations involving violations of employee benefit related laws relating to 401(k) pension plans, ESOP's, defined benefit pension plans, self-funded health benefit plans, HMO's and fully-insured health plans

- Direct teams of EBSA Investigators in review of plans and service providers, conduct interviews, assess fiduciary conduct of officials, analyze plan operations, and apply and interpret applicable provisions of ERISA, Health Insurance Portability and Accountability Act ("HIPAA"), Internal Revenue Code and U.S. Bankruptcy Code while conducting large-scale national investigations

- Draft subpoenas, conduct investigative depositions and obtain other forms of civil discovery involving complex civil litigation and work with DOL Trial Attorneys to prepare motions and complaints in federal court

Targeting Project - Nursing Home and Home Health Agency Medicare Fraud:

- Direct project and work with Special Agents from the U.S. Department of Health and Human Services, Office of Inspector General, to identify health care fraud involving Medicare Cost Reports and diversion of reimbursements to employee benefit plans subject to ERISA

**U.S. Department of Justice, Office of the U.S. Attorney, Economic Crimes Unit,**
**Boston Office,** *Law Student Intern*, Spring Semester 1998

- Researched and drafted memoranda for prosecution of crimes involving ERISA employee benefit

Tab FW p57

 

# J. MARTIN SHANAHAN
(Page 2 of 2)

## ACCOUNTING EXPERIENCE

**Flagship Bank & Trust Company, Worcester, MA,** *Analyst/Consultant,* 11/94 to 8/95
  - Analyzed accounting records relating to commercial loans and home mortgages

**McCarthy & Hargrave, Certified Public Accountants, Worcester, MA,** *Auditor,* 8/93 to 9/94
  - Audited organizations in the banking, manufacturing, publishing and broadcasting industries using Generally Accepted Accounting Principles ("GAAP") and Generally Accepted Auditing Standards

**New England Electric System, Westborough, MA,** *Accounting Analyst,* 6/91 to 8/93
  - Prepared financial statements using GAAP accounting in the electric utility industry

## COMMUNITY SERVICE

**City of Worcester, MA, Cable Television Committee,** *Chair - Legal Subcommittee,* 3/94 to 10/01
  - Drafted the cable television franchise contract for the City of Worcester (population 500,000)

  - Analyzed legal and financial issues involving federal and state regulatory authorities such as the FCC and the Commonwealth of Massachusetts Division of Regulated Industries

  - Drafted correspondence and obtained an IRS legal opinion relating to the policies of WCCA, a tax-exempt community access television station. Drafted restrictions into the contract with WCCA based on the IRS legal opinion

  - Awarded Citation by the City of Worcester - City Council on November 13, 2001

**City of Worcester, MA, School Department, North High School,** *Mentor,* 9/99 to 2/01
  - Assisted high school students on SAT preparation, homework and study practices

## EDUCATION

**Harvard University, School of Public Health, Boston, MA – Masters in Public Health -** June 2002
  - Published Research: "*Unfamiliar Regulatory Risks - Lessons to Be Learned From Federal Regulation of Somatic Cell Nuclear Transfer (Human Cloning) Technology?,*" *Harvard Health Policy Review,* Spring 2002

  - Publications Pending: "*Public Health Crisis - Domestic Bioterrorism and The Army of God*" and "*Health Care Fraud Involving Russian Organized Crime*"

  - Other Accomplishment: Debate Participant, "*Is Law the Master?,*" John F. Kennedy School of Government

**Suffolk University, Law School, Boston, MA - Juris Doctor -** May 1998
  - First Year Best Oral Advocate (1995-1996)
  - McLaughlin Oral Advocacy Competition (1996)

**Nichols College, Dudley, MA - Bachelor of Science in Business Administration -** May 1991
  - Washington Center Fellow - U.S. Treasury, Financial Management Service (1990)

## PROFESSIONAL LICENSES

**Attorney**
  - Massachusetts Bar
  - U.S. District Court, Massachusetts Bar

**Certified Public Accountant**
  - Licensed in Massachusetts and Maryland

Tab F M p.58

# Exhibit 10

GS-1801-13    Φ

**OPTIONAL APPLICATION FOR FEDERAL EMPLOYMENT**
(OF 612 — Form Approved: OMB No. 3206--021)    RECVD OASAM REG-1

You may apply for most jobs with a resume, this form, or other written    2003 APR 17 PM 2: 42
format. If your resume or application does not provide all the
information requested on this form and in the job vacancy announcement,
you may lose consideration for a job.

1. JOB TITLE IN ANNOUNCEMENT: Investigator (Pension)

2. GRADE(S) APPLYING FOR:  GS-1801-13

3. ANNOUNCEMENT NUMBER:    BOS 03-29

4. LAST NAME:  Phillips    FIRST, MIDDLE:    Stephen, Eugene

5. SOCIAL SECURITY NUMBER: ▮▮▮▮▮▮

6. MAILING ADDRESS: ▮▮▮▮▮▮

   CITY/STATE/ZIP:    ▮▮▮▮▮▮

7. PHONE NUMBERS (include area code) DAYTIME ▮▮▮▮▮

   EVENING ▮▮▮▮▮

8. WORK EXPERIENCE: Describe your paid and nonpaid work experience
   related to the job for which you are applying. (Do not attach job
   descriptions)

1) JOB TITLE (If Federal,    Investigator (Pension) GS12-8
   include series and grade): _____

   FROM (MM/YY): 06/97    TO (MM/YY):    Present

   SALARY: $72,148    per  week  HOURS PER WEEK:  40

   EMPLOYER'S NAME: U.S. Dept. of Labor, Employee Benefits Security Admin.

   AND ADDRESS: J.F.K. Federal BLDG., Rm 575 Boston, MA 02203

   SUPERVISOR'S NAME: Mr. Edward Maloney

   AND PHONE: ▮▮▮▮▮

*Tab F-19 p.1*

DESCRIBE YOUR DUTIES AND ACCOMPLISHMENTS:

   Please see attached resume.

2) JOB TITLE (If Federal,  Senior Investigator Wage & Hour(GS12-4)
include series and grade): _____

FROM (MM/YY): 9/89     TO (MM/YY):      6/97

SALARY: $50,940     per  week   HOURS PER WEEK: 40

EMPLOYER'S NAME: U.S. Department of Labor, Wage & Hour Division

   AND ADDRESS: 17 Broadway, Rm 308, Taunton, MA 02780

SUPERVISOR'S NAME:  Mr. Richard Daley

      AND PHONE:     ████████  ██████

DESCRIBE YOUR DUTIES AND ACCOMPLISHMENTS:

   Please see attached resume.

9. MAY WE CONTACT YOUR CURRENT SUPERVISOR? (If we need to     YES [XX]
contact your current supervisor before making an offer,
we will contact you first.)                    NO [ ]

EDUCATION
                  Some HS  [ ]  Bachelor [ ]
10. MARK HIGHEST LEVEL COMPLETED: HS/GED   [ ]   Master  [XX]
                  Associate [ ]  Doctoral [ ]

11. LAST HIGH SCHOOL or GED SCHOOL: Somerville High School

   CITY/STATE/ZIP(if ZIP known):      Somerville, MA 02134

   YEAR DIPLOMA or GED RECEIVED:      1978

12. COLLEGES AND UNIVERSITIES ATTENDED (Do not attach a copy of your
   transcript unless requested.)

   1) NAME: Northeastern University



Tab F-19 p.2

CITY/STATE/ZIP:        Boston, MA 02115

SEMESTER CREDITS EARNED: 84    MAJOR(S):  Business Admin.
    (or)
QUARTER CREDITS EARNED:

DEGREE (If any): Master of Business Admin.  YEAR RECEIVED: 1989


2) NAME:  Ohio Wesleyan University

CITY/STATE/ZIP:        Delaware, OH 43015

SEMESTER CREDITS EARNED: 94    MAJOR(S): Botany, Bacteriology
    (or)
QUARTER CREDITS EARNED:                    Pre-Medical Technology

DEGREE (If any):  Bachelor of Arts    YEAR RECEIVED:  1983


3) NAME:

CITY/STATE/ZIP:

SEMESTER CREDITS EARNED:        MAJOR(S):
    (or)
QUARTER CREDITS EARNED:

DEGREE (If any):                    YEAR RECEIVED:


## OTHER QUALIFICATIONS

13. **Job related training courses** (give title and year).  Job related
skills (other languages, computer software/hardware, tools,
machinery, typing speed, etc.).  Job related certificates and
licenses (current only).  Job related honors, awards, and special
accomplishments (publications, memberships in professional/honor
societies, leadership activities, public speaking, and performance
awards).  Give dates, but do not send documents unless requested.

Job-related Certificates
 - EBSA Basic Fiduciary & Investigative Techniques, completed 3/20/98
 - EBSA Criminal Enforcement, completed 9/2/99
 - EBSA Benefit Plan Accounting, completed 4/13/00



Job-related special accomplishments
- Secretary's Equal Employment Opportunity Award
- Special Acts Award
- Agency Professional Employee of the Year
- Good Job Award
- Ford Foundation and Harvard's Kennedy School of Government Innovation in American
Government Award

================================================================

**GENERAL:**

14. Are you a U.S. citizen?  <u>YES</u>

15. Do you claim veterans' preference?  <u>NO</u>

16. Were you ever a Federal Civilian employee? <u>YES</u>
    For Highest civilian grade: Series: GS;
    Grade: 12; From 5/95 - 6/97 and 6/98 - present.

17. Are you eligible for reinstatement based on career or career-
    conditional Federal status? <u>NO</u>

**APPLICANT CERTIFICATION**

18. I certify that, to the best of my knowledge and belief, all of the information on and attached
    to this application is true, correct, complete and made in good faith. I understand that false
    or fraudulent information on or attached to this application may be grounds for not hiring me
    or imprisonment. I understand that any information I give may be investigated.

SIGNATURE                                    DATE SIGNED
                                             April 17, 2003

Tab F- 19 p.4

## GENERAL INFORMATION

* You may apply for most Federal jobs with a resume, this Optional Application for Federal Employment or other written format. If your resume or application does not provide all the information requested on this form and in the job vacancy announcement, you may lose consideration for a job. Type or print clearly in dark ink. Help speed the selection process by keeping your application brief and sending only the requested information. If essential to attach additional pages, include your name and Social Security Number on each page.

* For information on Federal employment, including job lists, alternative formats for persons with disabilities, and veterans' preference, call the U.S. Office of Personnel Management at 912_757_3000, TDD 912_744_2299, by computer modem 912_757_3100, or via the Internet (Telnet only) at FJOB.MAIL.OPM.GOV.

* If you served on active duty in the United States Military and were separated under honorable conditions, you may be eligible for veterans' preference. To receive preference if your service began after October 15, 1976, you must have a Campaign Badge, Expeditionary Medal, or a service_connected disability. Veterans preference is not a factor for Senior Executive Service jobs or when competition is limited to status candidates (current or former career or career_conditional Federal employees).

* Most Federal jobs require United States citizenship and also that males over age 18 born after December 31, 1959, be registered with the Selective Service System or have an exemption.

* The law prohibits public official from appointing. promoting, or recommending their relatives.

* Federal annuitants (military and civilian) may have their salaries or annuities reduced. All employees must pay any valid delinquent debts or the agency may garnish their salary.

* Send your application to the office announcing the vacancy. If you have questions, contact that office.

THE FEDERAL GOVERNMENT IS AN EQUAL OPPORTUNITY EMPLOYER.



## PRIVACY ACT AND PUBLIC BURDEN STATEMENTS

The Office of Personnel Management and other Federal agencies rate applicants for Federal jobs under the authority of sections 1104, 1302, 3301, 3304, 3320, 3361, 3393, and 3394 of title 5 of the United States Code. We need the information requested in this form and in the associated vacancy announcements to evaluate your qualifications. Other laws require us to ask about citizenship, military service, etc.

We request your Social Security Number (SSN) under the authority of Executive Order 9397 in order to keep your records straight; other people may have the same name. As allowed by law or Presidential directive, we use your SSN to seek information about you from employers, schools, banks, and others who know you. Your SSN may also be used in studies and computer matching with other Government files, for example, files on unpaid student loans.

If you do not give us your SSN or any other information requested, we cannot process your application, which is the first step in getting a job. Also, incomplete addresses and ZIP Codes will slow processing.

We may give information from your records to: training facilities; organizations deciding claims for retirement, insurance, unemployment or health benefits; officials in litigation or administrative proceedings where the Government is a party; law enforcement agencies concerning violations of law or regulation; Federal agencies for statistical reports and studies; officials of labor organizations recognized by law in connection with representing employees; Federal agencies or other sources requesting information for Federal agencies in connection with hiring or retaining, security clearances, security or suitability investigations, classifying jobs, contracting, or issuing licenses, grants, or other benefits; public and private organizations including news media that grant or publicize employee recognition and awards; and the Merit Systems Protection Board, the Office of Special Counsel, the Equal Employment Opportunity Commission, the Federal Labor Relations Authority, the National Archives, the Federal Acquisition Institute, and congressional offices in connection with their official functions.

We may also give information from your records to: prospective nonfederal employers concerning tenure of employment, civil service status, length of service, and date and nature of action for separation as shown on personnel action forms of specifically identified individuals; requesting organizations or individuals


Tab F.19 p.6

concerning the home address and other relevant information on those who might have contracted an illness or been exposed to a health hazard; authorized Federal and nonfederal agencies for use in computer matching; spouses or dependent children asking whether the employee has changed from self_and_family to self_only health benefits enrollment; individuals working on a contract, service, grant, cooperative agreement or job for the Federal Government; non_agency members of an agency's performance or other panel; and agency_ appointed representatives of employees concerning information issued to the employee about fitness_for_duty or agency_filed disability retirement procedures.

We estimate the public reporting burden for the employment information will vary from 20 to 240 minutes with an average of 40 minutes per response, including time for reviewing instructions, searching existing data sources, gathering data, and completing and reviewing the information. You may send comments regarding the burden estimate or any other aspect of the collection of information, including suggestions for reducing this burden, to U.S. Office of Personnel Management, Reports and Forms Management Officer, Washington, DC 20415_0001.

Send your application to the agency announcing the vacancy.

Tab F-19 p.7



STEPHEN E. PHILLIPS

POSITION OF INTEREST
Vacancy Announcement: #B0S 03-29. Title: Investigator (Pension). Series/Grade: GS-1801-13

EXPERIENCE

6/97 - Present Investigator (*GS12 6/98-present*) U.S. Dept. of Labor/Employee Benefits Security
Administration (EBSA), MA.
Responsible for initiating, planning, coordinating and managing complex Employee Retirement
    Income Security Act (ERISA) audits and investigations of compliance with civil and criminal
    statutes serving both pension and health plans in the private sector. Investigations have
    focused on the following issues; prohibited transactions, real estate; stock, valuations of
    privately held companies, inadequate financial control systems and the Health Insurance
    Portability & Accountability Act (HIPAA). The investigative objective is to analyze and
    appropriately apply civil and criminal statutes. Investigative activities also entail developing
    contacts and coordinating efforts with other Federal and State agencies. Litigation support is
    provided the Department of Labor/Solicitors for civil cases. Conferences and negotiations
    are conducted with plan officials and their legal & financial representatives.
    Investigations are conducted and include the following:
    · researching prior investigative history, reporting and disclosure documentation and
    other background information relating to the plan being audited to ascertain past practice
    and departmental action.
    · initiate and arrange conferences, meetings & discussions with plan representatives
    (i.e.: trustees, attorneys, accountants, management & principals and third party
    administrators) to explain the purpose and scope of the audit, ERISA statute & regulatory
    requirements and Department of Labor Employee Benefits Security Administration
    (DOL/EBSA) policy and procedure.
    · interact with plan representatives to establish fiduciary responsibility prior to
    ascertaining and revealing regulation and statute violations.
    · reviewing pension and health plans to assess fiduciary prudence and ERISA/(HIPAA)
    compliance of the plans' trustee(s).
    · determine if the plan is administered and operated primarily in the interest of the plan
    participants and beneficiaries.
    · conduct interviews with plan representatives, current and former participants &
    beneficiaries to obtain information and evidence substantiating ERISA violation(s).
    · review investigative findings to achieve optimal administrative and monetary
    restitution for plan participants and beneficiaries as well as secure future compliance of
    the plan with ERISA statutes and regulations.
    · develop and prepare comprehensive and well documented reports, work papers and
    analyses which present findings, cite applicable statutes and regulations under ERISA
    and substantiate conclusions.

*Tab F-19 p.8*

STEPHEN E. PHILLIPS [resume cont. (pg. 2 of 5)]

Vacancy Announcement: #B0S 03-79.

· initiate contacts with other federal regulatory agencies such as the Internal Revenue Service, United States Attorney General's Office and state government bodies on cases which impact on concern statutes administered by those agencies.

01/00 – Present  **Diversity Outreach Coordinator**  U.S. Dept of Labor/EBSA, MA.
  Responsible for initiating, planning, coordinating and meeting with representatives of business schools and law schools, establishing intranet based postings and communications, and interviewing potential candidates at job fairs, the Boston Regional Office (BRO) and off site locations.
  · As diversity outreach coordinator team leader, I directed activities in the BRO to facilitate working relationships with a variety of advocacy groups which will continue to prove of benefit to the Agency in the years to come.

9/89 - 6/97  Senior Investigator  (*GS12*: *5/95 – 6/97*)  US Dept. of Labor/Wage & Hour Division, MA.
Responsible for conducting investigations involving and resolving compliance issues. Determine employer adherence to applicable rules, statutes, and laws enforced by the Department of Labor. Investigations are conducted and include the following:
  · reviewing contractor Pension Plans or Profit Sharing Plans with respect to Davis Bacon and Related Acts (DBRA). Assessing creditable fringe benefit contributions & trustee or third party accountability and fiduciary responsibility. Determining if a plan is administered and operated solely in the interest of the participants. [i.e.: profit sharing that funds pension benefit plans are reviewed to assure contractors contribute irrevocably to an escrow account not less than quarterly, during the period of the DBRA covered work, and an amount sufficient to meet any claimed fringe benefit credit under DBRA for pensions on behalf of each employee participating in the plan. Vesting and forfeitures in the plan are reviewed to assure adherence to requirements of the Employee Retirement Income Security Act (ERISA)]. Discrepancies are noted and the information is forwarded to Pension and Welfare Benefits Administration (PWBA).
  · reviewing corporate financial statements and conferring with employers and employees to establish enterprise or individual coverage.
  · interacting with organizational representatives (i.e.: attorneys, accountants, management & principals) to establish fiduciary responsibility prior to ascertaining and revealing regulation and statute violations.
  · interpreting federal laws and legal requirements/issues that directly effect the Dept. of Labor/Wage & Hour (DOL/W&H) (i.e.: Fair Labor Standards Act, Davis Bacon & Related Acts, Walsh Healey Service Contract Act, Family Medical Leave Act, and Migrant and Seasonal Workers Protection Act) and indirectly effect DOL/W&H (i.e.: Pension and Profit Sharing Plans, Immigration, Internal Revenue Service & Unemployment).

*Tab F-19 p.9*

STEPHEN E. PHILLIPS [resume cont. (pg. 3 of 5)]
Vacancy Announcement: #2OS 03-29.

· · researching and reviewing prior investigative history, reporting and disclosure documents, and other background information relating to the establishment being investigated. Independently planning, conducting and reviewing single and multi-level organizations to ascertain regulatory and statute compliance or violation.
· initiating and arranging conferences, meetings & discussions with corporate representatives and other appropriate parties to explain the purpose and scope of the investigative activity, statute & regulatory requirements and DOL/W&H policy and procedure.
· conducting formal interviews with parties related to the case such as employers, current and former employees, legal and accounting representatives, etc., to obtain and gather information and evidence.
· negotiating with corporate officials, accountants, attorneys, etc., for monetary restitution and securing voluntary compliance by establishing monitoring agreements confirming compliance as well as seeking other appropriate remedial action.
· providing litigation support to, and working closely with the legal staff of the Office of the Solicitor in preparing cases for litigation by developing documentary evidence and subpoena all pertinent parties related to the civil or criminal case.
· initiating contacts with other federal regulatory agencies such as the Internal Revenue Service, Immigration and Naturalization Service, Pension and Welfare Benefits Administration, or state government bodies, on cases which impact on concern statutes administered by those agencies.
· developing and preparing comprehensive and well documented reports, work papers and analyses which present findings, cite applicable statutes and regulations under the Fair Labor Standards Act, Davis Bacon & Related Acts, Walsh Healey Service Contract Act, Family Medical Leave Act, Migrant & Seasonal Workers Protection Act, and substantiate conclusions.
· developing recommendations for voluntary compliance, civil money penalties, disbarment, referral for litigation, and other agency actions as well as case closings.

4/90 - 4/95    EEO Counselor    U.S. Dept. of Labor/Wage & Hour Division, Boston MA

· Independently conduct investigations involving equal employment opportunity rules and regulations. Dealt effectively with difficult people and sensitive issues to obtain pertinent information and resolve outstanding issues. Develop and prepare comprehensive and well documented reports, work papers and analyses which present findings, cite applicable statutes and regulations under the Equal Employment Opportunity Act and substantiate conclusions.

Tab F-19 p.16

STEPHEN E. PHILLIPS    [resume cont. (pg. 4 of 5)]
Vacancy Announcement: #BOS 03-29.

9/87 - 6/89  MGMT INFO SYS TEACHING ASSIST.  Northeastern Univ., Boston MA
Responsible for instructing graduate and undergraduate students in computer use and
applications.  Also assisted professors in the distribution and correction of classroom exams.
Required knowledge of D-Base III, Lotus 1-2-3, XyWrite and BASIC.

9/85 - 9/87  ASSOCIATE/OPERATIONS ANALYST  Weston Financial Group,
Wellsley MA
Responsible for maximizing the clients' wealth and enhancing current business
opportunities. Duties included:

·    analyzing trusts funds, pension plans, profit sharing plans, options, and other
incentives offered by the clients company/employer/family to determine risk-Vs-
return, plan viability, and projected value considering current & potential future
social, political and economic conditions.
·    researching and interpreting federal and state law pertaining to individual
holdings, gifts, estate planning, and company structure.
·    targeting the clients' risk factor, needs, and desired goals.
·    creating balance sheets and cash flow statements using the clients current
financial position with respect to assets, liabilities, income, expenses, dependents,
insurance, company benefits, etc.
·    making and analyzing several portfolio scenarios incorporating real estate
investments, securities (i.e.: stocks, bonds & mutual funds), disability & life
insurance, and potential tax (federal, state, & municipal) exposure to achieve the
clients desired objectives.
·    providing financial analysis for capital needs, business investments, taxes and
debt management.
·    developing business plans and capacity models.
·    conveying clients ability to meet desired objectives or necessity to change said
goals both orally and in writing as a result of insufficient funds, un-achievable
investment returns, or degree of exposure as it relates to acceptable risk.

Further involvement included:
chairperson, benefit committee - reviewing in-house employee benefits (health and life
insurance, stock option plans, bonuses, vacation and sick leave) and researching the
implementation of a vested retirement plan. member, investment committee - creating
portfolios (stocks, options, bonds, certificates of deposit, junk bonds, insurance annuities,
etc.) attempting to out perform the Standard and Poor 500 Index. member, computer
committee - researching networking the desk top personal computers and numerous lotus 1-
2-3 spread sheets with macros to centralize and simplify operations.


Tab F-19 p.11

STEPHEN E. PHILLIP ⬛⬛⬛⬛ ⬛[resume cont. (pg. 5 of 5)]
Vacancy Announcement: #B0S 03-29.

9/84 - 9/85    SUPERVISOR    First Investors Corp., Boston MA
Responsible for recruitment, training and supervision of five sales representatives. Duties
included:

⠀⠀⠀studying and passing all required federal and state test (i.e.: series 6, 63, and
insurance exams) to obtain a license to broker insurance and mutual funds.
·    developing a client base and prospecting interested candidates to be sales reps.
·    teaching and training recruits about mutual funds & insurance, selling strategies
and techniques.
·    creating a financial needs analysis for clients by determining their personal &
business assets (i.e.: pension or profit sharing plans, investments, savings, property,
etc...), life insurance and government programs.
·    determining the clients' risk factor, needs, and desired goals.
·    marketing various mutual funds, IRA, KEOGH, SEP, retirement and insurance
plans.

**EDUCATION**
Masters Degree in Business Administration, June 1989
NORTHEASTERN UNIVERSITY, Boston MA
Major: Business Administration.
course selection: operations management, financial management, financial
accounting,
management accounting, management economics, strategic management, management
control, working capital management, strategic management, real estate investment and
analysis, speculative markets, investment banking, tax factors, legal aspects, quantitative
analysis, and related business curriculum.

Bachelor of Arts Degree, June 1983
OHIO WESLEYAN UNIVERSITY, Delaware, OH
Major: Botany, Bacteriology and Pre-Medical Technology
- electives in Science and Management Information Systems

**AWARDS**
- Secretary's Equal Employment Opportunity Award
- Special Acts Award
- Agency Professional Employee of the Year
- Good Job Award

**References available upon request.**

*Tab F-19 p.12*

Exhibit 11

## PERFORMANCE MANAGEMENT PLAN
### FOR EMPLOYEES IN THE NCFLL
### BARGAINING UNIT

**EMPLOYEE INFORMATION**

Name: _____ TRISTAN LOGAN   INVESTIGATOR  GS 12 _____

Organization: _____ U.S. DOL/PWBA - BOSTON REGIONAL OFFICE _____

Appraisal Period: _____ To: _____ 3/31/2002 _____
To : 9/30/02

**DESIGNATION OF KEY OFFICIAL**

| Title of Reviewing Official: | Title of Pay Deciding Official: |
|---|---|
| EDWARD W. MALONEY | JAMES M. BENAGES, |
| GROUP SUPERVISOR | REGIONAL DIRECTOR |

**ESTABLISHMENT OF THE PERFORMANCE MANAGEMENT PLAN**

We have discussed this plan; written comments have _____ have not _____ been attached.

Employee: _____    Date  5/01/01

Rating Official: _____    Date  5/1/01

Elements and standards were referred (type) for review. The attached performance management plan is approved.
(Reviewing official must review and approve elements and standards if the employee submits comments.)

Reviewing Official: _____    Date  050101

**SUMMARY RATING**

| Purpose of rating: | | SUPERIOR | Performance *exceeds* the described level for *all* critical elements. |
|---|---|---|---|
| ☒ Annual rating of record | X | EFFECTIVE | Performance at least *meets* the described level for *all* critical elements. |
| ☐ Other | | UNACCEPTABLE | Performance *fails to meet* the described level for *one or more* critical elements. |

**PERFORMANCE APPRAISAL AND RATING**

We have discussed this appraisal; written comments have _____ have not _____ been attached.

Employee: _____    Date  11/07/02

Rating Official: _____    Date  4/7/02

I have reviewed and approve this performance rating. (Reviewing official must review and approve the performance rating if the rating is "Superior" or "Unacceptable" or if the employee submits comments on the rating.)

Reviewing Official: _____    Date  11.08.02

Tab F6 p.1

Critical
Elements

1 . . Element:

Investigative Productivity

Performance Standard:

The Investigator is expected to perform this standard independently with minimal supervision.

Performance exceeds this standard when the Investigator earns 300 or more points, as shown on the attached schedule. Performance meets this standard when the Investigator earns 100 - 299 points.    Performance fails to meet this standard when the Investigator earns fewer than 100 points.

The points required to meet this standard are based on **190 days** devoted to investigative work (including case development) in a one-year rating period. If fewer than 190 days are devoted to investigative work during the rating period, the points goal will be adjusted to make it proportional to the actual time spent on investigative work.

Actual investigative time (in staff days) divided by 190 staff days = the adjustment factor
ADJUSTED BENCHMARKS:

|  | BASE PTS | ADJ FACTOR | ADJ PTS |
|---|---|---|---|
| MEETS: | 150 | _____ = | _150_ |
| EXCEEDS | 450 | _____ = | _450_ |

Actual points earned, per attached worksheet:  _548__

X__ Exceeds described level of performance (narrative required)

Rating:  ____ Meets described level of performance (no narrative required)

____ Fails to meet described level of performance (narrative required)

*Tab F6 p.2*

2.  Element:

    Quality of Investigations

Performance Standard:

Performance meets expectations when, with few exceptions:

A.    Potential violations are identified and researched.

B.    Leads are explored, sufficient interviews are conducted, relevant records are obtained, and the evidence gathered is sufficient to support the investigative findings.

C.    Work products, such as ROIs, and VC letters, include a clear and concise presentation of the facts and a technically well-founded application of the relevant statutes to the facts.

D.    Oral representations made at VC meetings involving the application of relevant civil statutes are technically correct.

E.    Answers to inquiries are comprehensive and technically accurate.

F.               Confidential information and case file materials are maintained in accordance with PWBA and Regional Office procedures.

_____ Exceeds described level of performance (narrative required)

Rating:   _X_ Meets described level of performance (no narrative required)

          _____ Fails to meet described level of performance (narrative required)

Tab F6 p.3

 

Critical
Elements

3. Element:

Timeliness

Performance Standard:

Performance meets expectations when, with few exceptions:

A.  Investigations are completed and work products are submitted to the supervisor within
established time frames.  Time frames may be established, for example, by due dates,
amount of time to be charged to the case, or case age.

B.  No case extends beyond the statute of limitations due to the Investigator's negligence.
Whenever possible, cases are submitted to the supervisor for review at least 7 months
prior to the statute of limitations date.

_____ Exceeds described level of performance (narrative required)

Rating:   _X_ Meets described level of performance (no narrative required)

_____ Fails to meet described level of performance (narrative required)

Tab F6 p.4

Critical
Elements

4. Element:

Administrative

Performance Standard:

The administrative work is evaluated on the factors below.

Performance meets expectations when, with few exceptions:

Reporting and recording of Enforcement Management System or EMS information required of investigators is completed timely and accurately pursuant to EMS guidelines or Regional Office written directives.

_____ Exceeds described level of performance (narrative required)

Rating:    _X_ Meets described level of performance (no narrative required)

_____ Fails to meet described level of performance (narrative required)

Tab F6 p.5

| Optional Additional Elements | |
|---|---|
| | |

Inclusion of "additional performance elements" is optional. They do not require a performance standard, and are not used in determining the employee's summary rating. These elements are used to describe new work, or to document short term special projects and accomplishments. Because they do not impact the final summary rating, there are no minimum periods of performance associated with "additional performance elements". They can be added to the performance management plan at any time during the rating period, including the time when the ratings are being prepared.

Tab F6 p.6

1. Element:

    Customer Service

Performance Standard:

Performance meets expectations when, with few exceptions:

Technical assistance calls are returned on a timely basis, responses to congressional inquiries are made within 10 calendar days, and responses to general correspondence are made within 30 calendar days.

Results are commensurate with the amount of time expended in compliance assistance.

Contacts with governmental agencies and other organizations are in accordance with PWBA guidelines, applicable laws, regulations and interagency agreements and are handled in a professional and timely manner.

    _X_ Exceeds described level of performance (narrative required)

Rating:   ___ Meets described level of performance (no narrative required)

      ___ Fails to meet described level of performance (narrative required)

Tab F6 p.7

2. Element:

Other Assigned Duties

**Performance Standard:**

Performance meets expectations when, with few exceptions:

Other assigned duties are performed in an effective manner and within the agreed-upon time frames. Examples of such duties include targeting, providing training, outreach activities, and special projects.

Rating:

_____ Exceeds described level of performance (narrative required)

_____ Meets described level of performance (no narrative required)

_____ Fails to meet described level of performance (narrative required)

     The investigator did not have any other assigned duties to be rated on.

Tab F6 p.8

Exhibit 12

# OIG PERFORMANCE MANAGEMENT PLAN
# FOR GRADE 12 CRIMINAL INVESTIGATORS

## 1. GENERAL INFORMATION

Name: _____SUSAN BRADY_____

Organization: _____OFFICE OF INVESTIGATIONS_____

Appraisal Period: from __7/1/00__ to __6/30/01__

## 2. ESTABLISHMENT OF THE PERFORMANCE MANAGEMENT PLAN

We have discussed this plan; written comments ____ have ____ have not been attached.

Employee: X _Susan J. Brady_____ Date: 10/5/00

Rating Official: _____ Date: 9/21/00

Reviewing Official: _____ Date: 10/12/00

## 3. INTERIM RATING

The employee _X_ meets ____ does not meet effective performance for all elements at this time.

Employee: _Susan J. Brady_____ Date: 1/22/01

Rating Official: _____ Date: 1/18/01

Reviewing Official: _____ Date: 2/20/01

## 4. SUMMARY RATING

_X_ SUPERIOR:    Performance is Superior for at least 50% for Communication and Professional Demeanor, Superior for at least 75% of the investigative competencies, and Effective in all other elements.

____ EFFECTIVE:    Performance is at least Effective for all elements.

____ UNSATISFACTORY:    Performance for one or more elements and overall job accomplishment is Unsatisfactory.

## 5. PERFORMANCE APPRAISAL AND RATING

We have discussed this appraisal; written comments ____ have _X_ have not been attached.

Employee: _Susan J. Brady_____ Date: 8/13/01

Rating Official: _____ Date: 7/5/01

Reviewing Official: _____ Date: 8/22/01

## 6. GENERAL INSTRUCTIONS

The performance appraisal system begins with a conversation between the criminal investigator and the rating official regarding the results to be achieved in support of the Agency's mission and goals for the year. This dialogue is critical in establishing results that are aligned up and down the organization.

This form is used for both recording the annual performance plan and the rating of plan achievement. The plan contains two types of elements: elements based on achieving organizational goals which are uniform for all criminal investigators, begin on page 3; and worker competencies, beginning on page 5.

The criminal investigator, rating official, and reviewing official will complete number 2 at the beginning of the appraisal period, following discussions about results expected. Periodically during the year, conversations on the plan and its progress are to be conducted. These conversations should focus on problem-solving and identifying ways of increasing the ability of the criminal investigator to meet agreed-upon results. At the end of the appraisal period, the rating official will determine which results have been accomplished. This assessment will form the basis of the rating. A rating will be given to the criminal investigator for each element. There are three levels within an element: Superior, Effective, and Unsatisfactory.

The summary performance rating on page 1 will be derived from the individual element ratings. Greater weight in the overall rating will be given to accomplishing organizational goals, which reflect accomplishments achieved during the period. Worker competencies are important elements involving each employee, and they are critical to superior long-term performance of the organization. A SUPERIOR performance rating is awarded if the criminal investigator is rated Superior in at least 75% of the organizational goals, Superior in at least 50% of the worker competencies, and is rated Effective in all other elements. An EFFECTIVE performance rating is assigned if the criminal investigator is rated at least Effective in all elements. An UNSATISFACTORY performance rating applies when the criminal investigator is rated Unsatisfactory in one or more elements, and overall job accomplishment is also considered unsatisfactory.

A narrative explanation must be attached to address those elements rated either Superior or Unsatisfactory. The narrative should be concise and to the point. Narrative may also be provided at the rating official's option for elements rated Effective. The criminal investigator, rating official, and reviewing official will complete the bottom section of page 1 at the end of the appraisal period.

**2**

*Tab F-10 p.2*

## 7. ACHIEVING ORGANIZATIONAL GOALS:

**A.    Program Knowledge.**

_____ Superior    ✗ Effective    _____ Unsatisfactory

In order to meet the standards of effective program development, the incumbent must:

(1)    Successfully complete the Federal Law Enforcement's basic criminal investigator training program. **(Must successfully pass this course before being rated on any other element within this standard.)**

(2)    Have a detailed knowledge of investigative and administrative policy and procedures by following and incorporating relevant information into day-to-day investigative activities.

(3)    Demonstrate a working knowledge of basic accounting principles to assist in the examination of business, union, and personal records.

(4)    Demonstrate a detailed knowledge of the Federal Rules of Criminal and Civil Procedures as well as the Federal Sentencing Guidelines.

**B.    Sources of Information.**

✗ Superior    _____ Effective    _____ Unsatisfactory

In order to meet the standards of effectively developing sources of information, the incumbent must:

(1)    Initiate efforts to develop at least one confidential source during both the development of the investigation and during the course of the investigation to provide further support for the investigative process.

(2)    Utilize automated informational/law enforcement data bases, such as NCIC, State Identification Bureau, Dun & Bradstreet, Internet, and analyze relevant information to assist in developing leads in investigative activity.

(3)    Analyze large amounts of complex financial data and independently develop evidence of criminal activity.

(4)    Independently review legal documents for investigative leads and evidence, and to assist other regional offices, as required, in developing leads on their cases.

(5)    Through pro-active efforts, incumbent must develop cases with prosecution potential.

*Tab F.10 p.3*

**C.**  **Problem Solving and Initiative**

_X_ Superior        _____ Effective          _____ Unsatisfactory

In order to meet the standards of effective problem solving and initiative, the incumbent must:

(1)    Identify potential collateral civil and criminal proceedings as well as potential administrative actions and remedies.

(2)    Identify situations in which an undercover operation or other sophisticated investigative technique may be used.

(3)    Demonstrate the experience and ability to participate in the coordination of multi jurisdictional investigations.

(4)    Recognize and independently develop new case work from ongoing investigations.

(5)    Demonstrate the ability to plan and complete assignments independently except for general policy guidance.

(6)    Must bring assigned cases to a successful resolution.

**D.**    **Investigative Techniques**

_X_ Superior        _____ Effective          _____ Unsatisfactory

In order to meet the standards of effectively utilizing investigative techniques, the incumbent must:

(1)    Plan, initiate, and participate in an undercover operation while complying with relevant laws and regulations.

(2)    Operate technical equipment during covert operations including the NAGRA, micro-cassette records, and visual aid equipment.

(3)    Maintain proficiency in firearms and adhere to policies and procedures relating to firearms and deputation.

(4)    Independently gather, document and analyze voluminous records in highly complex white collar crime investigations.

**8.**    **WORKER COMPETENCIES:**

*Tab F.10 p.4*

**A.    Organizational Representation**

X  Superior         _____ Effective         _____ Unsatisfactory

In order to meet the standards of effective organizational representation, the incumbent must:

(1)    Adhere to required standards of the Code of Conduct.

(2)    Maintain a professional image, good work habits and positive attitude and function in accordance with OI's policy and procedures.

(3)    Demonstrate the skill and demeanor to work sensitive investigations.

(4)    Demonstrate proficiency in conducting and documenting interrogations and interviews.

(5)    Assist AUSA during the course of a criminal trial.

**B.    Communications**

X  Superior         _____ Effective         _____ Unsatisfactory

In order to meet the standards of effective communications, the incumbent must:

(1)    Conduct oral presentations in a very effective manner based on in-depth preparation and knowledge of subject matter.

(2)    Establish and maintain effective liaison with key individuals during the course of investigations.

(3)    Develop liaison contacts with federal, state, and local law enforcement personnel, Department of Labor Program Officials, and contacts within various regulatory and enforcement agencies.

(4)    All written work products, i.e. Report of Interviews, Investigative Reports, File Reviews, etc., meet the appropriate OI policy and are grammatically and factually correct

(5)    Provide clear and detailed instructions to junior agents on investigative matters, as appropriate .

**C.    Team Work**

X  Effective

Tab F.10 p.5

In order to meet the standards of effective team work, the incumbent must:

(1)     Promote an open, communicative environment with other investigative team members in order to accomplish common goals and tasks, providing and delivering what your contribution will be toward achieving the goal or task.

(2)     Volunteer to help others on time sensitive projects.

(3)     Actively engage the cooperation of others in working on common tasks or group projects, share work and decision-making with others.

(4)     Foster collegial relationships with other law enforcement agencies, program offices, and other organizations.

D.     **PROFESSIONAL DEVELOPMENT:**

X Superior      _____ Effective      _____ Unsatisfactory

In order to meet the standards of effective professional development, the incumbent must:

(1)     Complete all training requirements outlined in the individual development plan (IDP).

(2)     Improve computer and investigative skills, as needed.

(3)     Provide feedback following training experiences to supervisor and others as appropriate.

(4)     Offer technical and investigative assistance to entry level agents.

Tab F.10 p.6

Exhibit 13

JmS

# PERFORMANCE MANAGEMENT PLAN
## FOR EMPLOYEES IN THE NCFLL
### BARGAINING UNIT

**EMPLOYEE INFORMATION**

Name: _____ J. MARTIN SHANAHAN, INVESTIGATOR   GS 12____

Organization: _____ U.S. DOL/PWBA - REGIONAL OFFICE_____

Appraisal Period: ____5/3/01_____ To: ___3/31/2002 to 9/30/02___

**DESIGNATION OF KEY OFFICIAL**

| Title of Reviewing Official: | Title of Pay Deciding Official: |
| --- | --- |
| **GROUP SUPERVISOR** | |

**ESTABLISHMENT OF THE PERFORMANCE MANAGEMENT PLAN**

We have discussed this plan; written comments have _____ have not __✓__ been attached.

Employee: _____ Date _5-3-01_

Rating Official: _____ Date _5/3/01_

Elements and standards were referred to on review. The attached performance management plan is approved. (Reviewing official must review and approve elements and standards if the employee submits comments.)

Reviewing Official: _____ Date _05/4/01_

**SUMMARY RATING**

| Purpose of rating: | | | |
| --- | --- | --- | --- |
| ☒ Annual rating of record | SUPERIOR | Performance *exceeds* the described level for *all* critical elements. |
| | EFFECTIVE | Performance at least *meets* the described level for *all* critical elements. |
| ☐ Other | UNACCEPTABLE | Performance *fails to meet* the described level for *one or more* critical elements. |

**PERFORMANCE APPRAISAL AND RATING**

We have discussed this appraisal; written comments have _____ have not __✓__ been attached.

Employee: _____ Date _10-25-02_

Rating Official: _____ Date _10/25/02_

I have reviewed and approve this performance rating. (Reviewing official must review and approve the performance rating if the rating is "Superior" or "Unacceptable", or if the employee submits comments on the rating.)

Reviewing Official: _____ Date _102502_

Tab F15 p.1

**Critical Elements**

1. Element:

   Investigative Productivity

Performance Standard:

The Investigator is expected to perform this standard independently with minimal supervision.

Performance exceeds this standard when the Investigator earns 300 or more points, as shown on the attached schedule. Performance meets this standard when the Investigator earns 100 - 299 points.    Performance fails to meet this standard when the Investigator earns fewer than 100 points.

The points required to meet this standard are based on **190 days** devoted to investigative work (including case development) in a one-year rating period. If fewer than 190 days are devoted to investigative work during the rating period, the points goal will be adjusted to make it proportional to the actual time spent on investigative work.

Actual investigative time (in staff days) divided by 190 staff days = the adjustment factor
ADJUSTED BENCHMARKS;

|  | BASE PTS* |  | ADJ FACTOR** |  | ADJ PTS |
|---|---|---|---|---|---|
| MEETS: | 150 |  | 1.0982 | = | 164 |
| EXCEEDS | 450 |  | 1.0982 | = | 494 |

Actual points earned, per attached worksheet:    528

*Due to the extended 18 month rating period, the adjustment results in an actual case time baseline of 285 investigative staff days and to meet and exceed point levels multiply by 1.5. Discretionary points allowed raised to 150 with no pro rata calculation.

**Marty's investigative staff days totaled 313 v. 285 baseline. Adjustment calculation – 313 divided by 285 = 1.0982 (the adjustment factor).

X  Exceeds described level of performance (narrative required)

Rating:    ____ Meets described level of performance (no narrative required)

    ____ Fails to meet described level of performance (narrative required)

As required by this standard, Marty Shanahan has independently conducted both civil and criminal investigations with a minimal amount of supervision. Marty earned a total of 528 points, which exceeds the requirements of the element. See attached Productivity Schedule, Self-Appraisal and EMS reports to verify the above.

Tab F-15 p2

**2.** Element:

Quality of Investigations

Performance Standard:

Performance meets expectations when, with few exceptions:

A.    Potential violations are identified and researched.

B.    Leads are explored, sufficient interviews are conducted, relevant records are obtained, and the evidence gathered is sufficient to support the investigative findings.

C.    Work products, such as ROIs, and VC letters, include a clear and concise presentation of the facts and a technically well-founded application of the relevant statutes to the facts.

D.    Oral representations made at VC meetings involving the application of relevant civil statutes are technically correct.

E.    Answers to inquiries are comprehensive and technically accurate.

F.                    Confidential information and case file materials are maintained in accordance with PWBA and Regional Office procedures.

_X_    Exceeds described level of performance (narrative required)

Rating:    _____    Meets described level of performance (no narrative required)

_____    Fails to meet described level of performance (narrative required)

During the rating period, Marty Shanahan exceeded all of the elements in this standard. His performance during this rating period has proven that he is extremely knowledgeable of resources and uses them expertly to determine fiduciary responsibility or criminal liability depending on the case.   Marty always identifies and analyzes ERISA issues and violations correctly and efficiently. He is known to follow all leads and his work products are technically correct and well-written. In all of Marty's dealings, whether oral or written, he conducts himself in a professional and cooperative manner whether dealing with plan officials or working on a joint investigation with another agency.   Concerning his work-products, his files are always maintained in accordance with PWBA procedures and policies and his reports and written work-products reflect no policies at variance those procedures.   Examples of his quality investigations this past rating period are as follows: 3 civil referrals to the Boston RSOL which address a variety of issues and were very complex (case work included performing depositions, researching ERISA preemption issues and analyzing novel investment issues); 1 indictment on the Kimbell case which is a complex criminal case involving an insurance scheme to defraud; and his work on the Home Health Care & Nursing Home Project is representative of his hard work and initiative in our office.

Tab F-15 p.3

 

Critical
Elements

3. Element

Timeliness

Performance Standard:

Performance meets expectations when, with few exceptions:

A.  Investigations are completed and work products are submitted to the supervisor within
    established time frames. Time frames may be established, for example, by due dates,
    amount of time to be charged to the case, or case age.

B.  No case extends beyond the statute of limitations due to the Investigator's negligence.
    Whenever possible, cases are submitted to the supervisor for review at least 7 months
    prior to the statute of limitations date.

    X   Exceeds described level of performance (narrative required)

Rating:  ____ Meets described level of performance (no narrative required)

         ____ Fails to meet described level of performance (narrative required)

Marty Shanahan has exceeded all of the elements of this standard. Marty is a hard
working investigator with good organizational skills. He works efficiently and
demonstrates the greatest ability in completing his work assignments in a timely manner
all the while recognizing the priorities of our office. Marty is acutely aware of the statute
of limitations on each and every case and his work is of the highest quality. During the
past rating period, Marty has processed over 40 cases with two cases resulting in
indictments, three civil referrals and many recoveries for cases involving both pension
and health plans.

Tab F-15 P.4




**Critical Elements**

4. Element:

Administrative

Performance Standard:

The administrative work is evaluated on the factors below.

Performance meets expectations when, with few exceptions:

Reporting and recording of Enforcement Management System or EMS information required of investigators is completed timely and accurately pursuant to EMS guidelines or Regional Office written directives.

X  Exceeds described level of performance (narrative required)

Rating: _____ Meets described level of performance (no narrative required)

_____ Fails to meet described level of performance (narrative required)

Marty Shanahan has exceeded all of the elements of this standard. Marty is well-organized and consistently completes his work on a timely basis and enters all appropriate information and results on his cases into our EMS database. He is comfortable with EMS and enters the information pursuant to our guidelines and office directives.

Tab F-15 p.5

**Optional Additional Elements**

Inclusion of "additional performance elements" is optional. They do not require a performance standard, and are not used in determining the employee's summary rating. These elements are used to describe new work, or to document short term special projects and accomplishments. Because they do not impact the final summary rating, there are no minimum periods of performance associated with "additional performance elements". They can be added to the performance management plan at any time during the rating period, including the time when the ratings are being prepared.

Tab F-15 p.6

**1. Element:**

Customer Service

---

**Performance Standard:**

Performance meets expectations when, with few exceptions:

Technical assistance calls are returned on a timely basis, responses to congressional inquiries are made within 10 calendar days, and responses to general correspondence are made within 30 calendar days.

Results are commensurate with the amount of time expended in compliance assistance.

Contacts with governmental agencies and other organizations are in accordance with PWBA guidelines, applicable laws, regulations and interagency agreements and are handled in a professional and timely manner.

---

_____ Exceeds described level of performance (narrative required)

Rating:   X     Meets described level of performance (no narrative required)

_____ Fails to meet described level of performance (narrative required)

Tab F-15 p.7

2. **Element:**

Other Assigned Duties

**Performance Standard:**

Performance meets expectations when, with few exceptions:

Other assigned duties are performed in an effective manner and within the agreed-upon time frames. Examples of such duties include targeting, providing training, outreach activities, and special projects.

X   Exceeds described level of performance (narrative required)

Rating:   ____ Meets described level of performance (no narrative required)

____ Fails to meet described level of performance (narrative required)

Marty Shanahan has exceeded the performance standard of this element. Marty always performs any assigned duties in an effective and timely manner. Marty is always available to other investigators in our office for advice and counsel relating to both civil and criminal case issues. In addition, Marty initiated outreach activity last June with the Massachusetts Society of Certified Public Accountants. Marty, working in conjunction with our Regional Director and the National Office, made a presentation with our Regional Director at the MSCPA 33rd Annual Accounting and Auditing Conference.

Tab F-15 p8

# Exhibit 14

# PERFORMANCE MANAGEMENT PLAN
### FOR EMPLOYEES IN THE NCFLL
### BARGAINING UNIT

## EMPLOYEE INFORMATION

**Name:** _____ STEPHEN E. PHILLIPS  INVESTIGATOR  GS 12 _____

**Organization:** _____ U.S. DOL/PWBA - BOSTON REGIONAL OFFICE _____

**Appraisal Period:** _____ **To:** __3/31/2002__

To: 9/30/02

## DESIGNATION OF KEY OFFICIAL

| Title of Reviewing Official: | Title of Pay Deciding Official: |
|---|---|
| EDWARD W. MALONEY, GROUP SUPERVISOR | JAMES M. BENAGES, REGIONAL DIRECTOR |

## ESTABLISHMENT OF THE PERFORMANCE MANAGEMENT PLAN

We have discussed this plan; written comments have ___ have not _X_ been attached.

**Employee:** _____  Date _4/19/01_

**Rating Official:** _____  Date _4/19/01_

Elements and standards were referred to review. The attached performance management plan is approved. (Reviewing official must review and approve elements and standards if the employee submits comments.)

**Reviewing Official:** _____  Date _041901_

## SUMMARY RATING

| Purpose of rating: | | | |
|---|---|---|---|
| [X] Annual rating of record | SUPERIOR | Performance *exceeds* the described level for *all* critical elements. |
| [ ] Other | EFFECTIVE | Performance at least *meets* the described level for *all* critical elements. |
| | UNACCEPTABLE | Performance *fails to meet* the described level for one *or more* critical elements. |

## PERFORMANCE APPRAISAL AND RATING

We have discussed this appraisal; written comments have ___ have not _X_ been attached.

**Employee:** _____  Date _10/29/02_

**Rating Official:** _____  Date _10/24/02_

I have reviewed and approve this performance rating. (Reviewing official must review and approve the performance rating if the rating is "Superior" or "Unacceptable", or if the employee submits comments on the rating.)

**Reviewing Official:** _____  Date _110802_

Tab F-20 p.1

Critical
Elements

1. Element:

   Investigative Productivity

Performance Standard:

The Investigator is expected to perform this standard independently with minimal supervision.

Performance exceeds this standard when the Investigator earns 300 or more points, as shown on the attached schedule. Performance meets this standard when the Investigator earns 100 - 299 points. Performance fails to meet this standard when the Investigator earns fewer than 100 points.

The points required to meet this standard are based on 190 days devoted to investigative work (including case development) in a one-year rating period. If fewer than 190 days are devoted to investigative work during the rating period, the points goal will be adjusted to make it proportional to the actual time spent on investigative work.

Actual investigative time (in staff days) divided by 190 staff days = the adjustment factor ADJUSTED BENCHMARKS;

| | BASE PTS | ADJ FACTOR | ADJ PTS |
|---|---|---|---|
| MEETS: | 150 · | __80% = | __120 |
| EXCEEDS | 450 | __80% = | __360 |

Actual points earned, per attached worksheet:   __1,007

X__ Exceeds described level of performance (narrative required)

Rating:   ___ Meets described level of performance (no narrative required)

   ___ Fails to meet described level of performance (narrative required)

Tab F-20 p.2

2. Element:

Quality of Investigations

Performance Standard:

Performance meets expectations when, with few exceptions:

A.    Potential violations are identified and researched.

B.    Leads are explored, sufficient interviews are conducted, relevant records are obtained, and the evidence gathered is sufficient to support the investigative findings.

C.    Work products, such as ROIs, and VC letters, include a clear and concise presentation of the facts and a technically well-founded application of the relevant statutes to the facts.

D.    Oral representations made at VC meetings involving the application of relevant civil statutes are technically correct.

E.    Answers to inquiries are comprehensive and technically accurate.

F.                          Confidential information and case file materials are maintained in accordance with PWBA and Regional Office procedures.

X  Exceeds described level of performance (narrative required)

Rating:    _____  Meets described level of performance (no narrative required)

_____  Fails to meet described level of performance (narrative required)

Tab F.20 p3

| Critical Elements |
|---|

3. Element:

Timeliness

Performance Standard:

Performance meets expectations when, with few exceptions:

A.    Investigations are completed and work products are submitted to the supervisor within established time frames. Time frames may be established, for example, by due dates, amount of time to be charged to the case, or case age.

B.    No case extends beyond the statute of limitations due to the Investigator's negligence. Whenever possible, cases are submitted to the supervisor for review at least 7 months prior to the statute of limitations date.

X   Exceeds described level of performance (narrative required)

Rating:    ___ Meets described level of performance (no narrative required)

___ Fails to meet described level of performance (narrative required)

Tab F-20 p.4

Critical
Elements

4. Element:

Administrative

Performance Standard:

The administrative work is evaluated on the factors below.

Performance meets expectations when, with few exceptions:

Reporting and recording of Enforcement Management System or EMS information required of investigators is completed timely and accurately pursuant to EMS guidelines or Regional Office written directives.

___X___ Exceeds described level of performance (narrative required)

Rating:    _____ Meets described level of performance (no narrative required)

_____ Fails to meet described level of performance (narrative required)

Tab F-20 p5

| Optional Additional Elements | | |
| --- | --- | --- |

Inclusion of "additional performance elements" is optional. They do not require a performance standard, and are not used in determining the employee's summary rating. These elements are used to describe new work, or to document short term special projects and accomplishments. Because they do not impact the final summary rating, there are no minimum periods of performance associated with "additional performance elements". They can be added to the performance management plan at any time during the rating period, including the time when the ratings are being prepared.

Tab F-20 p.6

1. Element

Customer Service

Performance Standard:

Performance meets expectations when, with few exceptions:

Technical assistance calls are returned on a timely basis, responses to congressional inquiries are made within 10 calendar days, and responses to general correspondence are made within 30 calendar days.

Results are commensurate with the amount of time expended in compliance assistance.

Contacts with governmental agencies and other organizations are in accordance with PWBA guidelines, applicable laws, regulations and interagency agreements and are handled in a professional and timely manner.

X_ Exceeds described level of performance (narrative required)

Rating: ___ Meets described level of performance (no narrative required)

___ Fails to meet described level of performance (narrative required)

Tab F-20 p.7

2. Element:

Other Assigned Duties

Performance Standard:

Performance meets expectations when, with few exceptions:

Other assigned duties are performed in an effective manner and within the agreed-upon time frames. Examples of such duties include targeting, providing training, outreach activities, and special projects.

X__ Exceeds described level of performance (narrative required)

Rating: ____ Meets described level of performance (no narrative required)

____ Fails to meet described level of performance (narrative required)

Tab F-20 p.8

Narrative Attachment: Stephen Phillips

Critical Element

#1. Investigative Productivity

Investigator Stephen Phillips exceeded this element by
totaling 1,007 points as a result of his case productivity.
During the course of this rating cycle, Investigator
Phillips recovered in excess of $3.5 million for
participants of benefit plans, and referred 4 cases for
litigation.

On a yearly basis, Investigator Phillips has demonstrated
initiative, creativity, and enthusiasm, which have produced
a steady stream of extraordinary achievement. In a
completely independent way, Investigator Phillips seizes
the core issues of his investigations, and disposes of the
cases in a manner that is both efficient and thorough.
Taking into account the major commitment Investigator
Phillips has as the Outreach Coordinator for the Boston
Regional Office, his case productivity is truly remarkable.
In both his investigative skills, and his inner spirit, he
is a valued resource of the Boston Regional office, and a
major reason for the success the office has achieved.

#2. Quality of Investigations

All work product submitted by Investigator Phillips is
accurate and free of errors. Investigator Phillips is very
thorough in his investigative methodology. In reviewing his
cases, it is clearly apparent that all investigative steps
were taken and all issues explored.

#3. Timeliness

Investigator Phillips exceeded this standard due to the
effort he brought to this task. Each case was expedited,
and a results oriented method of disposing of cases was
always sought.

Tab F-20 p.9



#4. Administrative

Investigator Phillips has exceeded this element through his
accurate recording of events and case characteristics on
the EMS. Also, he has been vigilant in assisting his co-
workers with the requirements of this element.


Optional Additional Elements


#1. Customer Service

Investigator Phillips has exceeded this element through his
participation in the NY State Fair and the Big E
Exposition. In addition, he has been an unofficial resource
person for the PBA's charged with the task of participant
assistance.


#2. Other Assigned Duties

As stated, Investigator Phillips has been tasked with the
duty of being the Outreach coordinator for the office. In
this role, Investigator Phillips has contacted over 40
colleges and universities, posted job announcements on web
sites sponsored by targeted groups, and personally
participated in job fairs and interviews. His goal is to
diversify the PWBA workforce through the hiring of
individuals of varying ethnic, sexual, physically
challenged backgrounds. All of the newly hired individuals
at the Boston Regional Office have been brought to the
agency through the efforts of Investigator Phillips.
Investigator Phillips has handled what would be a full time
job for others, in a manner that has not had any impact on
his case productivity. A truly remarkable balancing of
tasks, coupled with careful time management.

On top of this intensive outreach assignment, investigator
Phillips has acted as a mentor to newly hired
investigators, and run the office holiday party. As stated
previously, he is a true asset of the office.

Tab f-20 p.10

# Exhibit 15

Qualification Evaluation Sheet for      U.S. Department of Labor
Merit Staffing

| 1. Candidate Name: J. Martin Shanahan | 2. Title, Grade of Position, and Vacancy Announcement No. INVESTIGATOR (Pension), GS-1801-13 BOS 03-29 | |
|---|---|---|
| 3. Organizational Location Employee Benefit Security Admin. Boston Regional Office Boston, MA | 4. Date of Evaluation 5/14/03 | ☒ Composite Rating ☐ Individual Rating |

6. Signature (and Typed Name of Rater(s) Completing this Sheet

BARRY S. HAMILTON       FRANK CERASO

7. Evaluation

| Factors ((H) Designates the most important factors) | Reasons | Evaluation |  |  |
|---|---|---|---|---|
|  |  | VG | G | LR |
| 1. Knowledge of the laws, regulations and policies of the DOL w/regard to enforcement of the provisions of the ERISA or the knowledge of similarly complex laws such as the Federal securities and commodities laws, tax laws, or banking laws.  (H) | OF612 Work Exp & Education ERISA Training |  | ✓ |  |
| 2. Sound knowledge of, and an extensive background in, the specialized areas of procedures and laws governing investigations, as well as the experience in determining that adequate proof exists of all elements of an alleged violation of law. This must include an in-depth understanding of the entire spectrum of an enforcement action. (H) | l ( |  | ✓ |  |
| 3. Ability to motivate and direct activities as a team leader.  (H) (M for ICTAP) | OF612 Group Supervision |  | ✓ |  |
| 4. Ability to coordinate investigations of difficult factual and legal matters.   (H) | OF612 - civil & criminal investigation Bar/ SBA |  | ✓ |  |
| 5. Ability to communicate effectively both orally and in writing. | Education OF612 Work as Investigator/Appraisal |  | ✓ |  |
| 6. |  |  |  |  |

Identify Rating Group and Subgroup:

Tab F-16 p. 1




Qualification Evaluation Sheet for
Merit Staffing

U.S. Department of Labor

| 1. Candidate Name: | 2. Title, Grade of Position, and Vacancy Announcement No. |
|---|---|
| J. Martin Shanahan | INVESTIGATOR (Pension), GS-1801-13<br>BOS 03-29 |

| 3. Organizational Location | 4. Date of Evaluation | 5. |
|---|---|---|
| Employee Benefit Security Admin.<br>Boston Regional Office<br>Boston, MA | 5/14/03 | ☐ Composite Rating<br>☒ Individual Rating |

6. Signature and Typed Name of Rater(s) Completing this Sheet

CAROL S. HAMILTON

7. Evaluation

| Factors<br>((H) Designates the most important factors) | Reasons | Evaluation |  |  |
|---|---|---|---|---|
|  |  | VG | G | MR |
| 1. Knowledge of the laws, regulations and policies of the DOL w/regard to enforcement of the provisions of the ERISA or the knowledge of similarly complex laws such as the Federal securities and commodities laws, tax laws, or banking laws. (H) | See KSA #1<br>OF 612 — Job Experience at CBSA<br>Education — Law School / CPA | ✓ |  |  |
| 2. Sound knowledge of, and an extensive background in, the specialized areas of procedures and laws governing investigations, as well as the experience in determining that adequate proof exists of all elements of an alleged violation of law. This must include an in-depth understanding of the entire spectrum of an enforcement action. (H) | See KSA #2<br>OF 612 — Job Experience at CBSA<br>Resume<br>Performance Appraisal — Element 1 & 2 | ✓ |  |  |
| 3. Ability to motivate and direct activities as a team leader. (H) (M for ICTAP) | See KSA #3<br>Resume — job experience DOL/CBSA direct teams<br>OF 612 — Work at CBSA — civil & criminal teams<br>Acting Group Supervisor | ✓ |  |  |
| 4. Ability to coordinate investigations of difficult factual and legal matters. (H) | See KSA #4<br>OF 612 — Job Experience (Civil & Criminal)<br>Appraisal — Element 1 + 2 | ✓ |  |  |
| 5. Ability to communicate effectively both orally and in writing. | See KSA #5<br>OF 612 — Job Experience — Law School / CPA Education<br>Appraisal — Element 2 (Superior Exceeds #2) | ✓ |  |  |
| 6. |  |  |  |  |

Identify Rating Group and Subgroup:

Tab F-16 p.2

Merit Staffing

| | |
|---|---|
| 1. Candidate Name:<br><br>J. Martin Shanahan | 2. Title, Grade of Position, and Vacancy Announcement No.<br>INVESTIGATOR (Pension), GS-1801-13<br>BOS 03-29 |
| 3. Organizational Location<br>Employee Benefit Security Admin.<br>Boston Regional Office<br>Boston, MA | 4. Date of Evaluation<br><br>5. ☐ Composite Rating<br>☐ Individual Rating |

6. Signature and Typed Name of Rater(s) Completing this Sheet

Frank Ceraso

7. Evaluation

| Factors<br>((IH) Designates the most important factors) | Reasons | Evaluation |
|---|---|---|
| | | VG | G | UA |
| 1. Knowledge of the laws, regulations and policies of the DOL w/regard to enforcement of the provisions of the ERISA or the knowledge of similarly complex laws such as the Federal securities and commodities laws, tax laws, or banking laws.  (H) | ERISA case work & DOJ experience | √ | | |
| 2. Sound knowledge of, and an extensive background in, the specialized areas of procedures and laws governing investigations, as well as the experience in determining that adequate proof exists of all elements of an alleged violation of law. This must include an in-depth understanding of the entire spectrum of an enforcement action. (H) | See above | √ | | |
| 3. Ability to motivate and direct activities as a team leader.   (H) (M for ICTAP) | Mentor & Acting Group Supervisor | | √ | |
| 4. Ability to coordinate investigations of difficult factual and legal matters.   (H) | HHS complex project | √ | | |
| 5. Ability to communicate effectively both orally and in writing. | See above | | √ | |
| 6. | | | | |

Identify Rating Group and Subgroup:

Certification  ☐ Certify

Tab F-16 p.3

Exhibit 16

Merit Staffing

| 1. Candidate Name: | 2. Title, Grade of Position, and Vacancy Announcement No. |
|---|---|
| Susan Murphy | INVESTIGATOR (Pension), GS-1801-13 BOS 03-29 |

| 3. Organizational Location | 4. Date of Evaluation | |
|---|---|---|
| Employee Benefit Security Admin. Boston Regional Office Boston, MA | 5/14/03 | ☒ Composite Rating ☐ Individual Rating |

6. Signature and Typed Name of Rater(s) Completing this Sheet

BRUCE S. HAMILTON    FRANK CERASO

7. Evaluation

| Factors (H) Designates the most important factors | Reasons | Evaluation | | |
|---|---|---|---|---|
| | | VG | G | MR |
| 1. Knowledge of the laws, regulations and policies of the DOL w/regard to enforcement of the provisions of the ERISA or the knowledge of similarly complex laws such as the Federal securities and commodities laws, tax laws, or banking laws. (H) | OF-612 Investigator / Special Agent DOL EBSA OIG | ✓ | | |
| 2. Sound knowledge of, and an extensive background in, the specialized areas of procedures and laws governing investigations, as well as the experience in determining that adequate proof exists of all elements of an alleged violation of law. This must include an in-depth understanding of the entire spectrum of an enforcement action. (H) | Training - Inhouse DOL | ✓ | | |
| 3. Ability to motivate and direct activities as a team leader. (H) (H for ICTAP) | OF-612 Led Team DOL/OIG | ✓ | | |
| 4. Ability to coordinate investigations of difficult factual and legal matters. (H) | Investigations / Special Agent DOL EBSA /OIG | ✓ | | |
| 5. Ability to communicate effectively both orally and in writing. | OF-612 Education Job Experience - Report Writing | ✓ | | |
| 6. | | | | |

Identify Rating Group and Subgroup:                    Certification    ☒ Certify

Tab F-11 p.1

Qualification Evaluation Sheet for
Merit Staffing

U.S. Department of Labor

| 1. Candidate Name: | 2. Title, Grade of Position, and Vacancy Announcement No. | |
|---|---|---|
| Susan Murphy | INVESTIGATOR (Pension), GS-1801-13 BOS 03-29 | |
| 3. Organizational Location | 4. Date of Evaluation | 5. ☐ Composite Rating |
| Employee Benefit Security Admin. Boston Regional Office Boston, MA | 5/14/03 | ☒ Individual Rating |

6. Signature and Typed Name of Rater(s) Completing this Sheet

CAROL S. HAMILTON

7. Evaluation

| Factors ((H) Designates the most important factors) | Reasons | Evaluation | | |
|---|---|---|---|---|
| | | VG | G | MR |
| 1. Knowledge of the laws, regulations and policies of the DOL w/regard to enforcement of the provisions of the ERISA or the knowledge of similarly complex laws such as the Federal securities and commodities laws, tax laws, or banking laws. (H) | OF-612 DOL/ERSA - 1 year investigation position ERISA Training DOL/OIG - federal law knowledge | ✓ | | |
| 2. Sound knowledge of, and an extensive background in, the specialized areas of procedures and laws governing investigations, as well as the experience in determining that adequate proof exists of all elements of an alleged violation of law. This must include an in-depth understanding of the entire spectrum of an enforcement action. (H) | OF 612 Investigation - DOL/EBSA DOL/OIG FLETC + PWBA Training | | ✓ | |
| 3. Ability to motivate and direct activities as a team leader. (H) (M for ICTAP) | OF-612 DOL/OIG - led team of investigators | ✓ | | |
| 4. Ability to coordinate investigations of difficult factual and legal matters. (H) | Work Experience DOL/EBSA - Investigator 1½ year DOL/OIG - Special Agent | ✓ | | |
| 5. Ability to communicate effectively both orally and in writing. | Education Background Experience - writing reports & oral presentation | ✓ | | |
| 6. | | | | |

Identify Rating Group and Subgroup:

Tab F-11 p.2

Qualification Evaluation Sheet for
Merit Staffing

U.S. Department of Labor

| 1. Candidate Name: | 2. Title, Grade of Position, and Vacancy Announcement No. |
|---|---|
| Susan Murphy | INVESTIGATOR (Pension), GS-1801-13 BOS 03-29 |

| 3. Organizational Location | 4. Date of Evaluation | 5. ☐ Composite Rating |
|---|---|---|
| Employee Benefit Security Admin. Boston Regional Office Boston, MA | 5/19/03 | ☑ Individual Rating |

6. Signature and Typed Name of Rater(s) Completing this Sheet

7. Evaluation

| Factors ((H) Designates the most important factors) | Reasons | Evaluation | | |
|---|---|---|---|---|
| | | VG | G | UR |
| 1. Knowledge of the laws, regulations and policies of the DOL w/regard to enforcement of the provisions of the ERISA or the knowledge of similarly complex laws such as the Federal securities and commodities laws, tax laws, or banking laws.  (H) | See Eval. Factor #1 on 612 Outstanding Experience & #6 | ✓ | | |
| 2. Sound knowledge of, and an extensive background in, the specialized areas of procedures and laws governing investigations, as well as the experience in determining that adequate proof exists of all elements of an alleged violation of law. This must include an in-depth understanding of the entire spectrum of an enforcement action. (H) | "#2 | ✓ | | |
| 3. Ability to motivate and direct activities as a team leader.  (H) (M for ICTAP) | "#3 | ✓ | | |
| 4. Ability to coordinate investigations of difficult factual and legal matters.  (H) | #4 | ✓ | | |
| 5. Ability to communicate effectively both orally and in writing. | #5 | ✓ | | |
| 6. | | | | |

Identify Rating Group and Subgroup:

Tab F-11 p.3

# Exhibit 17

Qualification Evaluat___ ___eet for
Merit Staffing

U.S. Department of Labor

| 1. Candidate Name: | 2. Title, Grade of Position, and Vacancy Announcement No. |
| Stephen Phillips | INVESTIGATOR (Pension), GS-1801-13 |
| | BOS 03-29 |

| 3. Organizational Location | 4. Date of Evaluation | 5. |
| Employee Benefit Security Admin. | | ☒ Composite Rating |
| Boston Regional Office | 5/14/03 | ☐ Individual Rating |
| Boston, MA | | |

6. Signature and Typed Name of Rater(s) Completing this Sheet

Carol S. Hamilton    Frank Ceraso

7. Evaluation

| Factors ((H) Designates the most important factors) | Reasons | Evaluation | | |
|---|---|---|---|---|
| | | VG | G | FAIR |
| 1. Knowledge of the laws, regulations and policies of the DOL w/regard to enforcement of the provisions of the ERISA or the knowledge of similarly complex laws such as the Federal securities and commodities laws, tax laws, or banking laws. (H) | Job Experience<br>— See attached comments on both individual entrys | ✓ | | |
| 2. Sound knowledge of, and an extensive background in, the specialized areas of procedures and laws governing investigations, as well as the experience in determining that adequate proof exists of all elements of an alleged violation of law. This must include an in-depth understanding of the entire spectrum of an enforcement action. (H) | | ✓ | | |
| 3. Ability to motivate and direct activities as a team leader. (H) (M for ICTAP) | Diversity Coordinator | ✓ | | |
| 4. Ability to coordinate investigations of difficult factual and legal matters. (H) | Investigator 6 years OFCIZ | ✓ | | |
| 5. Ability to communicate effectively both orally and in writing. | Education } 6 years<br>Work Experience } DOL/EBSA OFCIZ | ✓ | | |
| 6. | | | | |

Identity Rating Group and Subgroup

Tab F-21 p.1



Qualification Evaluation Sheet for
Merit Staffing

U.S. Department of Labor

| 1. Candidate Name: | 2. Title, Grade of Position, and Vacancy Announcement No. |
| --- | --- |
| Stephen Phillips | INVESTIGATOR (Pension), GS-1801-13 BOS 03-29 |

| 3. Organizational Location | 4. Date of Evaluation | 5. ☐ Composite Rating |
| --- | --- | --- |
| Employee Benefit Security Admin. Boston Regional Office Boston, MA | | ☒ Individual Rating |

6. Signature and Typed Name of Rater(s) Completing this Sheet

CAROL S. HAMILTON

7. Evaluation

| Factors (H) Designates the most important factors) | Reasons | Evaluation |  |  |
| --- | --- | --- | --- | --- |
| | | VG | G | UR |
| 1. Knowledge of the laws, regulations and policies of the DOL w/regard to enforcement of the provisions of the ERISA or the knowledge of similarly complex laws such as the Federal securities and commodities laws, tax laws, or banking laws. (H) | OF 612 - DOL/EBSA 6 years as ERISA investigation Dor/WH - federal laws Education - Masters Degree | ✓ | | |
| 2. Sound knowledge of, and an extensive background in, the specialized areas of procedures and laws governing investigations, as well as the experience in determining that adequate proof exists of all elements of an alleged violation of law. This must include an in-depth understanding of the entire spectrum of an enforcement action. (H) | Work Experience Dor/EBSA 6 years as investigation OF 612 - In-house Training of investigation | ✓ | | |
| 3. Ability to motivate and direct activities as a team leader. (H) (M for ICTAP) | OF 612 Diversity Coordination | ✓ | | |
| 4. Ability to coordinate investigations of difficult factual and legal matters. (H) | OF 612 Dor/EBSA 6 years of investigation background | ✓ | | |
| 5. Ability to communicate effectively both orally and in writing. | OF-612 Education Experience - writes reports Dor/EBSA + presentations | ✓ | | |
| 6. | | | | |

Identify Rating Group and Subgroup

Tab F.21 p.2

Merit Staffing

| 1. Candidate Name:<br><br>Stephen Philips | 2. Title, Grade of Position, and Vacancy Announcement No.<br>INVESTIGATOR (Pension), GS-1801-13<br>BOS 03-29 | |
|---|---|---|
| 3. Organizational Location<br>Employee Benefit Security Admin.<br>Boston Regional Office<br>Boston, MA | 4. Date of Evaluation | 5. ☐ Composite Rating<br>☑ Individual Rating |
| 6. Signature and Typed Name of Rater(s) Completing this Sheet<br><br>John Frank (erazo) | | |

7. Evaluation

| Factors<br><br>((H) Designates the most important factors) | Reasons | Evaluation | | |
|---|---|---|---|---|
| | | VG | G | UR |
| 1. Knowledge of the laws, regulations and policies of the DOL w/regard to enforcement of the provisions of the ERISA or the knowledge of similarly complex laws such as the Federal securities and commodities laws, tax laws, or banking laws.   (H) | Prior experience SEC Inv. Wage + Hrs. | | ✓ | |
| 2. Sound knowledge of, and an extensive background in, the special-ized areas of procedures and laws governing investigations, as well as the experience in determining that adequate proof exists of all elements of an alleged violation of law. This must include an in-depth under-standing of the entire spectrum of an enforcement action. (H) | | | ✓ | |
| 3. Ability to motivate and direct activities as a team leader.   (H) (M for ICTAP) | Diversity Outreach Coordinator | | ✓ | |
| 4. Ability to coordinate investiga-tions of difficult factual and legal matters.   (H) | | | ✓ | |
| 5. Ability to communicate effectively both orally and in writing. | | | ✓ | |
| 6. | | | | |

| Identify Rating Group and Subgroup. | | Certification | ☐ Certify |
|---|---|---|---|

Tab F-21 p.3